**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CONNECTICUT GENERAL LIFE** | § | |
| **INSURANCE COMPANY AND** | § | |
| **CIGNA HEALTH AND LIFE** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | **JURY DEMANDED** |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **HUMBLE SURGICAL HOSPITAL, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**CIGNA'S ORIGINAL COMPLAINT**</u>

Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, "Cigna") file this Original Complaint ("Complaint") against Defendant Humble Surgical Hospital, LLC ("Humble"), and would respectfully show the Court as follows:

# I.

## <u>INTRODUCTION</u>

1.     This is a case about Humble's excessive and fraudulent billing. Cigna seeks to recover overpayments it made to Humble, an out-of-network, physician-owned, five-bed hospital. Pursuant to the schemes described hereafter, Humble has been gouging Cigna and its members, through millions of dollars in exorbitant bills. In fact, in the three years that Humble has been in operation, Humble has submitted over $52.6 million in bills to Cigna, of which Cigna paid Humble over $8.6 million. In short, Humble engages in healthcare profiteering.

2.     As an out-of network provider, Humble does not participate in Cigna's provider network, i.e., it is not in-network and has no contract with Cigna. Humble would not be paid

based on its exorbitant bills to Cigna if it were an in-network hospital. To entice Cigna's members into receiving services at Humble's out-of-network facility, Humble claimed to offer a "high end" or "upscale" experience, while promising Cigna's members that they would pay as if they received the services on an in-network basis. Humble waived the patients' financial responsibility, and billed Cigna inflated amounts that do not reveal that Humble waived the patients' share. Cigna processed Humble's bills based on the face amount of the false and inflated charges, resulting in millions of dollars of overpayments to Humble.

3.     Humble's owners are among the physicians who refer patients to the facility and directly profit from their self-referrals. In addition, Humble has fee-splitting agreements with doctors, paying them to refer their patients to Humble's facility. The damages sought in this case relate to facility fees and related fees Humble charged and Cigna paid. The physicians are paid separately for their services provided at Humble and are not part of the damages sought in this suit. Because of the inherent conflict of interest involved in a physician referring patients to a facility in which the physician has an ownership interest, strict and complete disclosure to patients is mandated as a matter of ethics and law. A similar conflict applies to doctors who fee-split with Humble and also requires complete disclosure to patients under Texas law. Humble has fallen well short of its disclosure obligations, including those applicable to Cigna members covered by Medicare.

4.     As the entity that made the payments, Cigna brings this action to recover the overpayments made to Humble for its false and excessively billed services. Cigna sues for, among other things, common law fraud, money had and received, unjust enrichment, and alternative equitable relief under the Employee Retirement Income Security Act ("ERISA") for injuries it suffered as a result of the excessive and unreasonable fees that Humble charged Cigna

and its members.  Cigna also seeks injunctive relief requiring Humble to disclose that the facility is physician-owned when these physician owners self-refer their patients, including Cigna members, to Humble.  Additionally, Humble should be required to disclose that Humble entered into fee-splitting agreements with physicians when these physicians refer their patients, including Cigna members, to Humble. This Court should also enjoin Humble from engaging in its billing scheme, including charging unreasonable fees, and waiving the patients' financial responsibility, as detailed herein.  Cigna brings this action to ensure that its members are charged only appropriate amounts for services rendered and that they are required to pay their share of the reasonable charges, thereby helping to maintain the affordability of healthcare coverage for individuals and employers.

## II.

### <u>PARTIES</u>

5.    Plaintiff Connecticut General Life Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut.

6.    Plaintiff Cigna Health and Life Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut.

7.    Defendant Humble Surgical Hospital, LLC is a Texas limited liability company that regularly conducts business in Humble, Harris County, Texas.  Humble may be served with process through its registered agent, K&S Consulting, LLC, 5120 Woodway Drive, Suite 7012, Houston, Texas 77056.

## III.
### JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over Humble, which is a Texas entity doing business in Texas.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10.      Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws or treaties of the United States.

11.      Venue is proper in the Southern District of Texas pursuant to 29 U.S.C. § 1132(e)(2) and § 1391(b)(1) because Humble resides or may be found in this judicial district and pursuant to 29 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred here.

## IV.
### FACTUAL BACKGROUND

**A.    The Health Care Benefits That Cigna Provides Its Members**

12.      Cigna is a global health service company that offers a broad range of integrated health care and related plans and services to its members.

13.      Cigna provides access to coverage and benefits to its members pursuant to a variety of health care benefit plans and policies of insurance, including (i) self-funded plans for which Cigna provides various third-party claims administrative services, (ii) plans insured under group policies issued by Cigna where plans are established and maintained by private employers, (iii) plans covering federal employees, (iv) plans covering employees of state governmental entities, (v) church plans, (vi) policies issued to individuals, and (vii) Medicare.    The

governmental plans include those established for employees of City of Humble, Spring Independent School District, and the Government of the U.S. Virgin Islands.

14.     Cigna's benefit plans include covered benefits for in-network services that participating providers having contracts with Cigna or its affiliates provide to its members. Cigna's plans also include covered benefits for out-of-network services that non-participating hospitals or other facilities, such as Humble, provide to Cigna's members.

15.     Cigna benefit plans reimburse their members for certain healthcare costs, defined as *covered expenses*. When a Cigna member receives medical services, Cigna determines what part of their cost is considered for coverage, known as the *allowed amount*. The patient is responsible for paying part of this allowed amount and the plan pays the rest. While there are different types of patient responsibility (including deductibles, benefit limits, and co-payments), one of the most important is coinsurance, which is a percentage of the allowed amount for covered expenses that members must pay out of their own pocket. Coinsurance is critical to keeping health care affordable.

## B.     In-Network Benefits From Participating Providers

16.     Cigna provides in-network health care benefits to its members through a network of participating medical providers who have entered into contracts with Cigna to render services to members in return for fees at contract rates. Medical providers who enter into contracts with Cigna are commonly known as *participating providers*, and the contracts between Cigna and participating providers require the participating provider to accept in-network or contract rates for services as payment in full. The Cigna member ordinarily has no financial obligation to the participating provider beyond a small, fixed copayment or coinsurance, and the participating provider is contractually prohibited from billing the subscriber for any other amounts (*i.e.*, *balance billing*), except under limited circumstances.

17.     Health benefit plans encourage members to utilize participating providers, an arrangement beneficial to both the participating providers, who enjoy increased patient traffic, and the patient/members who receive appropriate, high-quality health care services at a fair and reasonable cost.  The agreements between Cigna and its participating providers allow Cigna to deliver health care benefits efficiently through its provider network, to anticipate and control the cost of care, to reduce financial risk to both employer funded and fully insured plans, to reduce its members' financial risk for health care services, and to promote the quality of care through its credentialing and peer review processes.

18.     Plan members have ready access to participating providers.  Cigna publishes directories of participating providers to its members who consume health care services in Texas. Members may obtain medical services from these providers with little or no financial risk or out-of-pocket expense.

**C.     Out-of-Network Benefits From Non-Participating Providers**

19.     Cigna provides health benefit plans and policies of insurance that include out-of-network benefits for services *non-participating providers*, like Humble, render to its members. These non-participating providers have not entered into contracts with Cigna, have not agreed to accept in-network rates as payment in full for their services, and their fees are not set in advance.

20.     Non-participating providers set their own fees for services rendered to their patients subject to the laws and regulations that govern the practice of medicine in Texas.  The rates charged by non-participating providers are often significantly higher than contract rates.

**D.     Patient Financial Responsibility**

21.     Plan provisions that require the member to pay coinsurance, deductibles, and other portions of a hospital's charges for services encourage the member to be sensitive to health care costs and utilize hospitals with lower fees, which makes medical insurance less expensive.

22.    To make out-of-network benefits an affordable option for the employers' sponsoring them, Cigna plans and policies of insurance may limit the benefits available for out-of-network services and require members to contribute to the cost of care rendered from such non-participating providers.

23.    One of the key ways in which the plans allocate out-of-network costs between employers and employees is through coinsurance -- a percentage of the amount that the plans covers that the member is required to pay towards the cost of that service.  The coinsurance that members must pay towards out-of-network services is usually much higher than the coinsurance they must pay (if any) towards in-network services.

24.    This coinsurance requirement underlies the entire concept of out-of-network benefits.  It sensitizes members to the true costs of out-of-network services, ensuring that if a members receive these services they are willing to pay a greater portion of that expense out of their own pocket.  If patients did not share these costs, then they would have no financial incentive to moderate their demand for out-of-network services or to consider the higher costs of any particular out-of-network provider, leading to increased costs for the plan.

25.    Eliminating patients' responsibility to pay more towards out-of-network services also undermines Cigna's ability to offer quality in-network services. If there is no financial difference to plan members between participating and non-participating providers, then they have no financial incentive to prefer providers in Cigna's network.  Without the stream of patients that this incentive is designed to produce, providers will have less incentive to join Cigna's network, leaving the network less robust, and stripping the employers of the ability to offer affordable healthcare.

26.     In part to ensure that members receiving out-of-network services pay their required coinsurance and that non-participating providers do not waive it, Cigna's plans state that they do not cover costs that the member is not obligated to pay, for which the member is not billed, or for which the member would not have been billed except for the fact that the charges are covered under the member's plan.  Plan members are not contractually entitled to benefits payment for such non-covered charges.  This language helps to ensure that members receiving out-of-network services pay their required coinsurance and that non-participating providers do not waive the patients' financial responsibility portion.

27.     Pursuant to the terms of these benefit plans and policies of insurance, the member may be responsible for payment of charges for services which their health care plan does not cover or exceed the amount of the reimbursement Cigna paid.  The amount a provider's charge exceeds the amount payable under the plan is commonly referred to as the *balance bill*.

## E.     The Defendant's Out-of-Network Strategy To Defraud Cigna

28.     The Defendant's strategy, sometimes referred to as an *out-of-network strategy*, is implemented when non-contracted medical facilities, like Humble, target and siphon off high-value patients.  The target patients include those whose health benefit plans and policies of insurance provide ready access to out-of-network benefits for services that non-participating providers, like Humble, render to Cigna's members.  In furtherance of its out-of-network strategy, Humble has employed various underhanded schemes and practices, which are described below, to overbill Cigna and have Cigna overpay Humble for medical services provided to Cigna's members.  This suit is Cigna's effort to obtain reimbursement for those overpayments.

### i.     *Humble waives patient responsibility and egregiously overbills carriers*

29.     Humble's charges for services are many multiples of the usual, customary, and reasonable fees in the Houston area.  In fact, although it is a small, five-bed, regional hospital,

HOU:3372638.1

Humble set its prices for services (Charge Master) based on comparable charges in Houston for major hospital systems like Methodist and Memorial Hermann. In setting its prices, Humble decided to place itself in the 85th percentile, admittedly making its Charge Master among the highest in the area simply because it is out-of-network with most carriers. *See* Pls.' Mot. To Compel, *Aetna Life Ins. Co. v. Humble Surgical Hospital*, No. 4:12-cv-1206 (S.D. Tex. October 1, 2013), ECF No. 144. For example, as a measure of how abusive Humble's bills were, Humble submitted, and Cigna paid, the following claims:

a.    On November 5, 2010, Patient J.M. had an outpatient, spinal fusion procedure performed at Humble. For this same procedure, the in-network contracted rate would have been approximately $2,700.00, and the Medicare reimbursement if performed as an inpatient procedure would have been approximately $38,830.00 (Medicare does not cover this procedure as an outpatient procedure). Humble charged Cigna $214,556.00 for this outpatient procedure, or approximately 7,900% higher than the comparable in-network contracted rate, and fraudulently induced Cigna to pay $143,851.00 on this claim.

b.    On December 30, 2010, Patient L.M. had an outpatient, spinal fusion procedure performed at Humble. For this same procedure, the in-network contracted rate would have been approximately $2,700.00, and the Medicare reimbursement if performed as an inpatient procedure would have been approximately $9,142.00 (Medicare does not cover this procedure as an outpatient procedure). Humble charged Cigna $101,080.00 for this outpatient procedure, or approximately 3,700% higher than the comparable in-network contracted rate, and fraudulently induced Cigna to pay $88,041.00 on this claim.

c.    On June 3, 2011, Patient R.S. had an outpatient, nasal septum procedure performed at Humble. For this same procedure, the in-network contracted rate would have been approximately $11,200.00, and the Medicare reimbursement would have been approximately $13,000.00 (Medicare does not cover this procedure as an outpatient procedure). Humble charged Cigna $86,988.00 for this outpatient procedure, or approximately 700% higher than the comparable in-network contracted rate, and fraudulently induced Cigna to pay $86,988.00 on this claim.

d.    On September 6, 2011, Patient G.K. had outpatient spinal injections performed at Humble. For this same procedure, the in-network contracted rate would have been approximately $2,600.00, and the Medicare reimbursement if performed as an inpatient procedure would have been approximately

$14,750.00 (Medicare does not cover this procedure as an outpatient procedure). Humble charged Cigna $88,573.00 for this outpatient procedure, or approximately 3,400% higher than the comparable in-network contracted rate, and fraudulently induced Cigna to pay $88,573.00 on this claim.

e.      On September 29, 2011, Patient K.L. had an outpatient, neuroelectrodes implant procedure performed at Humble. For this same procedure, the in-network contracted rate would have been approximately $3,100.00, and the Medicare reimbursement if performed as an inpatient procedure would have been approximately $11,500.00 (Medicare does not cover this procedure as an outpatient procedure). Humble charged Cigna $120,087.00 for this outpatient procedure, or approximately 3,800% higher than the comparable in-network contracted rate, and fraudulently induced Cigna to pay $100,445.00 on this claim.

f.      On October 26, 2011, Patient R.T. had outpatient, spinal surgery performed at Humble. For this same procedure, the in-network contracted rate for this same procedure would have been approximately $3,100.00, and the Medicare reimbursement if performed as an inpatient procedure would have been approximately $23,890.00 (Medicare does not cover this procedure as an outpatient procedure). Humble charged Cigna $170,440.00 for this outpatient procedure, or approximately 5,400% higher than the comparable in-network contracted rate, and fraudulently induced Cigna to pay $107,333.00 on this claim.

The foregoing are only a few of many examples of Humble's bloated bills that demonstrate a pattern of egregious financial abuse that has been regularly levied upon Cigna's members.

30.     Because it treats more than 85% of its patients on an outpatient basis, most of Humble's billings are for outpatient services. Humble's bills are often in excess of $100,000 for outpatient hospital stays of only a few hours.

31.     Humble not only charges excessive and unreasonable fees, it also waives the patients' financial responsibility. Ordinarily, a Cigna member's utilization of an out-of-network hospital, rather than an in-network hospital, would result in higher out-of-pocket costs to the patient. To encourage patients to use its out-of-network facility, however, Humble has told patients that it would accept what Cigna paid, or would bill them as if they were using an in-

-10-

network provider, assuring patients that they will only owe the remaining portion of any in-network deductible or will otherwise not be subject to higher out-of-pocket costs, or would accept a small, nominal fee as payment in full and not otherwise subject them to any additional out-of-pocket costs.  In fact, Humble has even misrepresented to patients that the services at Humble will cost less than the same services at an in-network facility.  By way of example, Humble made the following statements to the following patients:

    a.    Humble told Patient M.K that M.K. would not need to pay any balances, and that Humble would accept what Cigna paid.  Humble later submitted a claim for $120,828.56 for Patient M.K.'s procedures without disclosing that it had waived Patient M.K.'s entire cost share responsibility;

    b.    Humble told Patient B.H. that Humble would charge B.H. as if Humble were in-network.  Humble later submitted a claim for $195,405.95 for Patient B.H.'s procedures without disclosing that it had waived Patient B.H.'s required out-of-network cost share;

    c.    Humble told Patient M.H. that Humble would charge M.H. a copayment that would be the same amount as if Humble were in-network.  Humble later submitted a claim for $92,788.67 for Patient M.H.'s procedures without disclosing that it had waived Patient M.H.'s required out-of-network cost share;

    d.    Humble told Patient R.T. that Humble would only charge R.T. a standard copayment of $125.00 and nothing more.  Humble later submitted a claim for $170,440.89 for Patient R.T.'s procedures without disclosing that it had waived virtually all of Patient R.T.'s cost share responsibility.

All of these statements are demonstrably false.  To make its gouging scheme work, Humble has billed and/or collected only a fraction of the amount, if anything at all, the patient/members owed under the terms of their plans.  By waiving members' out-of-pocket costs as an inducement to choose Humble over reputable, in-network facilities, Humble improperly reaps substantial windfalls.

    32.    Humble's waiver of patients' financial responsibility is a mechanism for committing fraud.  After treating the member, Humble submits bills to Cigna listing its purported

charges for the service; charges that were much more than those of comparable facilities. These charges are fraudulent. Humble never intends to receive them in full, because it has waived all (or almost all) of the portion of the charges that the patients are responsible for paying, including coinsurance. Rather, Humble expects to receive only payment from Cigna and (perhaps) nominal amounts from the members. The amounts that Humble billed were therefore fraudulent. By waiving the members' responsibility, Humble severely compromised Cigna's and its customers' ability to control the cost of health care for its members.

33. Because Cigna's plans cover only charges that its members are actually required to pay, the plans are not required to cover the amounts that Humble waived. But Humble does not disclose its true charges to Cigna. Rather, it sends Cigna bills listing false, grossly inflated charges that it never intended to collect in full, intending for Cigna to base its reimbursement on that inflated amount.

34. Thus, while patients who were Cigna plan members were paying Humble nothing at all, or were paying as if the services were in-network, Cigna was still paying Humble as if they were out-of-network. The result was that out-of-network costs skyrocketed and Cigna paid millions of dollars to Humble that it was not obliged to pay. To this day, Humble continues to send Cigna fraudulent bills, listing charges that it has no intention of ever fully collecting from its patients.

35. Humble's practice of overbilling Cigna is strategic and no accident. Humble has overbilled other managed care companies as well. For example, in November 2011, Humble billed United Health Care more than $85,000 for a routine 25-minute adenoid and tube procedure. Ultimately, Humble was paid over $56,000 from its out-of-network scheme, an amount greatly in excess of the usual, customary, and reasonable fees for its service.

-12-

Additionally, in May 2011, Humble billed Aetna Life Insurance Company $23,925 for an outpatient procedure that was described as ear wax removal.  Humble also charged Aetna between $113,882 and $265,184 for nose surgery, an outpatient procedure that reputable in-network hospitals would charge a fraction to perform.  Again, Humble was paid far more than the usual, customary, and reasonable fees for its service. In a similar lawsuit pending in the Southern District of Texas, Humble judicially admitted both orally and in writing that, based on the hospital's collection history, Humble expects private carriers to reimburse only "about one-third" of the billed charges.  *See* Pls.' Mot. Summ. J., *Aetna Life Ins. Co. v. Humble Surgical Hospital*, No. 4:12-cv-1206 (S.D. Tex. May 24, 2013), ECF No. 112. Based on Humble's own judicial admissions, the market has determined that the approximate reasonable fees for the services Humble provides is "about one-third" of what Humble charges.  Humble also has admitted in this litigation with Aetna that it collected only a fraction of the patients' responsibility.  *See* Pls.' Mot. To Compel, *Aetna Life Ins. Co. v. Humble Surgical Hospital*, No. 4:12-cv-1206 (S.D. Tex. Oct. 1, 2013), ECF No. 144.

> ### ii.     *Humble enters into undisclosed fee-splitting contracts with physicians who refer it patients*

36.     Humble enters into facility fee-splitting contracts with the physicians who refer their patients to Humble.  *See id.* (Humble entered into a fee-splitting contract, agreeing to pay one doctor as much as 35% of the collected hospital charges for the patients he referred to Humble).  Humble's payment of referral fees encourages physicians to refer their patients to this small, five-bed, out-of-network facility for their surgeries.  Even with its one-third collection rate and facility fee-splitting with physicians, Humble still collects enough money from private carriers through its out-of-network strategy to generate millions of dollars of profits and income to its owners.  *See id.*

37.     Neither Humble, nor the doctors to whom it pays these fee-splitting referral fees, disclose to the patients that the doctors receive kickbacks for using Humble.  The patients often are told that Humble is a better facility than the in-network option, or Humble is the only choice the doctors provide to their patients.  This violates Texas disclosure requirements and also misleads patients about their choice of health care providers and in-network options.

38.     Simply put, Humble is involved in a scheme to gouge the health care system, Cigna, and its members out of millions of dollars.  Prior to Cigna filing this suit, Humble had succeeded, at least temporarily.  The Defendant's billing practices are examples of greed over need and this abuse must be stopped.  Cigna brings this action under state and federal law for the disgorgement of these excessive fees and for other damages, as set forth more particularly herein.  Cigna also seeks declaratory and injunctive relief concerning the Defendant's wrongful billing practices.

## F.     Violations of Texas Statutory Law

39.     Humble has violated numerous Texas statutory laws concerning the billing practices of medical providers providing treatment and services in the State of Texas.  These violations are pertinent to the causes of action Cigna asserts in this Complaint.

### i.       Violations of Texas Occupations Code § 101.203

40.     Section 101.203 of the Texas Occupations Code mandates that "[a] health care professional may not violate Section 311.0025, Health and Safety Code."  Section 311.0025(a) consists of the following prohibition:

> (a) A hospital, treatment facility, mental health facility, or health care professional may not submit to a patient or a third party payor a bill for a treatment that the hospital, facility, or professional knows was not provided or knows was improper, unreasonable, or medically or clinically unnecessary.

HOU:3372638.1

41.   Humble submitted charges for medical treatment that it knew were improper or unreasonable and violated section 101.203.

42.   Furthermore, Humble treats patients pursuant to a set pattern of seeking patients based upon their financial viability and reimbursement potential, rather than any determination of patient need.

### ii.   Violations of Texas Occupations Code § 105.002

43.   Section 105.002 of the Texas Occupations Code concerns unprofessional conduct. It prohibits a health care provider, in connection with the provider's professional activities, from knowingly presenting (or causing to be presented) a false or fraudulent claim for the payment of a loss under an insurance policy.  It further prohibits a health care provider, in connection with its professional services, from knowingly preparing, making, or subscribing to any writing, with the intent to present or use the writing, or allow it to be presented or used, in support of a false or fraudulent claim under an insurance policy.

44.   Humble has produced, or cause to be produced, various reports, itemized billing statements and UB-04/CMS-1450 forms to Cigna seeking payment for its services at fees far higher than the reasonable charges for the same services in the relevant market.  Humble also knew that the billed amounts were false charges because it never intended to collect the patients' financial responsibility of those billed amounts.  The Defendant knew that these requests for reimbursement included false and inflated charges for treatment and services that were not reasonable.  Humble also knew that these billing forms would be presented to Cigna in regard to claims for benefits under Cigna-insured and employer-funded healthcare plans.

### Violations of Texas Insurance Code § 1204.55

45.   Section 1204.055 of the Texas Insurance Code mandates that "[a] physician or other health care provider may not waive a deductible or copayment by the acceptance of an

assignment." Humble represents to patients that the services at Humble will cost less than the same services at an in-network facility. Humble's statements, however, are false because, to implement its strategy, Humble routinely waives patients' financial responsibility in exchange for accepting the patients' assignment of benefits under which Humble then bills Cigna inflated amounts that fail reveal that the patients' share has been waived. Humble's waiver of patients' financial responsibility is a violation of Section 1204.055 and is a mechanism of committing fraud because Humble never intents to collect from the patients' portion and fully intends for Cigna to base its reimbursements on grossly inflated charges which appear to be billed according to the plans.

### Violations of Texas Occupations Code § 102.001 & § 102.006

46.    Section 102.001 of the Texas Occupation Code provides that "[a] person commits an offense if the person knowingly offers to pay or agrees to accept . . . any remuneration . . . to or from another for securing or soliciting a patient or patronage for or from a person licensed, certified, or registered by a state health care regulatory agency." Humble entered into agreements with physicians or practice groups pursuant to which Humble agreed to fee-split a percentage of the collected facility fees in exchange for the physicians or practice groups bringing patients into and performing surgeries at Humble. These fee-splitting agreements violate Texas law prohibiting any payments for the referral of patients.

47.    Humble's fee-splitting agreements are part of its scheme to commit fraud because Humble is able to attract Cigna members by paying in-network doctors to perform surgery at its hospital. Humble gains the benefit of increased traffic from patients who have health care benefit plans.

48.    In addition, Section 102.006 of the Texas Occupation Code provides that "[a] person commits an offense if . . . the person . . . accepts remuneration to secure or solicit a

patient or patronage for a person licensed, certified, or registered by a state health care regulatory agency; and . . . does not, at the time of initial contact and at the time of referral, disclose to the patient . . . that the person will receive . .  remuneration for securing or soliciting the patient." Neither Humble nor the physicians disclosed this fee-splitting arrangement to Cigna when Humble submitted claims or Cigna's members before the medical services were provided, thereby violating Section 102.006, even assuming that the fee-splitting agreements were lawful.

## V.
## CLAIMS FOR RELIEF

### A.    First Cause of Action — Money Had and Received

49.    Cigna realleges and incorporates by reference the foregoing paragraphs of the Original Complaint.

50.    Humble is entitled to no more than a reasonable fee for the services provided. Humble wrongfully billed for hospital services in an amount greatly in excess of the usual, customary, and reasonable billed charges for the same services in the relevant market.  By routinely charging these excessive fees, the Defendant gouged Cigna, its members, and their plans.  Cigna has paid claims to Humble that it would not have paid but for the wrongful conduct of the Defendant.  The excessive amounts Cigna paid should be returned to Cigna in equity and good conscience.  Accordingly, Cigna seeks the return of money had and received.

51.    In addition, Humble is not entitled to payments for services that the Cigna plans do not cover.  While Cigna's plans are required to cover some portion of the actual charges for services that plan members receive from out-of-network providers like Humble, they are not required to cover amounts for which the members are not billed, are not obligated to pay, or would not have been billed if they did not have insurance.  Humble routinely waived the patients' financial responsibility under the plans and in turn billed Cigna as if no such waiver had

occurred.  Based on these bills, Cigna processed and paid benefits for services as though they were covered under the plans, when in fact they were not.  Accordingly, any payments for services that the Cigna plans did not cover should, in equity and good conscience, be returned to Cigna.

**B.    Second Cause of Action — Common Law Fraud**

52.    Cigna realleges and incorporates by reference the foregoing paragraphs of the Original Complaint.

53.    In addition, or in the alternative, Humble is liable to Cigna for common law fraud. The Defendant submitted false and misleading bills for the purpose of recovering reimbursement from Cigna for charges that were substantially in excess of the usual, customary, and reasonable charges for such services, and thus were manifestly unconscionable and overreaching.  Nothing in the nature and circumstances of the services that the Defendant rendered justifies the excessive charges submitted to Cigna.

54.    Humble also submitted bills to Cigna falsely stating amounts for its services that were higher than the actual amounts Humble required Cigna's plan members to pay for those services.  Because Humble waived the patients' financial responsibility without notifying Cigna and billed Cigna for the entire amount, Humble made material misrepresentations to Cigna that were false with each bill.

55.    In addition, Humble failed to reveal that it had entered into facility fee-splitting agreements with physicians or physician practice groups and that a portion of the hospitals facility fees collected would be paid to the physicians or physician practice groups.  Because Humble split its facility fees for the referral of patients to its hospital without notifying Cigna, Humble made material misrepresentations to Cigna that were false with each bill.

56.     At the time these misrepresentations were made, the Defendant knew they were false or made them without regard to their truth or falsity.  Further, these misrepresentations were made with the intention that Cigna act upon them.

57.     In submitting bills for excessive and false charges, Humble calculated that by reason of the circumstances of their submission and for other reasons, Cigna would not discover at least some of them, thereby resulting in a windfall to the Defendant.

58.     In submitting bills for excessive and false charges, Humble did not disclose waivers, reassurances or other promises made to induce patients to use its facility, including reassurances that they would not pay more in coinsurance, deductibles or other patient-responsibility charges than they would at an in-network facility.  In fact, Humble did not disclose that it billed patient/members for only a fraction of the amount of their financial responsibility.  Humble also misrepresented its facility charges, because the bills it submitted to Cigna were not for the amounts that the patient actually agreed to pay, but for inflated amounts.

59.     In submitting its bills, Humble intended that Cigna rely on the UB-04 and representations contained therein in issuing reimbursement for the services billed.  Cigna reasonably relied on these representations and issued payments to the Defendant, unaware that concealed among the electronically submitted bills were intentional overcharges, charges for services that should not have been separately billed and overstated charges resulting from Humble's undisclosed waivers of coinsurance, deductibles or other charges.  The misrepresentations, and Cigna's reliance on them, were the direct and proximate cause of damages to Cigna.  Humble made representations to Cigna as alleged and benefitted from the fraud.

60.     Cigna seeks to recover its actual damages, consequential damages, incidental damages, and costs incurred from the foregoing actions.

**C.     Third Cause of Action — Negligent Misrepresentation**

61.     Cigna realleges and incorporates by reference the foregoing paragraphs of the Original Complaint.

62.     In addition, or in the alternative, Humble is liable for negligent misrepresentation. The Defendant made material misrepresentations when it (1) submitted false and misleading bills for reimbursement, which contained charges that were substantially in excess of the usual, customary, and reasonable charges for the same or similar medical services in the relevant market, and (2) submitted claims to Cigna for facility charges that were in excess of the amounts that the patients actually agreed to pay.  These misrepresentations were made in the course of the Defendant's businesses in which they had a pecuniary interest.  Humble supplied false information for the guidance of Cigna in its business.  Humble failed to exercise reasonable care or competence in communicating this information.  As a direct and proximate result of these negligent misrepresentations, Cigna has suffered damages.

63.     Cigna seeks to recover its actual damages, consequential damages, and costs incurred from the Defendant's actions.

**D.     Fourth Cause of Action — Unjust Enrichment**

64.     Cigna realleges and incorporates by reference the foregoing paragraphs of the Original Complaint.

65.     In addition, or in the alternative, Humble is liable under the principle of unjust enrichment.  Under Texas law, one may recover based on unjust enrichment if another party has used fraud, duress, or taking undue advantage to obtain a benefit.

66.     Cigna's plans are required to cover some portion of the actual charges for services that plan members receive from out-of-network providers like Humble.  Cigna's plans are not required to cover amounts that members are not billed, are not obligated to pay, or for which they would not have been billed if they did not have insurance.

67.     Humble submitted bills to Cigna falsely stating charges for amounts that were higher than the actual amounts that Humble required Cigna's plan members to pay for those services.  Based on these bills, Cigna processed benefits for services based on these falsely-stated charges and paid these benefits directly to Humble.

68.     When Cigna paid benefits to Humble that the plans were not obligated to cover, Humble obtained a benefit from Cigna through its fraudulent billing practices.  As a result, Humble has been unjustly enriched and Cigna has been injured.

69.     In addition, Humble wrongfully billed for hospital services in an amount greatly in excess of the usual, customary, and reasonable billed charges for the same services in the relevant market.  Cigna paid Humble based on its bills for these excessive and unreasonable charges.  Allowing the Defendant to retain the money paid for services allegedly rendered to members of Cigna's various health care plans — to which the Defendant was not entitled — would unjustly enrich Humble.

70.     Cigna seeks to recover the actual damages, consequential damages, incidental damages, and costs incurred from these actions.

**E.      Fifth Cause of Action — Injunctive Relief**

71.     Cigna realleges and incorporates by reference the foregoing paragraphs of the Original Complaint.

72.     Humble is engaging in practices that violate Texas statutory laws and other applicable standards of conduct concerning the billing practices of medical providers and the disclosure of material information to patients.

73.     Cigna seeks injunctive relief that Humble cease and desist these unlawful practices.  Specifically, Cigna requests that Humble be enjoined from (1) submitting medical claims to Cigna that exceed the usual, customary, and reasonable fees for similar services provided at hospitals in the Houston market, (2) balance billing Cigna's members for unreasonable fees, (3) waiving, reassuring or making other promises to induce Cigna members to use their facilities, including reassurances that they would not pay more in coinsurance, deductibles or other patient-responsibility charges than they would at an in-network facility, and (4) fee-splitting its hospital facility fees with physicians or physician practice groups for their referral of patients to Humble for surgery.

74.     Cigna also requests that the Court require Humble to fully notify and apprise all patients, including Cigna's members, when their referring physicians have an ownership interest in the Defendant's respective facilities or are paid a fee-split from Humble for referring patients to its facility.

75.     A permanent injunction is proper because there will be immediate and irreparable harm if Humble continues to submit fraudulent claims and waive the patients' financial responsibility and Cigna has no adequate remedy at law.  A greater injury will result from denying the injunction than from its being granted, and the injunction will not disserve the public interest.

## F.    Sixth Cause of Action — Declaratory Judgment (State Law)

76.     Cigna realleges and incorporates by reference the foregoing paragraphs of the Original Complaint.

77.     An actual, justifiable controversy exists between Cigna and Humble concerning the improper billing practices of the Defendants described herein, including its violation of Texas statutory laws regarding same.  Pursuant to 28 U.S.C. § 2201 and Chapter 37 of the Texas Civil Practice and Remedies Code, Cigna seeks a declaratory judgment that (1) Humble has violated Texas statutory laws concerning the billing of medical treatment and services provided to Cigna members, (2) Humble did not disclose waivers, reassurances, or other promises made to induce patients to use its facility, including reassurances that they would not pay more in coinsurance, deductibles or other patient-responsibility charges than they would at an in-network facility, (3) Humble has violated Texas statutory laws concerning payment for patient referrals and it did not disclose to Cigna that it entered into fee-splitting contracts with physicians and physician practice groups for their referral of patients to Humble for surgery, and (4) Cigna is entitled to recoup all overpayments paid to Humble on the excessive charges made on medical claims submitted for the treatment of Cigna's members.

## VI.
## EXEMPLARY DAMAGES

78.     Cigna realleges and incorporates by reference the foregoing paragraphs of the Original Complaint.

79.     The Defendant's conduct was fraudulent, malicious, and resulted in harm to Cigna.  As a consequence, Cigna is entitled to recover exemplary damages.

## VII.
## EQUITABLE RELIEF (ERISA)

80.     Cigna realleges and incorporates by reference the foregoing paragraphs of the Original Complaint.

81.     In the alternative, to the extent this dispute involves the exercise of Cigna's discretion under an ERISA plan, under the terms of ERISA, Cigna is an ERISA fiduciary.  Cigna contends its state law claims may be pursued because they do not relate to ERISA and are not preempted and because some of the plans in question are non-ERISA plans.

82.     To the extent that the Defendant's entitlement to be paid arises pursuant to Cigna's plan members' assignments to them, Humble stands in the shoes of an ERISA beneficiary.

83.     The Defendant is in actual or constructive possession and control over specifically identifiable funds that belong in good conscience to Cigna or the ERISA plans at issue in this suit.

84.     As authorized by 29 U.S.C. § 1132(a)(3), Cigna therefore seeks against Humble all relief that was typically available in equity.

85.     The plans at issue do not cover charges that providers like Humble do not require plan members to pay.  Since August 2010, Cigna made benefit payments to Humble based on its billed charges.  Humble did not require plan members to pay the full amount of the billed charges.  The charges were more than the customary and reasonable charges in the market for similar services.

86.     Cigna made overpayments to Humble in the amount of the difference between the benefits that the plans paid and the benefits to which the plan member were contractually entitled, based on amount that Humble actually required the members to pay, and in no case more than the customary and reasonable charge.  Cigna made these overpayments directly to Humble and, upon information and belief, were deposited into a single account in each instance.

87.     These overpayments in good conscience belong to the plans.

88. These overpayments are in Humble's possession and control.

89. These overpayments were made in contravention of plan terms.

90. Without limitation, Cigna seeks (i) a constructive trust over the fees that the Defendant improperly demanded and received, (ii) an order permanently enjoining the Defendant from disposing of or transferring any of the funds still in their possession and control, (iii) an order requiring the return of such funds and a tracing of any portion of the funds no longer in the Defendant's possession or control, (iv) or alternatively, a declaration that Cigna may offset the amount of these overpayments from future payments to Humble, (v) a permanent injunction directing Humble to submit bills for the amount it is actually willing to accept as payment in full from the plan member not to include amounts that Humble does not actually require the member to pay, and (vi) a constructive trust over any such funds in the possession or control of the Defendant as a result of the fraudulent conduct specified herein.

## VIII.
### ATTORNEYS' FEES

91. Cigna realleges and incorporates by reference the foregoing paragraphs of the Original Complaint.

92. Cigna seeks to recover its reasonable and necessary attorneys' fees and costs incurred in connection with prosecuting this action under, without limitation, Chapter 37 of the Texas Civil Practice and Remedies Code, and in the alternative, 29 U.S.C. § 1132(g)(1).

## IX.
### CONDITIONS PRECEDENT

93. Cigna has performed all conditions precedent, or they have otherwise been waived.

-25-

## X.
## <u>Jury Demand</u>

94.    Cigna demands a trial of this action by jury on all issues.

## XI.
## <u>Prayer</u>

Plaintiffs Cigna respectfully request that Defendant Humble Surgical, LLC be cited to appear and answer, and that on final trial hereof, Cigna have judgment against this Defendant for the following:

a.    An award of both actual damages and consequential damages;

b.    An award of exemplary damages;

c.    Equitable relief as requested above;

d.    Declaratory and injunctive relief as requested above;

e.    Reasonable and necessary attorneys' fees;

f.    Costs of court;

g.    Prejudgment and post-judgment interest; and

h.    Such other and further relief at law or in equity to which Cigna may be justly entitled.

HOU:3372638.1

Respectfully submitted,

**ANDREWS KURTH LLP**

By: *s/ John B. Shely*
    John B. Shely
    Texas State Bar No. 18215300
    Southern District of Texas No. 7544
    Dena Palermo
    Texas State Bar No. 08928830
    Southern District of Texas No. 6082
    600 Travis Street, Suite 4200
    Houston, Texas 77002
    (713) 220-4152
    (713) 238-7206
    jshely@andrewskurth.com
    dpalermo@andrewskurth.com

**ATTORNEYS FOR PLAINTIFFS
CONNECTICUT GENERAL LIFE
INSURANCE COMPANY AND
CIGNA HEALTH AND LIFE
INSURANCE COMPANY**

HOU:3372638.1