**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CONNECTICUT GENERAL LIFE** | § | |
| **INSURANCE COMPANY AND** | § | |
| **CIGNA HEALTH AND LIFE** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | **JURY DEMANDED** |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:13-cv-3291** |
| | § | |
| **HUMBLE SURGICAL HOSPITAL, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

## CIGNA'S FIRST AMENDED COMPLAINT

Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, "Cigna") file this First Amended Complaint ("Amended Complaint") against Defendant Humble Surgical Hospital, LLC ("Humble"), and would respectfully show the Court as follows:

## I.

### INTRODUCTION

1. This is a case about Humble's excessive and fraudulent billing. Cigna seeks to recover overpayments it made to Humble, an out-of-network, physician-owned, five-bed hospital. Pursuant to the schemes described hereafter, Humble has been gouging Cigna and its members, through millions of dollars in exorbitant bills. In fact, in the first three years that Humble was in operation, Humble submitted over $52.6 million in bills to Cigna, of which Cigna paid Humble over $8.6 million. In short, Humble engages in healthcare profiteering.

2. As an out-of network provider, Humble does not participate in Cigna's provider network, i.e., it is not in-network and has no contract with Cigna. Humble would not be paid

based on its exorbitant bills to Cigna if it were an in-network hospital.  To entice Cigna's members into receiving services at Humble's out-of-network facility, Humble claimed to offer a "high end" or "upscale" experience, while promising  Cigna's members that they would pay as if they received the services on an in-network basis.  Humble waived the patients' financial responsibility, and billed Cigna inflated amounts that do not reveal that Humble waived the patients' share.  Cigna processed Humble's bills based on the face amount of the false and inflated charges, resulting in millions of dollars of overpayments to Humble.

3.      Humble's owners are among the physicians who refer patients to the facility and directly profit from their self-referrals.  In addition, Humble has fee-splitting agreements with doctors, paying them to refer their patients to Humble's facility. The damages sought in this case relate to facility fees and related fees Humble charged and Cigna paid.  The physicians are paid separately for their services provided at Humble and are not part of the damages sought in this suit.  Because of the inherent conflict of interest involved in a physician referring patients to a facility in which the physician has an ownership interest, strict and complete disclosure to patients is mandated as a matter of ethics and law.  A similar conflict applies to doctors who fee-split with Humble and also requires complete disclosure to patients under Texas law.  Humble has fallen well short of its disclosure obligations, including those applicable to Cigna members covered by Medicare.

4.      As the entity that made the payments, Cigna brings this action to recover the overpayments made to Humble for its false and excessively billed services.  Cigna sues for, among other things, common law fraud, money had and received, unjust enrichment, and alternative equitable relief under the Employee Retirement Income Security Act ("ERISA") for injuries it suffered as a result of the excessive and unreasonable fees that Humble charged Cigna

and its members.  Cigna also seeks injunctive relief requiring Humble to disclose that the facility is physician-owned when these physician owners self-refer their patients, including Cigna members, to Humble.  Additionally, Humble should be required to disclose that Humble entered into fee-splitting agreements with physicians when these physicians refer their patients, including Cigna members, to Humble. This Court should also enjoin Humble from engaging in its billing scheme, including charging unreasonable fees, and waiving the patients' financial responsibility, as detailed herein.  Cigna brings this action to ensure that its members are charged only appropriate amounts for services rendered and that they are required to pay their share of the reasonable charges, thereby helping to maintain the affordability of healthcare coverage for individuals and employers.

## II.

### PARTIES

5.      Plaintiff Connecticut General Life Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut.

6.      Plaintiff Cigna Health and Life Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut.

7.      Defendant Humble Surgical Hospital, LLC is a Texas limited liability company that regularly conducts business in Humble, Harris County, Texas.  Humble has already appeared and answered in this case.

## III.
### JURISDICTION AND VENUE

8.     This Court has personal jurisdiction over Humble, which is a Texas entity doing business in Texas.

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10.     Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws or treaties of the United States.

11.     Venue is proper in the Southern District of Texas pursuant to 29 U.S.C. § 1132(e)(2) and § 1391(b)(1) because Humble resides or may be found in this judicial district and pursuant to 29 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred here.

## IV.
### FACTUAL BACKGROUND

**A.     Cigna's Healthcare Benefits Plans**

12.     Cigna is a global health service company dedicated to helping people improve their health, well-being, and sense of security by offering a broad integrated suite of health services and products to its members.

13.     Cigna's health services and products provide Cigna members with access to health coverage and benefits pursuant to a variety of healthcare benefit plans and policies of insurance, including (i) self-funded plans for which Cigna provides various third-party claims administrative services, (ii) plans insured under group policies issued by Cigna where plans are established and maintained by private employers, (iii) plans covering federal employees,

(iv) plans covering employees of state governmental entities, (v) church plans, (vi) policies issued to individuals, and (vii) Medicare.

14.     In general, Cigna's plans allow members the choice of receiving healthcare services either *in-network*, from medical providers who contract with Cigna to provide services at reduced rates, or *out-of-network*, from providers who are not in Cigna's provider network. Medical providers who enter into contracts with Cigna are commonly known as *participating providers*. Cigna members have ready access to participating providers through a directory of participating providers that Cigna publishes to its members. The contracts between Cigna and participating providers require the participating provider to accept in-network or contract rates for services as payment in full. The Cigna member ordinarily has no financial obligation to the participating provider beyond a small, fixed copayment or coinsurance, and the participating provider is contractually prohibited from billing the member for any other amounts (*i.e.*, *balance billing*), except under limited circumstances. Thus, members may obtain medical services from participating providers with little or no financial risk or out-of-pocket expense.

15.     Cigna's plans also include coverage for some out-of-network services that *non-participating providers*, like Humble, render to its members. Non-participating providers have not entered into contracts with Cigna, have not agreed to accept in-network rates as payment in full for their services, and the dollar amount of fees are not set in advance. Non-participating providers set their own fees for services rendered to their patients subject to the laws and regulations that govern the practice of medicine in Texas. The rates charged by non-participating providers are often significantly higher than contract rates. As a result, a member's financial risk and out-of-pocket expense for obtaining medical services from non-participating providers is often greater.

**B.    Cigna's Discretionary Authority to Act on Behalf of the Plans**

16.    Cigna has discovered that it overpaid Humble on hundreds of healthcare benefit claims, which Cigna administered on behalf of nearly 200 plans.  The plans associated with the healthcare benefit claims on which Cigna seeks recovery from Humble are identified in **Exhibit A** to this Amended Complaint.

17.    Most of these plans are Administrative Services Only ("ASO") plans that are employer sponsored and funded, typically through employee contributions.  Cigna serves as the claims administrator for these plans and has discretionary authority over the payment of claims. There are approximately 138 ASO plans associated with the healthcare benefit claims on which Cigna seeks recovery from Humble, which are identified in **Exhibit A** to this Amended Complaint.  A representative example of a plan description for an ASO plan involved in this case is attached as **Exhibit B.**   For the ASO plans, Cigna serves as the authorized claims-review fiduciary:

> **Discretionary Authority**
>
> The Plan Administrator delegates to CG the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan. Such discretionary authority is intended to include, but not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments. The Plan Administrator also delegates to CG the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative.[1]

18.    The plan sponsors or policy holders for the ASO plans involved in this case have entered into Administrative Services Only Agreements ("ASO Agreements") with Cigna, which

---

[1] Exhibit B, at p. 53.

delegate to Cigna the authority, responsibility, and discretion to determine eligibility for coverage, make factual determinations and coverage determinations, conduct a full and fair review of each denied claim, and decide appeals. A representative example of an ASO Agreement for an ASO plan involved in this case is attached as **Exhibit C** to this Amended Complaint. The ASO Agreements contain language providing Cigna with authority to act for the plan:

> Employer hereby delegates to [Cigna] the authority, responsibility and discretion to (i) determine eligibility and enrollment for coverage under the Plan according to the information provided by the Employer, (ii) make factual determinations and to interpret the provisions of the Plan to make coverage determinations on claims for Plan Benefits, (iii) conduct a full and fair review of each claim which has been denied as required by ERISA, (iv) decide level one mandatory appeals of "Urgent Care Claims" (as that term is defined in ERISA), and (v) conduct both mandatory levels of appeal determinations for all "Concurrent," "Pre-service" and "Post-service" claims (as those terms are defined under ERISA) and notify the Member or the Member's authorized representative of its decision . . . .[2]

19.     Since August of 2010, Cigna has made payments in excess of $7.1 million to Humble on behalf of ASO plans.

20.     Cigna also offers fully-insured plans, which Cigna funds, not the sponsoring employers. There are approximately 35 fully-insured plans associated with the healthcare benefit claims on which Cigna seeks recovery from Humble, which are identified in **Exhibit A** to this Amended Complaint. A representative example of a plan description for a fully-insured plan involved in this case is attached as **Exhibit D** to this Amended Complaint. For the fully-insured plans, Cigna serves as the authorized claims-review fiduciary for the fully-insured plans, in that it has discretionary authority over the payment of claims:

---

[2] Exhibit C, at p. 9.

**Discretionary Authority**

> The Plan Administrator delegates to CG the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan. Such discretionary authority is intended to include, but not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments. The Plan Administrator also delegates to CG the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative.[3]

21.    Since August 2010, Cigna has paid approximately $1.5 million of its own funds to Humble on behalf of the fully-insured plans.

22.    Many of Cigna's plans are governed by ERISA, in that they are non-governmental employee health and welfare benefit plans maintained by employers for the benefit of their employees and do not fall within any ERISA safe-harbor provision.   There are approximately 160 ERISA-governed plans associated with the healthcare benefit claims on which Cigna seeks recovery from Humble, which are identified in **Exhibit A** to this Amended Complaint.  **Exhibits C** and **D** to this Amended Complaint are representative examples of plan descriptions for ERISA governed plans involved in this case.[4]

23.    Since August 2010, Cigna has paid approximately $8.1 million to Humble on behalf of the ERISA-governed plans.

24.    In addition, a number of Cigna's plans are not governed by ERISA because they are sponsored by governmental or church employers.   There are approximately 10 non-ERISA governed plans associated with the healthcare benefit claims on which Cigna seeks recovery

---

[3] Exhibit D, at p. 62.

[4] *See* Exhibit B, at p. 52; Exhibit D, at p. 61.

HOU:3540555.2

from Humble, which are identified in **Exhibit A** to this Amended Complaint.  A representative example of a plan description of a non-ERISA plan involved in this case is attached as **Exhibit E** to this Amended Complaint.  For plans not governed by ERISA, Cigna serves as the authorized claims-review fiduciary in that it has express discretionary authority over the payment of claims.[5]

25.     Since August 2010, Cigna has paid approximately $527,000 to Humble on behalf of the non-ERISA governed plans.

26.     Regardless of the type of plan funding, and regardless of whether the plan is governed by ERISA, Cigna exercises its discretion as a claims administrator of each of the plans associated with claims on which Cigna seeks recovery from Humble, in that each plan expressly delegates to Cigna discretionary authority over plan assets and claims administration.   With respect to the ERISA plans at issue, Cigna is a fiduciary and has administered claims and/or appeals on behalf of such plans associated with the benefit claims on which it seeks recovery.

27.     The plans also expressly authorize Cigna to collect overpayments made on the plans' behalf.  *See, e.g.*, **Exhibit B**, at p. 40 ("When an overpayment has been made by CIGNA, CIGNA will have the right at any time to: recover that overpayment from the person to whom or on whose behalf it was made; or offset the amount of that overpayment from a future claim payment."); **Exhibit D**, at p. 48 ("When an overpayment has been made by CG, CG will have the right at any time to: (a) recover that overpayment from the person to whom or on whose

---

[5] *See* Exhibit E, at p. 41 ("Cigna, in its discretion, will calculate Covered Expenses following evaluation and validation of all provider billings . . . ."); Exhibit F, at p. 12-13 ("Employer hereby delegates to [Cigna] the authority, responsibility and discretion to (i) determine eligibility and enrollment for coverage under the Plan according to the information provided by the Employer, (ii) make factual determinations and to interpret the provisions of the Plan to make coverage determinations on claims for Plan Benefits, (iii) conduct a full and fair review of each claim which has been denied as required by ERISA, (iv) decide level one mandatory appeals of "Urgent Care Claims" (as that term is defined in ERISA), and (v) conduct both mandatory levels of appeal determinations for all "Concurrent," "Pre-service" and "Post-service" claims (as those terms are defined under ERISA) and notify the Member or the Member's authorized representative of its decision . . . .").

behalf it was made; or (b) offset the amount of that overpayment from a future claim payment.");

**Exhibit E**, at p. 41 ("When an overpayment has been made by Cigna, Cigna will have the fight

at any time to: recover that overpayment from the person to whom or on whose behalf it was

made; or offset the amount of that overpayment from a future claim payment.").  Cigna's ASO

Agreements with ASO plans also require it to recover overpayments made on the plans' behalf.

*See, e.g.*, **Exhibit C**, at p. 9 ("In the event Connecticut General overpays a claim for Plan

Benefits or pays Plan Benefits to the wrong party, it shall take all reasonable steps to recover the

overpayment.").

28.     The plans' overpayment recover provisions create an equitable lien by agreement

over any overpayments that Cigna makes.  The plan provisions also put plan members on notice

that any overpayment Cigna makes will be recoverable (*i.e.*, subject to a lien) as soon as the

overpayment is made.

29.     The plan provisions discussed above apply equally to providers when a plan

member assigns his or her benefit claim for reimbursement to the provider.  The plans generally

allow a member to assign his or her claim for reimbursement to a provider, with Cigna's consent.

When a member assigns a claim to a provider, the provider stands in the shoes of the member, is

eligible for reimbursement only to the extent the member would have been in the absence of an

assignment, and, is therefore, on notice and subject to the plan provisions governing

reimbursement including, the cost-share requirements, the exclusions for amounts that would not

have been charged in the absence of insurance or that members are not obligated to pay, and the

recovery of overpayments, and all other exclusions of the plan.

**C.     Cigna's Determination of Claims on Behalf of the Plans**

30.     The plans involved in this case reimburse Cigna members for certain healthcare

costs, defined in the plans as *covered expenses*, which are expenses Cigna members *incur* for

services that are covered under the plan and are medically necessary.  When a claim for reimbursement for a covered expense is submitted by a Cigna member, or by a provider or facility through an assignment of benefits, Cigna determines what part of the charge is considered for coverage by the plan.  This amount is known as the *allowed amount*, and the plans require the employer and the employee to share the cost of reimbursement for the allowed amount.

31.     While in-network providers and facilities agree to provide services at agreed rates, out-of-network providers and facilities are not so constrained and typically charge far higher rates for their services than comparable in-network providers and facilities.  Thus, with respect to out-of-network claims, Cigna limits total payment on such claims to the *maximum reimbursable charge* (MRC) for covered expenses.  The MRC is the lesser of (a) the provider's normal charge for a similar service (typically deemed to be the amount billed), or (b) a specified percentile of charges made by providers of such services or a specified percentile of the reimbursement rate that Medicare provides for such services, in the same geographic area.[6]

32.     The provider's billed amount is relevant and material to the determination of the allowed amount, which is the amount that Cigna determines to be covered by its plan, and which forms the basis for determining Cigna's reimbursement payment.  Because out-of-network, non-participating providers and facilities are not constrained by contracted rates, and typically charge far higher rates for their services than comparable in-network providers and facilities, out-of-network facilities like Humble have an incentive to charge high amounts in the claims that they submit to Cigna, so that the amount Cigna pays on the claim will be correspondingly high.

---

[6] *See, e.g.*, Exhibit B, at pp. 12, 57 (defining MRC); Exhibit D, at pp. 16, 69 (defining MRC); Exhibit E, at pp. 12, 57 (defining MRC).

HOU:3540555.2

**D.    Cigna Plan Provisions Designed to Keep Healthcare Affordable**

33.    Cigna, its members, the healthcare benefit plans, and participating providers have a shared interest in keeping the cost of healthcare affordable and predictable.  To do so, Cigna's healthcare benefit plans encourage members to utilize in-network participating providers, an arrangement beneficial to both the participating providers, who enjoy increased patient traffic, and the patient/members who receive appropriate, high-quality health care services at a fair and reasonable cost.  The agreements between Cigna and its participating providers allow Cigna to deliver health care benefits efficiently through its provider network, to anticipate and control the cost of care, to reduce financial risk to both employer funded and fully insured plans, to reduce its members' financial risk for health care services, and to promote the quality of care through its credentialing and peer review processes.

34.    Cigna's plan members also benefit from predictable healthcare costs. In particular, by seeking in-network healthcare services, Cigna's plan members are assured that they will only have to pay a fixed co-pay or percentage of a fixed amount and that providers and facilities will not be permitted to bill them for any difference between the plans' reimbursement and the providers' or facilities' billed charges. Cigna members also benefit from the increased quality of care brought about by Cigna's in-network credentialing and peer-review processes. Finally, Cigna members benefit from reduced overall healthcare costs in the form of lower premiums.

35.    Cigna's healthcare benefit plans utilize several measures to encourage plan members to seek care in-network, thereby reducing costs as described above.  Most significantly, Cigna's plans require members to pay a higher portion of what Cigna determines to be the allowed amount for out-of-network services through higher cost-share obligations, including co-

payments, deductibles, and coinsurance.[7]  Under the plans, members are required to pay their required cost-share obligations before the plan is required to make any payment.

36.     Two of the most important cost-share mechanisms are the *deductible* and *coinsurance*, which is a percentage of the allowed amount for covered expenses that members must pay out of their own pocket.  Under the plans, members are required to satisfy their required deductible before the plan is required to make any payment, and the deductible for out-of-network services is typically much higher than the deductible that members must pay towards in-network services.

37.     Coinsurance is a critical factor to keeping the cost of healthcare affordable and is one of the key ways in which the plans allocate out-of-network costs between employers and employees.  As with deductibles, the coinsurance that members must pay towards out-of-network services is usually much higher than the coinsurance they must pay (if any) towards in-network services.

38.     Cigna's healthcare plans involved in this case require members to pay between 30% and 50% of the allowed amount for out-of-network services, after satisfying any applicable deductible, as compared to 10% or 20% of the charges billed by in-network, participating providers.  This difference is compounded by the fact that in-network providers already agree to charge reduced amounts for their services, while out-of-network providers have not agreed to charge reduced amounts and typically charge fees far higher than in-network rates.  In addition, to the extent that the amount charged by an out-of-network provider exceeds the allowed amount

---

[7] A "copayment" is a fixed dollar amount that members must pay for certain covered expenses.  *See, e.g.*, Exhibit B, at pp 10, 30; Exhibit D at p. 14.  A "deductible" is an amount that members must pay for covered expense each calendar year before the healthcare plan is required to pay its percentage of covered expenses.  *See, e.g.*, Exhibit B, at p 10; Exhibit D at p. 14. "Coinsurance" is the percentage of charges for Covered Expenses that the members is required to pay. *See, e.g.*, Exhibit B, at pp 30; Exhibit D at p. 14.

for the services provided, plan members are responsible for the difference.  In short, members that seek out-of-network healthcare services must pay a higher percentage of a greater charge and are at risk of having to pay the out-of-network providers the difference between that greater charge and the amount covered by the plan.

39.     The essential purpose of the deductible and coinsurance requirements is to sensitize members to the true costs of out-of-network services, ensuring that if a members receive these services they are willing to pay a greater portion of that expense out of their own pocket.  If patients did not share these costs, then they would have no financial incentive to moderate their demand for out-of-network services or to consider the higher costs of any particular out-of-network provider, leading to increased costs for the plan and ultimately plan members and healthcare consumers in general.  This purpose is in accord with public policy, as expressed by the Department of Health and Human Services, which has noted that "if patients are required to pay even a small portion of their care, they will be better health care consumers, and select items or services because they are medically needed rather than simply because they are free."[8]

40.     Eliminating patients' cost-share obligations to pay more towards out-of-network services undermines Cigna's ability to offer quality in-network services.  If there is no financial difference to plan members between participating and non-participating providers, then they have no financial incentive to prefer participating providers in Cigna's network.  Without the stream of patients that this incentive is designed to produce, providers have less incentive to join Cigna's network, leaving the network less robust, and stripping the employers of the ability to offer affordable healthcare.

---

[8] Department of Health and Human Services, Office of the Inspector General, Special Fraud Alert: Routine Waiver of Copayments and Deductibles under Medicare Part B (May 1991).

41.     Further, to ensure that members receiving out-of-network services satisfy their coinsurance obligation and that non-participating providers do not waive that obligation, Cigna's plans exclude from coverage any expense for which the member is not obligated to pay, for which the member is not billed, or for which the member would not have been billed except for the fact that the charges are covered under the member's plan.  For example, **Exhibit B** to this Amended Complaint (a representative example of the plans associated with healthcare claims on which Cigna is seeking recovery from Humble) states:

### Exclusions, Expenses Not Covered and General Limitations

### Exclusions and Expenses Not Covered

**Additional coverage limitations determined by plan or provider type are shown in the Schedule.  Payment for the following is specifically excluded from this plan:** . . . .

- charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan.[9]

42.     Plan members are not contractually entitled to benefits payment for such non-covered charges.  Cigna's obligation to reimburse a plan member is therefore limited to the expenses actually *incurred* by the member, meaning that the member is obligated to pay for the services.   Thus, if the member has no obligation to pay, then Cigna has no obligation to pay.  Moreover, Cigna's obligation to pay arises only after it receives due proof of loss, which means the member made payment or has a legitimate, legal obligation to pay.  The employers, plan sponsors, plan administrators, and/or policy holders who purchase Cigna's health services and

---

[9] Exhibit B, at p. 34; *see also* Exhibit D, at p. 42-43 (Exclusions, Expenses Not Covered and Limitations. . . . Payment for the following is specifically excluded from this plan . . . charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except Medicaid."); Exhibit E, at p. 35 ("Exclusions, Expenses Not Covered and Limitations . . . Payment for the following is specifically excluded from this plan . . . Charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan.").

products, including the above-described plans, have express understanding that members are not entitled to benefits for medical services for which they have not incurred an expense as alleged herein based upon these and other exclusions, and that such expenses must be incurred, and members must have satisfied their deductible, before Cigna is obligated to pay.

43.     Providers are on notice of the provisions governing reimbursement—including cost-share requirements, the exclusions for amounts that would not have been charged in the absence of insurance or that members are not obligated to pay—and the recovery of overpayments. Among other means, providers are, or should be, aware of the terms of Cigna's plans through: (a) their relationships with Cigna's members; (b) review of members' insurance cards, which often provide co-pay requirements; (c) the eligibility and benefits process, whereby Cigna provides information about a member's eligibility, an initial determination regarding whether a procedure requires pre-authorization under the plan, and, if requested, gives the amount of the members' deductible and out-of-pocket maximum outstanding, as well as their co-pay and co-insurance requirements; (d) receipt of Explanation of Provider benefits reports, which explain the basis of Cigna's payment or denials of claims; (e) correspondence with Cigna relating to the processing of claims; and, (f) with respect to fully-insured plans, which are publicly available on the website of the Texas State Department of Health and Safety.

44.     Moreover, it is well established that out-of-network providers and facilities must charge patients their cost-share obligations. Indeed in some states, including Texas, this requirement is committed to law. *See* Section 1204.066 of the Texas Insurance Code, which provides that "[a] physician or other health care provider may not waive a deductible or copayment by the acceptance of assignment."

**E.      The Defendant's Out-of-Network Strategy To Defraud Cigna**

45.      The Defendant's strategy, sometimes referred to as an *out-of-network strategy*, is implemented when non-contracted medical facilities, like Humble, target and siphon off high-value patients.   The target patients include those whose health benefit plans and policies of insurance provide ready access to out-of-network benefits for services that non-participating providers, like Humble, render to Cigna's members.   In furtherance of its out-of-network strategy, Humble has employed various underhanded schemes and practices, which are described below, to overbill Cigna and have Cigna overpay Humble for medical services provided to Cigna's members.   This suit is Cigna's effort to obtain reimbursement for those overpayments.

*i.      Humble waives patient responsibility and egregiously overbills carriers*

46.      Humble's charges for services are many multiples of the usual, customary, and reasonable fees in the Houston area.   In fact, although it is a small, five-bed, regional hospital, Humble set its prices for services (Charge Master) based on comparable charges in Houston for major hospital systems like Methodist and Memorial Hermann.   In setting its prices, Humble decided to place itself in the 85th percentile, admittedly making its Charge Master among the highest in the area simply because it is out-of-network with most carriers.   *See* Pls.' Mot. To Compel, *Aetna Life Ins. Co. v. Humble Surgical Hospital*, No. 4:12-cv-1206 (S.D. Tex. October 1, 2013), ECF No. 144.   For example, as a measure of how abusive Humble's bills were, Humble submitted, and Cigna paid, the following claims:

> a.      On November 5, 2010, Patient J.M. had an outpatient, spinal fusion procedure performed at Humble.   For this same procedure, the in-network contracted rate would have been approximately $2,700.00, and the Medicare reimbursement if performed as an inpatient procedure would have been approximately $38,830.00 (Medicare does not cover this procedure as an outpatient procedure).   Humble charged Cigna $214,556.00 for this outpatient procedure, or approximately 7,900% higher than the comparable in-network contracted rate, and fraudulently induced Cigna to pay $143,851.00 on this claim.

-17-

b.     On December 30, 2010, Patient L.M. had an outpatient, spinal fusion procedure performed at Humble.  For this same procedure, the in-network contracted rate would have been approximately $2,700.00, and the Medicare reimbursement if performed as an inpatient procedure would have been approximately $9,142.00 (Medicare does not cover this procedure as an outpatient procedure).  Humble charged Cigna $101,080.00 for this outpatient procedure, or approximately 3,700% higher than the comparable in-network contracted rate, and fraudulently induced Cigna to pay $88,041.00 on this claim.

c.     On June 3, 2011, Patient R.S. had an outpatient, nasal septum procedure performed at Humble.  For this same procedure, the in-network contracted rate would have been approximately $11,200.00, and the Medicare reimbursement would have been approximately $13,000.00 (Medicare does not cover this procedure as an outpatient procedure).  Humble charged Cigna $86,988.00 for this outpatient procedure, or approximately 700% higher than the comparable in-network contracted rate, and fraudulently induced Cigna to pay $86,988.00 on this claim.

d.     On September 6, 2011, Patient G.K. had outpatient spinal injections performed at Humble.  For this same procedure, the in-network contracted rate would have been approximately $2,600.00, and the Medicare reimbursement if performed as an inpatient procedure would have been approximately $14,750.00 (Medicare does not cover this procedure as an outpatient procedure).  Humble charged Cigna $88,573.00 for this outpatient procedure, or approximately 3,400% higher than the comparable in-network contracted rate, and fraudulently induced Cigna to pay $88,573.00 on this claim.

e.     On September 29, 2011, Patient K.L. had an outpatient, neuroelectrodes implant procedure performed at Humble.  For this same procedure, the in-network contracted rate would have been approximately $3,100.00, and the Medicare reimbursement if performed as an inpatient procedure would have been approximately $11,500.00 (Medicare does not cover this procedure as an outpatient procedure).  Humble charged Cigna $120,087.00 for this outpatient procedure, or approximately 3,800% higher than the comparable in-network contracted rate, and fraudulently induced Cigna to pay $100,445.00 on this claim.

f.     On October 26, 2011, Patient R.T. had outpatient, spinal surgery performed at Humble.  For this same procedure, the in-network contracted rate for this same procedure would have been approximately $3,100.00, and the Medicare reimbursement if performed as an inpatient procedure would have been approximately $23,890.00 (Medicare does not cover this procedure as an outpatient procedure).  Humble charged Cigna $170,440.00 for this outpatient procedure, or approximately 5,400% higher than the comparable in-network contracted rate, and fraudulently induced Cigna to pay $107,333.00 on this claim.

The foregoing are only a few of many examples of Humble's bloated bills that demonstrate a pattern of egregious financial abuse that has been regularly levied upon Cigna's members.

47.     Because it treats more than 85% of its patients on an outpatient basis, most of Humble's billings are for outpatient services.  Humble's bills are often in excess of $100,000 for outpatient hospital stays of only a few hours.

48.     Humble not only charges excessive and unreasonable fees, it also waives the patients' financial responsibility.  Ordinarily, a Cigna member's utilization of an out-of-network hospital, rather than an in-network hospital, would result in higher out-of-pocket costs to the patient.  To encourage patients to use its out-of-network facility, however, Humble has told patients that it would accept what Cigna paid, or would bill them as if they were using an in-network provider, assuring patients that they will only owe the remaining portion of any in-network deductible or will otherwise not be subject to higher out-of-pocket costs, or would accept a small, nominal fee as payment in full and not otherwise subject them to any additional out-of-pocket costs.  In fact, Humble has even misrepresented to patients that the services at Humble will cost less than the same services at an in-network facility.  By way of example, Humble made the following statements to the following patients:

a.     Humble told Patient M.K that M.K. would not need to pay any balances, and that Humble would accept what Cigna paid.  Humble later submitted a claim for $120,828.56 for Patient M.K.'s procedures without disclosing that it had waived Patient M.K.'s entire cost share responsibility;

b.     Humble told Patient B.H. that Humble would charge B.H. as if Humble were in-network.  Humble later submitted a claim for $195,405.95 for Patient B.H.'s procedures without disclosing that it had waived Patient B.H.'s required out-of-network cost share;

c.     Humble told Patient M.H. that Humble would charge M.H. a copayment that would be the same amount as if Humble were in-network.  Humble later

submitted a claim for $92,788.67 for Patient M.H.'s procedures without disclosing that it had waived Patient M.H.'s required out-of-network cost share;

d.      Humble told Patient R.T. that Humble would only charge R.T. a standard copayment of $125.00 and nothing more.  Humble later submitted a claim for $170,440.89 for Patient R.T.'s procedures without disclosing that it had waived virtually all of Patient R.T.'s cost share responsibility.

All of these statements are demonstrably false.  To make its gouging scheme work, Humble has billed and/or collected only a fraction of the amount, if anything at all, the patient/members owed under the terms of their plans.  In fact, on average, Humble has collected only 16.32% of the cost share responsibility that the Cigna member should have paid under the applicable healthcare benefit plan.  By waiving members' out-of-pocket costs as an inducement to choose Humble over reputable, in-network facilities, Humble improperly reaps substantial windfalls.

49.      Humble's waiver of patients' financial responsibility is a mechanism for committing fraud.  After treating the member, Humble submits bills to Cigna listing its purported charges for the service; charges that were much more than those of comparable facilities. Humble never intends to receive them in full, because it has waived all (or almost all) of the portion of the charges that the patients are responsible for paying, including coinsurance.  Rather, Humble expects to receive only payment from Cigna and (perhaps) nominal amounts from the members. The amounts that Humble billed were therefore fraudulent. By waiving the members' responsibility, Humble severely compromised Cigna's and its customers' ability to control the cost of health care for its members.

50.      Because Cigna's plans cover only charges that its members are actually required to pay, the plans are not required to cover the amounts that Humble waived. But Humble does not disclose its true charges to Cigna.  Rather, it sends Cigna bills listing false, grossly inflated charges that it never intended to collect in full, intending for Cigna to base its reimbursement on that inflated amount.

-20-

51.     Thus, while patients who were Cigna plan members were paying Humble nothing at all, or were paying as if the services were in-network, Cigna was still paying Humble as if they were out-of-network.  The result was that out-of-network costs skyrocketed and Cigna paid millions of dollars to Humble that it was not obliged to pay.  To this day, Humble continues to send Cigna fraudulent bills, listing charges that it has no intention of ever fully collecting from its patients.

52.     Humble's practice of overbilling Cigna is strategic and no accident.  Humble has overbilled other managed care companies as well.  For example, in November 2011, Humble billed United Health Care more than $85,000 for a routine 25-minute adenoid and tube procedure.  Ultimately, Humble was paid over $56,000 from its out-of-network scheme, an amount greatly in excess of the usual, customary, and reasonable fees for its service. Additionally, in May 2011, Humble billed Aetna Life Insurance Company $23,925 for an outpatient procedure that was described as ear wax removal.  Humble also charged Aetna between $113,882 and $265,184 for nose surgery, an outpatient procedure that reputable in-network hospitals would charge a fraction to perform.  Again, Humble was paid far more than the usual, customary, and reasonable fees for its service. In a similar lawsuit pending in the Southern District of Texas, Humble judicially admitted both orally and in writing that, based on the hospital's collection history, Humble expects private carriers to reimburse only "about one-third" of the billed charges.  *See* Pls.' Mot. Summ. J., *Aetna Life Ins. Co. v. Humble Surgical Hospital*, No. 4:12-cv-1206 (S.D. Tex. May 24, 2013), ECF No. 112. Based on Humble's own judicial admissions, the market has determined that the approximate reasonable fees for the services Humble provides is "about one-third" of what Humble charges.   Humble also has admitted in the litigation with Aetna that it collected only a fraction of the patients' cost share

responsibility.  *See* Pls.' Mot. To Compel, *Aetna Life Ins. Co. v. Humble Surgical Hosp.*, No. 4:12-cv-1206 (S.D. Tex. Oct. 1, 2013), ECF No. 144.

> *ii.*      ***Humble enters into undisclosed fee-splitting contracts with physicians who refer it patients***

53.      Humble enters into facility fee-splitting contracts with the physicians who refer their patients to Humble.  *See id.* (Humble entered into a fee-splitting contract, agreeing to pay one doctor as much as 35% of the collected hospital charges for the patients he referred to Humble).  Humble's payment of referral fees encourages physicians to refer their patients to this small, five-bed, out-of-network facility for their surgeries.  Even with its one-third collection rate and facility fee-splitting with physicians, Humble still collects enough money from private carriers through its out-of-network strategy to generate millions of dollars of profits and income to its owners.  *See id.*

54.      Neither Humble, nor the doctors to whom it pays these fee-splitting referral fees, disclose to the patients that the doctors receive kickbacks for using Humble.  The patients often are told that Humble is a better facility than the in-network option, or Humble is the only choice the doctors provide to their patients.  This violates Texas disclosure requirements and also misleads patients about their choice of health care providers and in-network options.

55.      Simply put, Humble is involved in a scheme to gouge the health care system, Cigna, and its members out of millions of dollars.  Prior to Cigna filing this suit, Humble had succeeded, at least temporarily.  The Defendant's billing practices are examples of greed over need and this abuse must be stopped.  Cigna brings this action under state and federal law for the disgorgement of these excessive fees and for other damages, as set forth more particularly herein.  Cigna also seeks declaratory and injunctive relief concerning the Defendant's wrongful billing practices.

**F.      Violations of Texas Statutory Law**

56.      Humble has violated numerous Texas statutory laws concerning the billing practices of medical providers providing treatment and services in the State of Texas.  These violations are pertinent to the causes of action Cigna asserts in this Amended Complaint.

*i.      Violations of Texas Occupations Code § 101.203*

57.      Section 101.203 of the Texas Occupations Code mandates that "[a] health care professional may not violate Section 311.0025, Health and Safety Code."  Section 311.0025(a) consists of the following prohibition:

> (a) A hospital, treatment facility, mental health facility, or health care professional may not submit to a patient or a third party payor a bill for a treatment that the hospital, facility, or professional knows was not provided or knows was improper, unreasonable, or medically or clinically unnecessary.

58.      Humble submitted charges for medical treatment that it knew were improper or unreasonable and violated section 101.203.

59.      Furthermore, Humble treats patients pursuant to a set pattern of seeking patients based upon their financial viability and reimbursement potential, rather than any determination of patient need.

*ii.      Violations of Texas Occupations Code § 105.002*

60.      Section 105.002 of the Texas Occupations Code concerns unprofessional conduct. It prohibits a health care provider, in connection with the provider's professional activities, from knowingly presenting (or causing to be presented) a false or fraudulent claim for the payment of a loss under an insurance policy.  It further prohibits a health care provider, in connection with its professional services, from knowingly preparing, making, or subscribing to any writing, with the intent to present or use the writing, or allow it to be presented or used, in support of a false or fraudulent claim under an insurance policy.

61.     Humble has produced, or cause to be produced, various reports, itemized billing statements and UB-04/CMS-1450 forms to Cigna seeking payment for its services at fees far higher than the reasonable charges for the same services in the relevant market.  Humble also knew that the billed amounts were false charges because it never intended to collect the patients' financial responsibility of those billed amounts.  The Defendant knew that these requests for reimbursement included false and inflated charges for treatment and services that were not reasonable.  Humble also knew that these billing forms would be presented to Cigna in regard to claims for benefits under Cigna-insured and employer-funded healthcare plans.

### *Violations of Texas Insurance Code § 1204.55*

62.     Section 1204.055 of the Texas Insurance Code mandates that "[a] physician or other health care provider may not waive a deductible or copayment by the acceptance of an assignment."  Humble represents to patients that the services at Humble will cost less than the same services at an in-network facility.  Humble's statements, however, are false because, to implement its strategy, Humble routinely waives patients' financial responsibility in exchange for accepting the patients' assignment of benefits under which Humble then bills Cigna inflated amounts that fail reveal that the patients' share has been waived.  Humble's waiver of patients' financial responsibility is a violation of Section 1204.055 and is a mechanism of committing fraud because Humble never intents to collect from the patients' portion and fully intends for Cigna to base its reimbursements on grossly inflated charges which appear to be billed according to the plans.

### *Violations of Texas Occupations Code § 102.001 & § 102.006*

63.     Section 102.001 of the Texas Occupation Code provides that "[a] person commits an offense if the person knowingly offers to pay or agrees to accept . . . any remuneration . . . to or from another for securing or soliciting a patient or patronage for or from a person licensed,

certified, or registered by a state health care regulatory agency." Humble entered into agreements with physicians or practice groups pursuant to which Humble agreed to fee-split a percentage of the collected facility fees in exchange for the physicians or practice groups bringing patients into and performing surgeries at Humble. These fee-splitting agreements violate Texas law prohibiting any payments for the referral of patients.

64. Humble's fee-splitting agreements are part of its scheme to commit fraud because Humble is able to attract Cigna members by paying in-network doctors to perform surgery at its hospital. Humble gains the benefit of increased traffic from patients who have health care benefit plans.

65. In addition, Section 102.006 of the Texas Occupation Code provides that "[a] person commits an offense if . . . the person . . . accepts remuneration to secure or solicit a patient or patronage for a person licensed, certified, or registered by a state health care regulatory agency; and . . . does not, at the time of initial contact and at the time of referral, disclose to the patient . . . that the person will receive . . remuneration for securing or soliciting the patient." Neither Humble nor the physicians disclosed this fee-splitting arrangement to Cigna when Humble submitted claims or Cigna's members before the medical services were provided, thereby violating Section 102.006, even assuming that the fee-splitting agreements were lawful.

## V.
## CLAIMS FOR RELIEF

**A.  First Cause of Action — Money Had and Received (Non-ERISA - All Claims) (ERISA - All Claims Based on Humble's Facility Fee Splitting With Referring Physicians)**

66. Cigna realleges and incorporates by reference the foregoing paragraphs of the Amended Complaint.

67.    Humble is entitled to no more than a reasonable fee for the services provided. Humble wrongfully billed for hospital services in an amount greatly in excess of the usual, customary, and reasonable billed charges for the same services in the relevant market.   By routinely charging excessive fees, which included amounts that Humble improperly split with its referring physicians, Humble gouged Cigna, its members, and their plans.  Cigna has paid claims to Humble that it would not have paid but for the wrongful conduct of the Defendant.   The excessive amounts Cigna paid should be returned to Cigna in equity and good conscience. Accordingly, Cigna seeks the return of money had and received.

68.    In addition, Humble is not entitled to payments for services that the Cigna plans do not cover.  While Cigna's plans are required to cover some portion of the actual charges for services that plan members receive from out-of-network providers like Humble, they are not required to cover amounts for which the members are not billed, are not obligated to pay, or would not have been billed if they did not have insurance.   Humble routinely waived the patients' financial responsibility under the plans and in turn billed Cigna as if no such waiver had occurred.  Based on these bills, Cigna processed and paid benefits for services as though they were covered under the plans, when in fact they were not.   Accordingly, any payments for services that the Cigna plans did not cover should, in equity and good conscience, be returned to Cigna.

**B.    Second Cause of Action — Common Law Fraud (Non-ERISA - All Claims) (ERISA - All Claims Based on Humble's Facility Fee Splitting With Referring Physicians)**

69.    Cigna realleges and incorporates by reference the foregoing paragraphs of the Amended Complaint.

70.    In addition, or in the alternative, Humble is liable to Cigna for common law fraud. Humble submitted false and misleading bills for the purpose of recovering reimbursement from

Cigna for charges, which included amounts Humble improperly split with its referring physicians, that were substantially in excess of the usual, customary, and reasonable charges for such services, and thus were manifestly unconscionable and overreaching.  Nothing in the nature and circumstances of the services that the Defendant rendered justifies the excessive charges submitted to Cigna.

71.     Humble also submitted bills to Cigna falsely stating amounts for its services that were higher than the actual amounts Humble required Cigna's plan members to pay for those services.  Because Humble waived the patients' financial responsibility without notifying Cigna and billed Cigna for the entire amount, Humble made material misrepresentations to Cigna that were false with each bill.

72.     In addition, Humble failed to reveal that it had entered into facility fee-splitting agreements with physicians or physician practice groups and that a portion of the hospitals facility fees collected would be paid to the physicians or physician practice groups.  Because Humble split its facility fees for the referral of patients to its hospital without notifying Cigna, Humble made material misrepresentations to Cigna that were false with each bill.

73.     At the time these misrepresentations were made, the Defendant knew they were false or made them without regard to their truth or falsity.  Further, these misrepresentations were made with the intention that Cigna act upon them.

74.     In submitting bills for excessive and false charges, Humble calculated that by reason of the circumstances of their submission and for other reasons, Cigna would not discover at least some of them, thereby resulting in a windfall to the Defendant.

75.     In submitting bills for excessive and false charges, Humble did not disclose waivers, reassurances or other promises made to induce patients to use its facility, including

reassurances that they would not pay more in coinsurance, deductibles or other patient-responsibility charges than they would at an in-network facility.  In fact, Humble did not disclose that it billed patient/members for only a fraction of the amount of their financial responsibility. Humble also misrepresented its facility charges, because the bills it submitted to Cigna were not for the amounts that the patient actually agreed to pay, but for inflated amounts.

76.     In submitting its bills, Humble intended that Cigna rely on the UB-04 and representations contained therein in issuing reimbursement for the services billed.  Cigna reasonably relied on these representations and issued payments to the Defendant, unaware that concealed among the electronically submitted bills were intentional overcharges, charges for services that should not have been separately billed and overstated charges resulting from Humble's undisclosed waivers of coinsurance, deductibles or other charges.  The misrepresentations, and Cigna's reliance on them, were the direct and proximate cause of damages to Cigna.  Humble made representations to Cigna as alleged and benefitted from the fraud.

77.     Cigna seeks to recover its actual damages, consequential damages, incidental damages, and costs incurred from the foregoing actions.

**C.     Third Cause of Action — Negligent Misrepresentation (Non-ERISA - All Claims) (ERISA - All Claims Based on Humble's Facility Fee Splitting With Referring Physicians)**

78.     Cigna realleges and incorporates by reference the foregoing paragraphs of the Amended Complaint.

79.     In addition, or in the alternative, Humble is liable for negligent misrepresentation. Humble made material misrepresentations when it (1) submitted false and misleading bills for reimbursement of charges that were substantially in excess of the usual, customary, and reasonable charges for the same or similar medical services in the relevant market, and contained

-28-

amounts that Humble improperly split with its referring physicians, and (2) submitted claims to Cigna for facility charges that were in excess of the amounts that the patients actually agreed to pay.  These misrepresentations were made in the course of the Defendant's businesses in which they had a pecuniary interest.  Humble supplied false information for the guidance of Cigna in its business.  Humble failed to exercise reasonable care or competence in communicating this information.  As a direct and proximate result of these negligent misrepresentations, Cigna has suffered damages.

80.     Cigna seeks to recover its actual damages, consequential damages, and costs incurred from the Defendant's actions.

**D.     Fourth Cause of Action — Unjust Enrichment (Non-ERISA - All Claims) (ERISA - All Claims Based on Humble's Facility Fee Splitting With Referring Physicians)**

81.     Cigna realleges and incorporates by reference the foregoing paragraphs of the Amended Complaint.

82.     In addition, or in the alternative, Humble is liable under the principle of unjust enrichment.  Under Texas law, one may recover based on unjust enrichment if another party has used fraud, duress, or taking undue advantage to obtain a benefit.

83.     Cigna's plans are required to cover some portion of the actual charges for services that plan members receive from out-of-network providers like Humble.  Cigna's plans are not required to cover amounts that members are not billed, are not obligated to pay, or for which they would not have been billed if they did not have insurance.

84.     Humble submitted bills to Cigna falsely stating charges for amounts that were higher than the actual amounts that Humble required Cigna's plan members to pay for those services.  Based on these bills, Cigna processed benefits for services based on these falsely-stated charges and paid these benefits directly to Humble.

85. When Cigna paid benefits to Humble that the plans were not obligated to cover, Humble obtained a benefit from Cigna through its fraudulent billing practices. As a result, Humble has been unjustly enriched and Cigna has been injured.

86. In addition, Humble wrongfully billed for hospital services in an amount greatly in excess of the usual, customary, and reasonable charges for the same services in the relevant market, and which also included amounts that Humble improperly split with its referring physicians. Cigna paid Humble based on its bills for these excessive and unreasonable charges. Allowing the Defendant to retain the money paid for services allegedly rendered to members of Cigna's various health care plans — to which the Defendant was not entitled — would unjustly enrich Humble.

87. Cigna seeks to recover the actual damages, consequential damages, incidental damages, and costs incurred from these actions.

E.   **Fifth Cause of Action — Injunctive Relief (Non-ERISA - All Claims) (ERISA - All Claims Based on Humble's Facility Fee Splitting With Referring Physicians)**

88. Cigna realleges and incorporates by reference the foregoing paragraphs of the Amended Complaint.

89. Humble is engaging in practices that violate Texas statutory laws and other applicable standards of conduct concerning the billing practices of medical providers and the disclosure of material information to patients.

90. Cigna seeks injunctive relief that Humble cease and desist these unlawful practices. Specifically, Cigna requests that Humble be enjoined from (1) submitting medical claims to Cigna that exceed the usual, customary, and reasonable fees for similar services provided at hospitals in the Houston market, (2) balance billing Cigna's members for unreasonable fees, (3) waiving, reassuring or making other promises to induce Cigna members to

use their facilities, including reassurances that they would not pay more in coinsurance, deductibles or other patient-responsibility charges than they would at an in-network facility, and (4) fee-splitting its hospital facility fees with physicians or physician practice groups for their referral of patients to Humble for surgery.

91.     Cigna also requests that the Court require Humble to fully notify and apprise all patients, including Cigna's members, when their referring physicians have an ownership interest in the Defendant's respective facilities or are paid a fee-split from Humble for referring patients to its facility.

92.     A permanent injunction is proper because there will be immediate and irreparable harm if Humble continues to submit fraudulent claims and waive the patients' financial responsibility and Cigna has no adequate remedy at law.  A greater injury will result from denying the injunction than from its being granted, and the injunction will not disserve the public interest.

**F.     Sixth Cause of Action — Declaratory Judgment (Non-ERISA - All Claims) (ERISA - All Claims Based on Humble's Facility Fee Splitting With Referring Physicians)**

93.     Cigna realleges and incorporates by reference the foregoing paragraphs of the Amended Complaint.

94.     An actual, justifiable controversy exists between Cigna and Humble concerning the improper billing practices of the Defendants described herein, including its violation of Texas statutory laws regarding same.  Pursuant to 28 U.S.C. § 2201 and Chapter 37 of the Texas Civil Practice and Remedies Code, Cigna seeks a declaratory judgment that (1) Humble has violated Texas statutory laws concerning the billing of medical treatment and services provided to Cigna members, (2) Humble did not disclose waivers, reassurances, or other promises made to induce patients to use its facility, including reassurances that they would not pay more in coinsurance,

-31-

deductibles or other patient-responsibility charges than they would at an in-network facility, (3) Humble has violated Texas statutory laws concerning payment for patient referrals and it did not disclose to Cigna that it entered into fee-splitting contracts with physicians and physician practice groups for their referral of patients to Humble for surgery, and (4) Cigna is entitled to recoup all overpayments paid to Humble on the excessive charges made on medical claims submitted for the treatment of Cigna's members.

## VI.
## EXEMPLARY DAMAGES

95.     Cigna realleges and incorporates by reference the foregoing paragraphs of the Amended Complaint.

96.     The Defendant's conduct was fraudulent, malicious, and resulted in harm to Cigna.  As a consequence, Cigna is entitled to recover exemplary damages.

## VII.
## EQUITABLE RELIEF (ERISA)
## (as to all benefit claims involving ERISA plans)

97.     Cigna realleges and incorporates by reference the foregoing paragraphs of the Amended Complaint.

98.     In the alternative, to the extent this dispute involves the exercise of Cigna's discretion under an ERISA plan, under the terms of ERISA, Cigna is an ERISA fiduciary.  Cigna contends its state law claims may be pursued because they do not relate to ERISA and are not preempted and because some of the plans in question are non-ERISA plans.

99.     To the extent that the Defendant's entitlement to be paid arises pursuant to Cigna's plan members' assignments to them, Humble stands in the shoes of an ERISA beneficiary.

100.    Humble is in actual or constructive possession and control over specifically identifiable funds that belong in good conscience to Cigna or the ERISA plans at issue in this suit.

101.    As authorized by 29 U.S.C. § 1132(a)(3), Cigna therefore seeks against Humble all relief that was typically available in equity.

102.    The plans at issue do not cover charges that providers like Humble do not require plan members to pay.  Since August 2010, Cigna made benefit payments to Humble based on its billed charges.  Humble did not require plan members to pay the full amount of the billed charges.  The charges were more than the customary and reasonable charges in the market for similar services.

103.    The treating physicians who were in-network with Cigna were contractually required to refer their patients to in-network facilities when available and appropriate.  Humble improperly induced the physicians to refer their patients to its out-of-network facility.

104.    As a consequence, Cigna made overpayments to Humble.  The amount of the overpayments includes the difference between the benefits that the plans paid and the benefits to which the plan member were contractually entitled.  The amount of the overpayments may be based on the amount that Humble actually required the members to pay. Alternatively, the amount of the overpayments may be based on the difference between the benefits that the plans paid and the median in-network contract rate, which approximates the amount the plans would have paid if the patients had been treated in-network.  In no case should the plans have paid more than the maximum reasonable charge.  Cigna made these overpayments directly to Humble and, upon information and belief, were deposited in each instances into a single account in Humble's name and/or controlled by Humble.

HOU:3540555.2

105.    These overpayments in good conscience belong to the plans.

106.    These overpayments are in Humble's possession and control.

107.    These overpayments were made in contravention of plan terms.

108.    Cigna's ERISA plans contain provisions authorizing Cigna to recover overpayments that Cigna made on behalf of the plans.  Pursuant to these terms, plan members and the providers to whom the members assign reimbursement claims are on notice that any overpayment Cigna makes is subject to an equitable lien by agreement and rightfully belongs to Cigna.

109.    Cigna seeks to enforce these terms by recovering from Humble the overpayments as alleged herein.  Because the overpayments are subject to an equitable lien by agreement and assignment, Cigna is entitled to recover the overpayments made to Humble.

110.    Specifically, and without limitation, Cigna seeks (i) a constructive trust over the fees that the Defendant improperly demanded and received, (ii) an order permanently enjoining the Defendant from disposing of or transferring any of the funds still in their possession and control, (iii) an order requiring the return of such funds and a tracing of any portion of the funds no longer in the Defendant's possession or control, (iv) or alternatively, a declaration that Cigna may offset the amount of these overpayments from future payments to Humble, (v) a permanent injunction directing Humble to submit bills for the amount it is actually willing to accept as payment in full from the plan member not to include amounts that Humble does not actually require the member to pay, and (vi) a constructive trust over any such funds in the possession or control of the Defendant as a result of the fraudulent conduct specified herein.

## VIII.
## ATTORNEYS' FEES

111.    Cigna realleges and incorporates by reference the foregoing paragraphs of the Amended Complaint.

112.    Cigna seeks to recover its reasonable and necessary attorneys' fees and costs incurred in connection with prosecuting this action under, without limitation, Chapter 37 of the Texas Civil Practice and Remedies Code, and in the alternative, 29 U.S.C. § 1132(g)(1).

## IX.
## CONDITIONS PRECEDENT

113.    Cigna has performed all conditions precedent, or they have otherwise been waived.

## X.
## JURY DEMAND

114.    Cigna demands a trial of this action by jury on all issues.

## XI.
## PRAYER

Plaintiffs Cigna respectfully request that Defendant Humble Surgical, LLC be cited to appear and answer, and that on final trial hereof, Cigna have judgment against this Defendant for the following:

a.    An award of both actual damages and consequential damages;

b.    An award of exemplary damages;

c.    Equitable relief as requested above;

d.    Declaratory and injunctive relief as requested above;

e.    Reasonable and necessary attorneys' fees;

f.    Costs of court;

g.    Prejudgment and post-judgment interest; and

HOU:3540555.2

h.     Such other and further relief at law or in equity to which Cigna may be justly entitled.

Respectfully submitted,

**ANDREWS KURTH LLP**

By: *s/ John B. Shely*
      John B. Shely
      Texas State Bar No. 18215300
      Southern District of Texas No. 7544
      Dena Palermo
      Texas State Bar No. 08928830
      Southern District of Texas No. 6082
      Brian C. Pidcock
      Texas State Bar No. 24074895
      Southern District of Texas No. 1654553
      600 Travis Street, Suite 4200
      Houston, Texas 77002
      (713) 220-4152
      (713) 238-7206
      jshely@andrewskurth.com
      dpalermo@andrewskurth.com
      brianpidcock@andrewskurth.com

**ATTORNEYS FOR PLAINTIFFS**
**CONNECTICUT GENERAL LIFE**
**INSURANCE COMPANY AND**
**CIGNA HEALTH AND LIFE**
**INSURANCE COMPANY**

HOU:3540555.2