IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CONNECTICUT GENERAL LIFE           §
INSURANCE COMPANY AND              §
CIGNA HEALTH AND LIFE              §
INSURANCE COMPANY,                 §
                                   §
            Plaintiffs,            §
                                   §
vs.                                §          CIVIL ACTION NO.  4:13-CV-3291
                                   §
HUMBLE SURGICAL HOSPITAL, LLC,     §
                                   §
            Defendant.             §

## JOINT PRETRIAL ORDER

Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company and Humble Surgical Hospital, LLC, submit this Joint Pretrial Order.

I.      Appearance of Counsel.

John B. Shely
Dena Palermo
Brian Pidcock
Andrews Kurth, LLP
600 Travis, Suite 4200
Houston, Texas 77002
Tel.: (713) 220-4200

Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively "Cigna").

Brian D. Melton
Jonathan J. Ross
Chanler A. Langham
John Lahad
Susman Godfrey, LLP
1000 Louisiana, Suite 5100
Houston, Texas 77002
Tel.: (713) 651-9366

Defendant Humble Surgical Hospital, LLC (referred to herein as "Humble").

II.     The Parties' Statements of the Case.

**Cigna's Statement of the Case:**

The Plaintiff is Cigna, a health service company that provides its members with access to medical benefits pursuant to a variety of policies of insurance and self-funded plans for employees of local employers, including Waste Management, Schlumberger and government agencies, like the City of Houston, and the Harris County Hospital District.

The Defendant is Humble Surgical Hospital ("Humble"), a physician-owned five-bed hospital located in Humble, Texas. Humble is an out-of-network provider, is not part of Cigna's network, and does not accept contract rates for its services. Beginning in 2010, Humble submitted claims to Cigna seeking reimbursement for services provided to Cigna members at Humble. Cigna processed and administered these claims pursuant to the terms of the patients' plans. Most of these claims are under employer plans and Cigna paid the claims out of the employers' funds.  A small number are insured and Cigna paid those claims.

On behalf of its employer-clients and itself, Cigna sued Humble to recover overpayments made to Humble based on its fraudulent billing scheme.[1] Cigna contends that Humble inflated its bills to hide that it (1) paid kickback to physicians in exchange for referring their patients to Humble and (2) waived the patients' cost share of Humble's billed charges. In 2011, Cigna uncovered part of Humble's fraudulent scheme and informed Humble that it would pay the claims only upon proof that Humble obligated its patients to pay their share of the billed charges. Humble repeatedly represented to Cigna that it collected the full amount of the members' cost share and never revealed that it paid kickbacks to the referring doctors.

Humble disputes Cigna's allegations, denies all liability, and contends that Cigna is not entitled to any relief. Humble filed a counterclaim against Cigna for allegedly underpaying claims. Cigna disputes Humble's counterclaim, denies all liability, and contends that Humble is not entitled to any of the requested relief on its counterclaim.

**Humble's Statement of the Case:**

Humble Surgical Hospital contends that it has been providing its patients – including those insured by or through Cigna – with medically necessary treatments since its inception.  Since 2010, however, Cigna has refused to pay for millions of dollars' worth of Humble's medically necessary treatments. Cigna has paid de minimis amounts in a few instances, but in most cases, Cigna has paid absolutely nothing.

On December 4, 2013, Humble asserted claims against Cigna for nonpayment, underpayment, and delayed payment of claims. Humble contends that Cigna improperly

---

[1] Both parties have sued to recover their respective attorneys' fees.  The parties agree that this issue will be resolved by the Court after trial.

"blacklisted" Humble, intentionally stalled payments, and refused to provide reasonable explanations for its claims determinations. Through its counterclaims, Humble seeks relief for Cigna's systematic violations of ERISA, including failure to comply with group plans and breach of Cigna's fiduciary duties. Humble also asserts causes of action for violations of the Texas Insurance Code, breach of contract, and promissory estoppel. Humble seeks damages and attorneys' fees for Cigna's unjustified refusal to pay for services to its insureds.

Humble denies the allegations asserted against it by Cigna.  Humble contends that it collects or attempts to collect patient responsibility prior to each procedure and bills patients after procedures for the balance.  Humble asserts that Cigna's plan interpretation is not correct, and that an ordinary plan member would not understand that they have no insurance coverage if they are not charged for coinsurance.  Humble also contends that Cigna's claims are simply part of a nationwide campaign to withhold or reduce payment to out-of-network providers, especially physician owned facilities. Humble contends that Cigna should take nothing for its claims, and that Humble should recover for the medically necessary services that it rendered.

III.    Jurisdiction/Venue.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Cigna's and Humble's causes of action arise in part under the Constitution, law, or treaties of the United State, namely the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. The Court also subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and cost.

Cigna filed this lawsuit and submitted itself to the personal jurisdiction of this Court. This Court also has personal jurisdiction over Humble because it is a Texas entity doing business in Texas.

IV.    The Parties' Contentions.

A.    Cigna's Contentions:

Humble's charges for its services are many multiples of the usual, customary, and reasonable fees in the Houston area. Although it is a small, five-bed, regional hospital that primarily serves as an outpatient surgery clinic, Humble set its prices for services (its "Charge Master") based on comparable charges in Houston for major hospital systems like Methodist and Memorial Hermann. In setting its prices, Humble decided to place itself in the 85th percentile, making its Charge Master among the highest in the area. Humble claims that the quality of its care justified its bills, which are often in excess of $100,000.00 for outpatient hospital stays of only a few hours. However, in 2011, when Cigna paid most of the claims at issue, Humble lost its Medicare accreditation and almost lost its hospital license due to quality of care issues. It spent 2012 undergoing 14 State

3

surveys to prove to the Texas Department of State Health Services ("TDSHS") that it had taken sufficient measures so as not to lose its license.

Cigna contends that Humble egregiously inflated its bills as part of its out-of-network strategy—a fraudulent billing scheme designed to defraud Cigna and unjustly enrich Humble and its owners at the expense of Cigna, its members, and the members' Plans. In furtherance of this scheme, Humble employed various improper and illegal acts, which are described below, to lure Cigna members to Humble's facility (and away from other comparable in-network facilities available in the area). Cigna contends that Humble is liable for millions of dollars in overpayments that Humble improperly and fraudulently obtained from Cigna on claims Humble submitted for services it allegedly provided to Cigna members for dates of service from August 2, 2010 through June 20, 2013.

1.   *Humble Paid Kickbacks To Physicians To Refer Cigna Members To Humble, Rather Than An In-Network Facility*

To obtain patient volume and lure insured patients (including Cigna members) to Humble's facility, Humble paid improper and illegal "kickbacks" to physicians in exchange for patient referrals. *See* Tex. Occ. Code § 102.001 (prohibiting a person from knowingly offering to pay or agreeing "to accept, directly or indirectly, overtly or covertly any remuneration in cash or in kind" for "securing or soliciting a patient" for or from "a person licensed, certified, or registered by a state health care regulatory agency").

Specifically, Humble knowingly entered into fee-splitting arrangements with over 100 licensed physicians and their practice groups (the "Referring Physicians"). Humble agreed to pay, and in fact paid, 30% of Humble's "facility fee" to the Referring Physicians to refer their patients to Humble's out-of-network facility for surgery. Many of the Referring Physicians were in-network with Cigna and were required under their contracts to refer their patients to other in-network providers. Through this referral scheme, Humble improperly gained the benefit of increased traffic from Cigna members without having to accept discounted fees.

In addition, Humble and the Referring Physicians improperly and illegally failed to disclose to the Cigna members or Cigna at the time of the referrals, or otherwise, that the Referring Physicians were accepting kickbacks from Humble in exchange for referral of patients to Humble. *See* Tex. Occ. Code § 102.006 (prohibiting such a failure to disclose).

2.   *Humble Waived Patient Cost Share To Lure Them To Humble*

In furtherance of its scheme and to encourage Cigna members to use Humble rather than an in-network facility, Cigna contends that Humble waived the members' financial responsibility.  Humble agreed to provide treatment to the patients in exchange for an assignment of benefits during patient registration before services were provided, while also waiving all or a portion of the members' out-of-pocket financial cost-share obligation (*i.e.*, deductible and coinsurance).

4

Most of the claims at issue in this lawsuit are under self-funded Plans. The Plan terms require members to pay their deductible *before* the Plan is required to share in the co-insurance payments.  After the deductible has been met, the Plan and the member share the allowable amount under the Plan in proportion to the terms for out-of-network benefits.  For example, a Plan may require the member to satisfy a $500.00 deductible. Once the member pays the $500 deductible, the plans pays 60% of the allowed amount and the member is required to pay 40%.   The member remains liable for the difference between the billed charges and the allowed amount and the provider is allowed to balance bill the member for that amount.

The Plans define which expenses are covered and which are excluded.  Cigna only pays for covered expenses and must not pay for those expenses that are excluded.  All of Cigna's plans exclude charges for which the member is (1) not billed, (2) not required to pay, or (3) only billed because insurance exits.  Plan sponsors, who are Cigna's clients, expect their employees/member to pay their share. Only through this cost share can the Plans be sure that members are sensitive to the cost of their healthcare services. Plan sponsors expect Cigna to enforce the Plan terms, and specifically deny payments for which the member is not obligated to pay.

Cigna contends that Humble waived Cigna members' out-of-pocket financial cost-share obligations as an inducement to choose Humble over reputable, in-network facilities, like Memorial Hermann. Specifically, Humble created a purported 5% "cost-share" formula that was not based upon any Plan requirements, but instead was a number Humble made up based on 5% of 60% of Humble's "estimated billed charges," without any reference to Plan terms. The estimated "billed charges" were only a fraction of the actual amount that Humble ultimately billed Cigna.

Humble's failure to collect the amount required under the Plans constitutes a waiver of the patients' out-of-network cost-share. On average, for the claims that Cigna paid before it learned of Humble's scheme, Humble collected only 16.32% of the cost share responsibility that the Cigna member should have paid under the applicable healthcare benefit plan. Humble's data shows that overall, it collected significantly less from the members than its made up 5% formula. Although Humble knew that patients were required to pay a higher cost share for out-of-network services, Humble has taken the position in this lawsuit that its patients are not actually required to pay the amount Cigna shows as their cost share on the Explanation of Benefits ("EOB"). Moreover, unbeknownst to the patients and only after Humble represented that Humble would bill at (or even less than) the in-network rate to entice the patients to its five-bed facility, Humble then sought reimbursement from Cigna for medical services provided at the higher rate of an out-of-network provider. As a result, out-of-network costs skyrocketed and Cigna paid millions of dollars to Humble that it was not obligated to pay.

Cigna contends that Humble's an out-of-network provider's waiver of patient fees is illegal under Texas law:

- o **Section 1204.055 of the Texas Insurance Code** states that "[a] physician or other health care provider may not waive a deductible or copayment by the

acceptance of an assignment" and that "[t]he payment of benefits under an assignment does not relieve a covered person of a contractual obligation to pay a deductible or copayment."

o   Humble routinely accepts assignments of medical benefits from patients in exchange for providing treatment and waiving all or a portion of the patients' financial cost-share payments that is  required under the patients' healthcare plans.

o   Humble was aware of the prohibition on waiving of a patients' obligation to pay a deductible or copayment. The Private Placement Memorandum that Humble entered into with its physician-owners cites to a February 15, 2005 letter from the Texas Department of State Health Services to Hospital Administrators warning that if licensed hospitals engage in such fee waiver activity, the facility is permitting the commission of an illegal act.

o   Humble also received advice from its outside counsel that it could not waive patients' cost-share.

o   **Section 101.201(b)(6) & (7) of the Texas Occupations Code** bars Humble from waiving fees to patients on the grounds that it is "False, Misleading, or Deceptive Advertising" for which a provider can lose their right to treat the public.  Subsection (6) prohibits any representation "that health care insurance deductibles or copayments may be waived or are not applicable to health care services to be provided if the deductibles or copayments are required." Subsection (7) bars any representation "that the benefits of a health benefit plan will be accepted as full payment when deductibles or copayments are required."

o   Humble tells patients who are Cigna plan members their financial cost-share obligations, required under the patients' healthcare plans, are limited to the same as if Humble were an in-network facility and/or not required and that Humble is willing to accept the benefits from the patients' plans as payment in full for the services provided.

o   **Section 101.201(b)(1) of the Texas Occupations Code** also bars Humble from representing to Cigna members that the medical services Humble provided to them would be billed as if Humble was an in-network provider. Subsection (1) bars Humble from making a "material misrepresentation of fact or omits a fact necessary to make the statement as a whole not materially misleading."

o   Humble never told the Cigna members that it would bill Cigna, and ultimately the relevant plan, its full out-of-network billed charges.

o   **Section 102.001 of the Texas Occupation Code** provides that "[a] person commits an offense if the person knowingly offers to pay or agrees to accept, directly or indirectly, overtly or covertly any remuneration in cash or in kind

to or from another for securing or soliciting a patient or patronage for or from a person licensed, certified, or registered by a state health care regulatory agency."

o   Humble routinely violates section 102.001 when it knowingly waived patients' cost-share to secure the patient's business as a referral from a licensed physician. Absent such referrals and waivers, patients would not willingly choose to receive medical services from Humble because it would cost them significantly more than if they had gone to an in-network provider.

o   **Section 324.101(a) of the Texas Health and Safety Code** requires hospitals to maintain ***written*** (not oral or secret) payment policies.  Section 324.101 of the Texas Health and Safety Code requires hospitals to "develop, implement, and enforce written policies for the billing of facility health care services and supplies" so that consumers can be informed fully about how much they can expect to pay, can receive an itemized bill for the services they are receiving, and can know whether their providers are in-network or out-of-network.

o   Humble's adopted a written collection policy requiring it to collect the patients co-pay, deductible, and co-insurance upfront.  But, Humble did not do so.  Instead, Humble developed a practice of collecting from its patients based on a formula requiring the collection of only 5% of 60% of the estimated billed charges based on CPT codes the surgeon submitted when scheduling the surgery, which was only a fraction of the amount Humble ultimately billed Cigna. Humble's 5% formula was not based on any Plan's requirements.

o   Humble violated Section 324.101 when it failed to, among other things (i) enforce its written policies regarding its billing practices, (ii) provide conspicuous written disclosures to Cigna plan members confirming whether Humble was out-of-network with the members' health coverage, and (iii) inform Cigna plan members that the actual charges for services may be significantly higher than the amount covered under the members' healthcare benefit plans and that the patient would be responsible for the balance. Humble's failure to comply with Section 324.101(a) was calculated and part and parcel to its intention to defraud Cigna.

o   **Section 552.003 of the Texas Insurance Code** provides that a person commits a fraudulent insurance act "if the person knowingly or intentionally charges two different prices for providing the same product or service; and the higher price charged is based on the fact that an insurer will pay all or part of the price of the product or service."

o   Humble routinely violated section 552.003. For example, Humble charges one price for services to uninsured or underinsured patients and a different (higher) price for the same product or services to Cigna and its members, where the higher price is based on the fact that Cigna will pay all or part of the price of the product or service. Humble's pricing in this regard is different

because it does not routinely seek the same reimbursement for the same products or services provided to uninsured or underinsured patients as it does when seeking reimbursement from Humble.

3.      *Humble Intentionally Hid Its Fraudulent Acts From Cigna*

Humble purposefully hid its fraudulent out-of-network strategy from Cigna.  Specifically, Humble intentionally submitted claims for reimbursement of medical services on UB-04 claim forms (or their electronic equivalents) representing that its claims were "true, accurate, and complete" when in fact they failed to disclose material information for the purpose of seeking and obtaining higher reimbursement from Cigna:

o   Humble submitted claims for reimbursement of hospital services that failed to disclose the fact that Humble paid illegal kickbacks of 30% of the collected facility fee to physician in exchange for securing the patient referrals.

o   Humble submitted claims for reimbursement of hospital services that failed to disclose the fact that the patients had been illegally referred to Humble.

o   Humble submitted claims for reimbursement of hospital services that failed to disclose the fact that Humble illegally waived all or a portion of the patients' financial cost-share obligation. Humble misrepresented its facility charges, because the bills it submitted to Cigna were not for the amounts that the patient actually agreed to pay, but for inflated amounts.

o   Humble failed to disclose to its patients information that Humble would bill Cigna, and ultimately the employer plan, its full out-of-network bill charges. Instead, it represented to patients that Humble would bill for the medical services rendered to the patient as if it was an in-network provider.

o   Humble submitted claims for medical services containing billed charges that were far higher than the usual, customary, and reasonable fees for such services in the area and failed to disclose that the submitted charges were not Humble's true charges for services provided and were in no way related to the cost for providing such services, but were instead a result of Humble's failure to hold patients responsible for their out-of-network financial cost-share amounts and illegal 30% kickbacks paid to referring surgeons.

Cigna further contends that Humble's conduct and benefit claims are expressly proscribed under Texas law:

o   **Section 101.203 of the Texas Occupations Code**, entitled **"**Overcharging or Overtreating,**"** states that "[a] health care professional may not violate Section 311.0025, Health and Safety Code." Section 311.0025(a) prohibits Humble from submitting "to a patient or a third party payor a bill for a treatment that [Humble] knows was not provided or knows was *improper, unreasonable*, or medically or clinically unnecessary."

o Humble submitted benefit claims for reimbursement of charges for medical treatment that it knew were improper and unreasonable, and, therefore, violated Section 101.203.

o **Section 105.002 of the Texas Occupations Code** prohibits a health care provider, in connection with the provider's professional activities, from knowingly presenting (or causing to be presented) a false or fraudulent claim for the payment of a loss under an insurance policy. It further prohibits a health care provider, in connection with its professional services, from knowingly preparing, making, or subscribing to any writing, with the intent to present or use the writing, or allow it to be presented or used, in support of a false or fraudulent claim under an insurance policy.

o Humble submitted claims for reimbursement of medical services, which it knew contained inflated charges that were not reasonable, but calculated such that all or a substantial portion would be paid pursuant to Cigna-insured and employer-funded healthcare plans as a result of Humble's fraudulent and illegal conduct.

Cigna further contends Humble's improper and illegal conduct was surreptitious, fraudulently concealed, and calculated to make the discovery thereof difficult, and that such conduct caused Cigna to pay more than Cigna was required to pay under the terms of the applicable Plans and more than Cigna would have paid had the patients received treatment from a comparable in-network facility available in the area.

o For example, when Cigna's Special Investigations Unit ("SIU") requested information on Humble's billing practices, in September 2011, Humble's Vice President, Omar Kiggundu, lied to Cigna, stating that Humble holds "its patients responsible for the full payment of their respective" out-of-network cost share.

o Humble's outside counsel later represented to Cigna that Humble did not engage in the routine waiver of patient cost share.

o After Cigna's SIU informed Humble that it would not pay its invoices without proof of what it obligated its patients to pay and routine waiver of cost share would exclude coverage of the claims, Humble failed to disclose to its patients that its billing practices jeopardized their coverage and it never provided Cigna with proof of its collection practices or collections on particular claims.

Humble also went to great lengths to hide its practice of paying referral fees to its surgeons.

o Humble's Private Placement Memo used to market investment opportunities in its hospital described the kickback agreements as "Plan B."

o When describing "Humble's Story" in a document Humble planned to provide to the court in similar litigation with Aetna, one of Humble's Vice Presidents,

Jakob Kohl, specifically instructed Omar Kiggundu to remove the reference to the kickback agreements because the document was to be shown to Judge Hughes, the judge in the Aetna litigation.

o   In this litigation, Humble refused to produce unredacted copies of the kickback agreements, to hide the identities of the surgeons and practice groups that signed the agreements.

4.   *Cigna Suffered Damages As A Result Of Humble's Acts*

As set forth in the expert reports of Mary Beth Edwards and Michael Battistoni, Cigna contends that Humble's conduct caused Cigna the following damages to date:[2]

o   If Cigna's members had been properly referred to in-network providers, Cigna would have paid contract rates for the services at issue and would have paid significantly less.  On the claims that Cigna paid before it learned of Humble's scheme, Humble billed Cigna $21.7 million, Cigna paid $9.3 million, but would have paid only $1.9 million. Thus, Cigna overpaid Humble $7.3 million. After Cigna learned of Humble's scheme, Humble billed Cigna $21.7 million, Cigna paid $175,000, but would have paid $1.7 million.  Thus, Cigna would have paid an additional $1.5 million on those claims. The net amount that Cigna overpaid Humble is $5,786,826.00 ($7.3 million - $1.5 million); or, in the alternative

o   If Cigna was aware that Humble had waived the members cost-share, it would have paid only its proportionate share based on the amount Humble obligated its patients to pay.   The total amount of Cigna's overpayment is $5,593,512.00.

In addition, the evidence shows that:

o   Humble's fee splitting agreements with its referring physicians included a 30% referral fee.  Covered services under the plans only include a reasonable fee.  Kickbacks to referring physicians are not covered services and any fee that includes kickbacks is not reasonable.  Cigna is entitled to a refund of the 30% kickback on the $9.4 million in claims it paid, for a refund of $2.82 million, or on the $11 million Humble claims that Cigna paid, for a refund of $3.3 million.

## B.   **Cigna's Defensive Contentions To Humble's Counterclaims**

In its counterclaim, Humble contends that Cigna violated certain provisions of ERISA and breached certain Plan terms by, among other things, underpaying or not paying certain benefit claims that Humble submitted to Cigna for reimbursement of hospital

---

[2] Cigna reserves the right to supplement and revise these figures as additional information becomes available.

HOU:3620104.1

services provided to Cigna members. Humble seeks recovery of damages and equitable relief from Cigna under ERISA and state law.  Cigna disputes the legitimacy of Humble's legal theories and contends that Cigna did not violate ERISA or breach any Plan terms in administering benefit claims submitted by Humble.  To the contrary, Cigna contends that it overpaid Humble millions of dollars that Cigna would not have otherwise paid but for Humble's improper and illegal conduct as described above. Thus, Cigna contends that Humble is not entitled to relief on the benefit claims it has placed in issue and must return the amounts that it fraudulently and unjustly obtained.

Cigna specifically contends that Humble is not entitled to relief on any of the causes of action pleaded in its First Amended Counterclaims, as follows:

- **Count 1 – Alleged Failure to Comply with Group Plans in Violation of ERISA.**

    Humble pleads that it is suing Cigna as an assignee of plan members, and that Cigna failed to make payments of benefits to Humble as assignee, as required under the terms of the plans between the patients and Cigna.

    o Cigna contends that Humble lacks standing to sue under ERISA because the alleged assignments are void for illegality. Humble obtained its assignments using illegal means (*i.e.*, an illegal waiver of Cigna members' out-of-pocket financial cost-share obligations).  At the point of patient registration, before services are provided, Humble eliminates all or a large portion of the patients' financial cost share obligation in exchange for the patient obtaining out-of-network medical services at Humble. Humble's waiver of the members' out-of-pocket financial cost-share obligations is void for illegality under Texas law because such agreements constitute an illegal act of remunerating patients for obtaining out-of-network medical services.[3] In connection with providing illegal waiver, Humble entered into agreements with patients to assign their Cigna benefits to the hospital. The assignment agreement and the waiver of the members financial responsibility, occurred for the same purpose, and in the course of the same transaction, and, therefore, are to be considered as one transaction. *See Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981). Accordingly, Humble's assignments are also void and no claim can be based upon an assignment that is void for illegality. Absent a valid assignment of benefits, Humble lacks standing to sue Cigna under ERISA for assigned medical benefits. *See Pascack Valley Hosp., Inc. v. Local 464A UCFW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004).

Humble pleads that Cigna breached the terms of the plans, by "making claims determinations that had the effect of reimbursing less than the stated percentage of

---

[3] Dep't of Health & Human Servs., Publication of OIG Special Fraud Alerts, 59 FR 65372-01 (1994); TEX. OCC. CODE ANN. § 102.001(a); TEX. INS. CODE ANN. § 1204.055(b); TEX. HEALTH & SAFETY CODE ANN. § 324.101(a); TEX. OCC. CODE ANN. § 101.201(b)(6) & (7).

their provider's actual charges without valid evidence or information to substantiate such determinations."

o Cigna contends that Humble is not entitled to relief under ERISA § 502(a) because Humble's claims are barred by its failure to exhaust administrative remedies. *See Coop. Benefit Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 336 (5th Cir. 2004). Humble lacks sufficient evidence to establish that it exhausted its administrative remedies on each of the claims at issue prior to filing this law suit. Humble also lacks sufficient evidence to establish that Cigna failed to provide adequate notice concerning the denial of claims, or failed to provide a reasonable opportunity for a full and fair review concerning the denial of claims. Accordingly, the futility exception to exhaustion does not apply.

o Cigna further contends that, as a matter of law, Humble is not entitled to relief under ERISA § 502(a) because it lacks sufficient evidence, based upon the administrative record, to establish that Cigna violated any provision of ERISA, breached any term of the Plans, abused its discretion, or otherwise acted arbitrarily or capriciously in the administration of Humble's benefit claims. To the contrary, the administrative record substantially supports Cigna's claims administration decisions. Accordingly, Cigna did not abuse its discretion because its claims administration decisions were not made arbitrarily or capriciously, but were proper and correct under the Plans.

o Cigna further contends that, as a matter of law, Humble is not entitled to relief under ERISA § 502(a) because it improperly submitted claims for reimbursement of hospital services, which contained false representations regarding the true nature of Humble's billed charges, hid the fact that Humble failed to charge and/or collect patient cost-share amounts as required under the Plans, and hid the fact that Humble procured Cigna members through improper disclosures and illegal kickbacks to referring physicians.

o Cigna further contends that, as a matter of law, to the extent that Humble is seeking relief under ERISA § 502(a)(3) is not entitled to such relief because Humble also seeks relief under ERISA § 502(a)(1)(B), and Humble cannot simultaneously seek relief under both provisions. *See Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610–11 (5th Cir. 1998).

o Cigna further contends that, as a matter of law, Humble cannot seek money damages under ERISA § 502(a)(3) because § 502(a)(3) does not authorize a claim for money damages. *See Cent. States v. Health Special Risk, Inc.*, 756 F.3d 356, 363 (5th Cir. 2014).

- **Count 2 – Alleged Breach of Fiduciary Duties.**

Humble alleges that Cigna breached its fiduciary duties of loyalty and due care under ERISA § 404(a), 29 U.S.C. § 1104(a), by allegedly "underpaying claims without valid data or evidence to substantiate the amount paid, and/or doing so in

an arbitrary fashion, by omitting material information about its determinations from Humble and/or by making misrepresentations about its claims determination." Humble further alleges, without specificity, that Cigna violated ERISA § 502(a)(3), 29 U.S.C. § 1132(A)(3), seeking restitution and injunctive and declaratory relief, and its removal as a breaching fiduciary.

o Cigna's contentions regarding Humble's Count 1 are also applicable to Humble's claims for relief under Count 2.

o Cigna further contends that Humble is not entitled to relief under ERISA § 502(a)(3) because Humble lacks standing to sue under ERISA for alleged breaches of fiduciary duties. Humble's assignments of benefits, at most, allow Humble *to sue for benefits* under ERISA § 502; they do not transfer any of the member's other ERISA statutory or plan-related rights, or a right to seek relief other than benefits. *See In re Wellpoint Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 896 (C.D. Cal. 2012); *Barix Clinics of Ohio, Inc. v. Longaberger Family of Cos. Grp. Med. Plan*, 459 F. Supp. 2d 617, 624–25 (S.D. Ohio 2005).

o Cigna further contends that Humble is not entitled to relief under ERISA § 502(a)(3) for its breach of fiduciary claims because it may not bring a private cause of action for breach of fiduciary duty when there is another available remedy under ERISA § 502. Here, relief is available for Humble's breach of fiduciary duty claims under ERISA § 502(a)(1)(B), and where ERISA § 502(a)(1)(B) is available, it is the exclusive remedy for those plan participants who seek redress for breaches of fiduciary duty. *Rishell v. Standard Life Ins. Co.*, No. 1:08-cv-1198, 2009 WL 395884, at *5 (W.D. Mich. Feb. 13, 2009); *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

o Cigna further contends that Humble is not entitled to relief under ERISA § 502(a)(3) generally for alleged breaches of fiduciary duties because Humble lacks sufficient evidence to establish that Cigna breached any fiduciary duties allegedly owed to Humble under ERISA §§ 404.

o Cigna further contends that Humble is not entitled to relief under ERISA § 502(a)(3) for alleged breaches of fiduciary duties because there is no individual claim for legal damages for breach of fiduciary duty under ERISA. *See Cent. States*, 756 F.3d at 363.

- **Count 3 – Alleged Failure to Provide Full and Fair Review Under ERISA.**

  Humble seeks "damage[s] in an amount in excess of the jurisdictional limits of this Court" for alleged failure by Cigna to provide the full and fair review that ERISA § 503, 29 U.S.C. § 1133, requires.

  o Cigna's contentions regarding Humble's Counts 1 and 2 are also applicable to Humble's claims for relief under Count 3.

HOU:3620104.1

o Cigna further contends that Humble is not entitled to relief under ERISA § 503 because that section does not authorize a claim for money damages— "the remedy for a violation of § 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review." *Syed v. Hercules*, 214 F.3d 155, 162 (3d Cir. 2000) (Alito, J.); *see* 29 U.S.C. § 1133.

o Cigna further contends that Humble is not entitled to relief under ERISA § 503, because Humble lacks sufficient evidence to establish that Cigna breached any duties allegedly owned to Humble under ERISA § 503.

- **Count 4 – Alleged Violations of Claims Procedure Under ERISA.**

  Humble alleges that Cigna violated "claims procedures defined by law (e.g., 29 CFR § 2560.503-1)" by "engaging in conduct that rendered its claims procedures and appeals process unfair to subscribers and their assignee."

  o Cigna's contentions regarding Humble's Counts 1 and 2 are also applicable to Humble's claims for relief under Count 4.

  o Cigna further contends that Humble lacks sufficient evidence to establish that Cigna breached any duties allegedly owed to Humble under claims procedure regulations, including 29 C.F.R. § 2560.503-1.

  o Cigna further contends that the remedy for a failure to comply with 29 C.F.R. § 2560.503-1 is simply that a claimant is "deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(i).

- **Count 5 – Alleged Violations of Texas Insurance Code.**

  Humble alleges that, "[b]y arbitrarily delaying and failing to timely pay claims, Cigna is in violation of the Texas Prompt Pay Statute, Tex. Ins. Code § 542.058, among other sections." Humble further alleges that Cigna's "acts and omission constitute an illegal boycott or an act of coercion in violation of Tex. Ins. Code § 541.003 as an act of unfair competition.

  o Cigna contends that, to the extent Humble seeks relief under the Texas Insurance Code as to ERISA-based plans, such relief under the Texas Prompt Pay Statute is preempted by ERISA as a matter of law. *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015).

  o Cigna further contends that Humble is not entitled to relief under the Texas Insurance Code because, ERISA's "deemer" clause, 29 U.S.C. § 1144(b)(2)(B), exempts self-funded ERISA plans from the "savings" clause. The Texas Insurance Code provisions on which Humble relies do not apply to any self-funded ERISA plans at issue. *Rush Prudential HMO, Inc. v. Moran*,

14

536 U.S. 355, 371 n.6 (2002); *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990); *see* DKT No. 113 at ¶ 16 (alleging that Humble "brings this action pursuant to" both fully insured and self-funded ERISA plans).

o   Cigna further contends that Humble is not entitled to relief under the Texas Prompt Pay Statute (Texas "PPA"). Humble lacks sufficient evidence to meet its burden of proving that any of the claims at issue were "clean claims" or were untimely paid according to the Texas PPA. *See* TEX. INS. CODE §§ 843.336, 843.337; 28 TEX. ADMIN. CODE § 21.2803. Humble also has failed: (1) to identify any specific claim or set of claims that it alleges were timely submitted as clean claims and therefore subject to damages, penalties, and interests under the Texas PPA; (2) to designate any experts (retained or un-retained) or provide any expert reports of individuals qualified to analyze Humble's claims and give opinions on whether such claims meet the statutory criteria for being subject to the Texas PPA or the amount of damages and methodology for calculating such damages, including penalties and interest; (3) to disclose the specific amounts of its alleged damages (i.e., penalties and interest) for each of the claims at issue.  Because Humble cannot demonstrate that any of its claims at issue were timely submitted, qualify as a "clean" claim, or were untimely paid, it is precluded from recovering any of its billed charges, much less any penalties and interest under the Texas PPA.

o   Cigna further contends that Humble is not entitled to relief under the Texas PPA because it has no contract with Cigna, and the Texas PPA only applies when there is a contract between the provider and the payor. *See Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013) ("[T]he Prompt Pay Statute contemplates contractual privity between HMOs and providers.").

o   Cigna further contends that Humble is not entitled to relief under the Texas PPA because it is not a contracted healthcare facility with Cigna and, as a result, Humble may only recover prompt pay penalties and interest under the Texas PPA on claims for which it rendered "care related to an emergency or its attendant episode of care as required by state or federal law." TEX. INS. CODE §§ 843.351(2)(A), 1301.069(2)(A). The claims at issue are for patients who presented at Humble with non-emergent medical conditions. To meet the definition of "emergency care" under the Texas Insurance Code, at a minimum, Humble must prove that such care was to "evaluate and stabilize medical conditions of a recent onset and severity, including severe pain, that would lead a prudent layperson possessing an average knowledge of medicine and health to believe that the individual's condition, sickness, or injury is of such a nature that failure to get immediate medical care could: place the individual's health in serious jeopardy, result in serious impairment to bodily function; result in serious dysfunction of a bodily organ or part; result in serious disfigurement; or for a pregnant woman, result in serious jeopardy to the health of the fetus." TEX. INS. CODE §§ 843.002(7) (defining emergency care; enumerations omitted). Humble lacks sufficient evidence to establish

HOU:3620104.1

whether its claims were for "emergency care." Moreover, Humble has failed to specifically identify the emergency-based claims it contends are subject to the Texas PPA and has also failed to produce comprehensive medical records for such claims. Because Humble cannot demonstrate whether the underlying services for the emergency claims at issue qualify as "emergency care," it is precluded from recovering any of its billed charges, much less any penalties and interest under the Texas PPA.

o Cigna further contends that Humble is not entitled to relief under the Texas PPA because the vast majority of the medical claims at issue were submitted to Cigna pursuant to self-funded healthcare benefit plans (as opposed to fully-insured plans). The Texas PPA does not apply to self-funded benefit plans because such plans are not insurance. Thus, even assuming Humble's claims for reimbursement were timely submitted, qualify as "clean claims," and were based upon "emergency care" services, Humble is still not entitled to relief under the Texas PPA with regard to medical claims submitted under self-funded plans.

o Cigna further contends that Humble is not entitled to relief under Texas Insurance Code § 541.003 and 541.004 because Humble lacks sufficient evidence to establish that Cigna made untimely payment of clean claims and that its alleged actions constitute an illegal boycott or an act of coercion or otherwise are an act of unfair competition.

- **Court 6 - Breach of Contract Allegations.**

   Humble pleads that Cigna is liable under state law (1) "for breaches of contracts with its insureds," and (2) "for breaches of contracts with Humble."

   o Cigna contends that Humble lacks standing to complain about an alleged breach of any contract between Cigna and an insured.

   o Cigna further contends that, assuming Humble had standing to complain, Humble's claim is "dependent on, and derived from, the rights of the plan beneficiar[y] to recover benefits under the terms of the plan,'" and is therefore preempted by ERISA. *See Kennedy Krieger Inst., Inc. v. Brundage Mgmt. Co.*, No. 5:15-CV-162-DAE, 2015 WL 4528885, at *11 (W.D. Tex. July 27, 2015) (quoting *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 383 (5th Cir. 2011)).

   o Cigna further contends that Humble is not entitled to relief under its breach of contract claim because Humble is not a party to such non-ERISA plans and, therefore, cannot be liable for any alleged breach. "In Texas, a party generally must be a party to a contract before [it] can be held liable for breach of that contract." *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 739 (N.D. Tex. 2014) (citing *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379 387 (Tex. App.—Dallas 2012, no pet.)).

16

o  Cigna further contends that Humble is not entitled to relief under its breach of contract claim because Humble has failed to identify any alleged contract(s) between Humble and Cigna.

o  To the extent that Humble alleges that the alleged contracts are so-called letter "discount agreements" that Humble allegedly entered into with "re-pricing agents,"[4] these letters are by their terms "subject to the underlying ERISA plans." *North Cypress*, 781 F.3d at 197. To determine Cigna's alleged liability for breach of a "discount agreement," therefore, a fact finder would have to consult the terms of the ERISA plans, not just the so-called "agreement." As a consequence, Humble's breach of contract claims are preempted by ERISA. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 213–14 (2004); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987).

o  Cigna further contends that Humble is not entitled to relief because Humble lacks sufficient evidence to establish that Cigna paid benefits under the non-ERISA plans that were significantly lower than the amounts required by the terms of the Plans.

- **Count 7 – Promissory Estoppel Allegations.**

   Humble alleges that it called Cigna before scheduling any procedure for Cigna members, and "[b]y confirming coverage, Cigna made a clear and definite promise to pay [Humble] for each of the services provided."[5]

o  Cigna contends that Humble is not entitled to relief because Humble fails to allege a promise that is sufficiently specific and definite and on which Humble could justifiably rely. *Kennedy Krieger Inst., Inc.*, 2015 WL 4528885, at *6 (applying Texas law).[6] Humble does not allege any specific promise to pay for any particular service for any particular time. Rather, Humble merely alleges that Cigna "confirm[ed] coverage" for unidentified services provided.[7] The "allegation that [Cigna] represented that [Humble's] inpatient services were covered under the beneficiary's plan, without more, does not imply that [Cigna] promised to reimburse all such inpatient services subsequently provided to the beneficiary." *Id.* (granting motion to dismiss provider's promissory estoppel claims against benefit plan and plan's administrators).

---

   4  *See*, *e.g.*, ECF No. 84 (Humble's Resp. to Cigna's Mot. for Judgment on the Pleadings) at 8.

   5  Dkt. 113 (Humble's Answer to First Amended Complaint and Counterclaims) at ¶59.

   6  *See also Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141–42 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (holding that promise to supply "all the necessary equipment" was too vague); *Stumm v. BAC Home Loans Servicing, LP*, 914 F. Supp. 2d 1009, 105–16 (D. Minn. 2012) (recognizing that the general pleading standard "is not toothless," and holding that party failed to plead sufficient facts to support promissory estoppel claim).

   7  Dkt#113 (Humble's Answer to First Amended Complaint and Counterclaims) at ¶59.

    o   Cigna further contends that Humble is not entitled to relief because Humble lacks sufficient evidence to establish the elements necessary to support a promissory estoppel claim.

    o   Cigna further contends that Humble is not entitled to relief because Cigna made disclaimers at the time Humble verified benefits, specifically informing Humble that it could not rely on the verification of benefits as a guarantee of payment of benefits.

- **Count 8 – Alleged Failure to Provide Information.**

    Humble alleges a cause of action under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), for alleged "failure to comply with [a] request for information" under 29 U.S.C. § 1024(b)(4). Humble alleges that it called Cigna before scheduling any procedure for Cigna members, and "[b]y confirming coverage, Cigna made a clear and definite promise to pay [Humble] for each of the services provided."[8]

    o   Cigna's contentions regarding Humble's Counts 1 and 2 are also applicable to Humble's claims for relief under Count 8.

    o   Cigna further contends that Humble does not have standing to assert a claim under ERISA § 502(c)(1). 29 U.S.C. § 1024(b)(4) provides that a "plan administrator shall, upon written request of any participant or beneficiary, furnish" copies of "instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Humble is not a participant or beneficiary in any of the plans at issue—it is merely an assignee. *See* 29 U.S.C. § 1002(7)–(8). "[A] plan administrator is under no obligation to disclose plan documents to third parties without written authorization from a participant or beneficiary." *Barix Clinics of Ohio, Inc. v. Longaberger Family of Cos. Grp. Med. Plan*, 459 F. Supp. 2d 617, 625 (S.D. Ohio 2005); *see Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1072 (6th Cir. 1994). Humble has not alleged, and there is no evidence, that any participant or beneficiary has authorized in writing the release to Humble of information subject to 29 U.S.C. § 1024(b)(4).

    o   Cigna further contends that ERISA § 502(c) applies only to statutorily-defined "administrators," and Cigna is not an "administrator" for any of the Plans at issue. 29 U.S.C. §§ 1002(16)(A), 1132(c)(1)(B); *Jones v. UOP*, 16 F.3d 141, 144 (7th Cir. 1994). Cigna's role is limited to a claims administrator responsible for processing and handling the administration of claims submitted by Humble.

    o   Cigna further contends that Humble is not entitled to relief because Humble "fails to identify the administrative entity or entities to which written requests

---

[8]  Dkt. 113 (Humble's Answer to First Amended Complaint and Counterclaims) at ¶59.

HOU:3620104.1

for Plan documents were made, and from whom Plan documents were not received." *Sleep Lab at W. Houston*, 2015 WL 3507894, at *11.

- **Count 9 - Damages.**

  Humble alleges that it is entitled to compensatory damages in an amount in excess of the jurisdiction limits of this Court; damages and interest under the Texas Prompt Pay Statute; and statutory penalties under ERISA § 502(c).

  o In addition to Cigna's contentions stated above regarding Humble's claims, Cigna contends that all of Humble's claims fail on the merits because they are based upon medical claims that Humble improperly submitted to Cigna, which contained false representations regarding the true nature of Cigna's billed charge, hid the fact that Humble failed to charge and/or collect patient cost-share amounts required under the Plans, and hid the fact that Humble procured Cigna members through improper and illegal inducements and illegal kickbacks to referring physicians. Thus, Humble's illegal acts prevent Humble from recovering any alleged damages in this case.

  o Cigna further contends that Humble lacks sufficient evidence to establish that the amounts Cigna paid on the medical claims at issue were lower than the amounts required under the Plans. Humble's damages "expert" and proposed damage model fails to consider the specific Plan terms in calculating amounts payable on the claims at issue in accordance with the Plans.

  o Cigna further contends that Humble's calculation of what Cigna would have owed or paid had the claims been processed is incorrect. Had Humble not paid kickbacks to the referring physicians or waived the patients' financial cost share, and had Humble's claims been processed in the ordinary course, Cigna would have obtained for those claims either the market pricing or Medicare-based pricing for the geographic area in which the services were rendered as selected by the client. These amounts would have been considered the allowable amount for those claims, and Cigna then would have applied the client-selected percentage of reimbursement based upon the reimbursement methodology that the client had chosen. Cigna would have used a third party vendor, primarily Multiplan, to obtain that pricing. Multiplan re-priced the available 424 Humble claims it has put in issue based upon the reimbursement methodologies that Cigna would have used to price these claims had Humble not paid kickbacks to the referring physicians or waived the patients' financial cost share. For plans that offered reimbursement based upon a percentage of the market rate, Multiplan re-priced the Humble claims at the eightieth percentile of their proprietary database for outpatient procedures, which is the maximum amount recoverable under the plan limits. In addition, for those plans that offered reimbursement based upon a Medicare-based rate, Multiplan re-priced Humble claims that would have been priced at the client-selected Medicare-based rates where Medicare prices were available. The actual reimbursement for the repriced Humble claims would have been **$5.3**

**million,** which is significantly less than Humble's estimate of $9 million to $18 million or its supplemental damage amount of $13.7 million.

o   Cigna further contends that Humble's damages, if any be proved, should also be offset by the amount of any overpayments made to Humble.

- **Count 10 - Attorneys' Fees**.

    Humble alleges that it is entitled to an award of attorney's fees pursuant to ERISA, Texas state law and Federal Rule of Civil Procedure 54(c).

    o   Cigna contends that  Humble is not entitled to relief under ERISA or state law for the reasons stated above. Consequently, Humble is not entitled to an award of attorney's fees.

- **Count 11 - Punitive/Exemplary Damages**.

    Humble alleges that it is entitled to an award of punitive/exemplary damages because Cigna alleged acts were committed with malice and were intentional in nature.

    o   Cigna contends that Humble lacks sufficient evidence to establish any liability, much less that any of Humble's acts warrant punitive/exemplary damages.

- **Count 12 - Request for Declaratory Judgment.**

    Humble seeks declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the Texas Declaratory Judgment Act, Chapter 37 of the Texas Civil Practices and Remedies Code. Specifically, Humble seeks a declaration from this Court that: (a)  Humble properly submitted all claims for reimbursement of healthcare benefits to Cigna at any time in compliance with all state and federal laws; (b) Cigna did not engage in any acts of fraud or misrepresentation in its collective attempts to recover healthcare benefits from Cigna at any time; (c) Cigna was billed for procedures performed at Humble at the usual, customary and reasonable rate and/or the Maximum Reimbursable Charge for healthcare services rendered to Cigna's members; and (d) Humble, as beneficiary of its patients' claims, is entitled to be reimbursed by Cigna for billed charges, or in the alternative, is entitled to be to be reimbursed at the usual, customary and reasonable rate and/or the Maximum Reimbursable Charge for all healthcare claims by Humble, as set forth in Cigna's applicable plans and/or policies.

    o   Cigna contends that, as a matter of law, Humble is not entitled to the requested declaratory relief for the reasons stated above regarding  Humble's improper and illegal acts.

o   Cigna further contends that, as a matter of law, Humble is not entitled to the requested declaratory relief pursuant to the Texas Declaratory Judgment Act. In the Fifth Circuit, district courts "cannot award relief pursuant to the Texas Declaratory Judgment Act because declaratory judgment is procedural, not substantive, and federal courts apply their own procedural rules." *Falk v. Wells Fargo Bank*, No. 09-678, 2011 WL 3702666, at *4 (N.D. Tex. Aug. 19, 2011) (citation omitted); *see Utica Lloyd's v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998); *Self-Ins. Inst. of Am. v. Korioth*, 53 F.3d 694, 697 (5th Cir. 1995).

o   Cigna further contends that, as a matter of law, Humble also is not entitled to declaratory relief pursuant to the Federal Declaratory Judgment Act.  That Act is merely a procedural device; it creates no substantive rights or causes of action.  *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41 (1937).  To be entitled to relief, the declaratory-judgment plaintiff must allege an underlying claim, which demonstrates a "substantial and continuing controversy." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003); *see also Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) ("A declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists."); 28 U.S.C. § 2201(a) ("In a case of *actual controversy* within its jurisdiction . . . any court of the United States . . . may declare the right and other legal relations of any interested party seeking such declaration.") (emphasis added).  Cigna contends that, because each and every one of Humble's underlying causes of action fail on the merits for the reasons stated above, no actual case or controversy exists between the parties.  Accordingly, Humble's claim for declaratory relief under the Federal Declaratory Judgment Act is not justiciable and should be dismissed.

•   **Count 13 - Chapter 37 Relief.**

Humble seeks to recover its costs and "all reasonable and necessary attorneys' fees as are equitable and just in the litigation of this matter," pursuant to Section 37.009 of the Tex. Civ. Prac. & Rem. Code and 28 U.S.C. § 201.

o   In addition to Cigna's contentions stated above regarding Humble's counterclaims, Cigna contends that Chapter 37 of the Texas Civil Practice and Remedies Code is not applicable. Consequently, Humble is not entitled to an award of attorney fees.

Cigna continues to assert each and every one of its affirmative defenses as pleaded in its Answer to Defendant's Counterclaim (Dkt#128), which is incorporated by reference as though fully set forth herein.

C.      **Humble's Contentions**

1.   Humble is Entitled to Damages and Attorney's Fees for Unpaid and Underpaid Claims

a)   "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." *Harris Methodist Fort Worth v. Sales Support Servs.*, 426 F.3d 330, 333-34 (5th Cir. 2005) (citing *Tango Transport v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 893 (5th Cir. 2003)).   Humble received express assignments of rights from its patients.

b)   Cigna agreed to pay plan members money ("benefits") to reimburse certain medical costs incurred at out-of-network providers.  The patients sought medical care from such a provider — Humble Surgical Hospital — and assigned to it their rights under their Cigna plans. Cigna did not pay the patients or their assignee the full amount it owed to the patients under the contract, and Humble is entitled to to enforce its assigned contract rights against Cigna.

c)   A patient suffers a concrete injury if money that she is allegedly owed contractually is not paid, regardless of whether she has directed the money be paid to a third party for her convenience.  Cigna's failure to pay denied the patient the benefit of her bargain. In purchasing her Cigna plan she agreed to pay for coverage at out-of-network providers like Humble, and Cigna is failing to uphold the bargain by paying for covered services.

d)   Humble patients contracted for coverage at out-of-network providers under their insurance plans. Humble patients incurred charges for medical care, and directed that the payments be made to Humble, but the contracted-for payments have not been made. The patients and their assignee, Humble, have thus been deprived of what they contracted for, a concrete injury.

e)   ERISA is designed to promote the interests of plan participants and their beneficiaries, "and to protect contractually defined benefits." 29 U.S.C. § 1133(2).  ERISA further protects patients' right to "full and fair review" of their claims, and holds fiduciaries to certain standards. *See* 29 U.S.C. § 1104(a)(1)(B)  &  (D).  To these ends, ERISA section 502(a)(1)(B) empowers a plan participant to sue "to recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the plan."   29 U.S.C. § 1132(a)(1)(B).

f)   ERISA further allows suit to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to

obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id.* at § 1132(a)(3).

g)   Humble patients assigned their rights under their insurance contracts to Humble, and Humble has standing to enforce the contracts and recover for the unpaid and underpaid amounts due and owing under the insurance contracts.

h)   Cigna is a fiduciary for the employer sponsored plans which it insures and/or administers. Cigna's First Amended Complaint and agreements with plans sponsors explicitly and in detail acknowledge its fiduciary status. Cigna owes its fiduciary duty to the plans' participants and beneficiaries, including Humble, the assignee of the benefits.

i)   Cigna breached its fiduciary duties to the patients and Humble as assignee by failing to pay or underpaying claims without valid data or evidence, by failing to pay or underpaying claims in an arbitrary fashion, by omitting material information about its determinations concerning patient claims and Humble, and by making misrepresentations about its claims determinations.

j)   Cigna failed to act with the care, skill, prudence and diligence that a prudent plan administrator would use in the conduct of an enterprise of like character or to act in accordance with the documents and instruments governing the plan.

k)   Cigna violated its fiduciary duty of care and loyalty by making benefit determinations that benefited Cigna at the expense of beneficiaries, by making benefit determinations for the purpose of maximizing profit to Cigna at the expense of beneficiaries, and by ignoring the terms of the plans and applicable statutes and regulations when making such determinations.

l)   Cigna failed to provide a "full and fair review" of all claims submitted to Cigna by Humble patients, and failed to make necessary disclosures under 29 U.S.C. § 1133.

m)  Cigna systematically failed to abide by the applicable Department of Labor Regulations, including those on the timing, communication and contents of adverse benefit determinations.

n)   Cigna failed to follow the terms of the governing plan documents and generally failed to administer the plans solely in the best interest of the plan participants for the exclusive purpose of providing benefits.

o)  Humble patients have assigned the right to pursue claims and obtain information from Cigna.  Cigna failed to comply with the request for information and Humble is entitled to recover for that failure.

p)   Cigna individually negotiated and contracted with Humble for procedures performed at Humble to determine and finalize claims.  The agreements in this case are contracts that Cigna entered into through an agent, which obligated Cigna to pay Humble a specified amount.  Cigna's obligation to pay Humble the specified amount derives from the terms of the agreements and, thus, Cigna's breach of contracts implicates and independent legal duty. Cigna's attempt to renege on these finalized contracts and recover payments properly made constitutes a breach of Cigna's contracts with Humble.

q)  Cigna misrepresented the eligibility, coverage, and benefits status of its insureds and Humble relied on those representations to its detriment and provided as-yet-unreimbursed services to Cigna's members.

r)  Before scheduling any procedure for Cigna members, Humble contacted Cigna or the contracted agent that is listed on each member's insurance card to confirm whether coverage was available for the scheduled services and to obtain the specific coverage details for that patient's insurance plan. In each instance, Cigna confirmed eligibility, coverage and benefits for the scheduled procedure. Humble did not have access to any of the various member plans that covered the Cigna members, and therefore, had to rely upon the information provided by the agents of Cigna.  Humble relied upon Cigna's coverage and benefit payment promises to its detriment.

s)  Cigna's acts and omissions constitute violations of Texas Insurance Code §§ 541.003, 541.054, and 542.058. Humble brings causes of action under the Texas Insurance Code to redress Cigna's refusal to pay claims (timely or at all), failure to abide by the discount agreements, affirmative misrepresentations regarding payment, illegal boycotts, and unfair competition. These claims do not "address an area of federal concern," do not purport to regulate or impact the benefits under the plans, and exist independently of any participants' or beneficiaries' rights under ERISA.

t)  Humble is entitled to recover damages and attorney's fees for Cigna's breach of contract, breach of fiduciary duties, and other violations pursuant to ERISA § 17.41, Tex. Bus. & Comm. Code, §§ 38.001, et seq., Tex. Civ. Prac. & Rem. Code, and Fed. R. Civ. P. 54(c).

2.  <u>Cigna's State Law Causes of Action Are Preempted by ERISA</u>

a)  Cigna's six state law causes of action for fraud, money had and received, unjust enrichment tortious interference, and declaratory judgment are entirely based upon an interpretation of the terms of ERISA benefit plans,

and are thus preempted. *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 213 (2004) (finding preemption where interpretation of the terms of benefit plans forms an essential part of state law claims).

b) Critical to Cigna's overpayment claims is its contention that Humble improperly "waives the patients' financial responsibility" or "collected on a fraction of the amount, if anything at all, the patient/members owed under the terms of their plans." Doc. 66-1 at 20-21.

c) In *N. Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 186 (5th Cir. 2015), Cigna made identical allegations that it had no obligation to pay because "North Cypress as an out-of-network provider did not charge the patients for coinsurance." The Fifth Circuit made clear that analyzing Cigna's position would require a close reading and interpretation of plan terms: "The first question is whether Cigna's reading of the plans is 'legally correct.' The 'most important factor to consider' in the legal correctness inquiry is whether Cigna's 'interpretation is consistent with a fair reading of the plans.'" *Id.* at 195.

d) It is well-established that preemption occurs when "interpretation of the terms of benefit plans form[s] an essential part of" the state law claims. *Davila*, 542 U.S. at 213; *see also Quality Infusion Care, Inc. v. Unicare Health Plans of Texas*, 2007 WL 760368, at *3 (S.D. Tex. Mar. 8, 2007) (finding preemption because "Unicare's potential liability under the Texas AWP statute derives entirely from the rights and obligations established by the Plan"); *Simon v. Express Scripts, Inc.*, 2013 WL 5375433, at *11 (W.D. La. Sept. 23, 2013) ("A state law claim is not independent of ERISA if interpretation of the plan terms comprises an essential part of the claim and liability exists only because of the administration of the ERISA plan.").

e) In *Metropolitan Life Ins. Co. v. DePalo*, 2014 WL 4681094, at *10 (D.N.J. Sept. 22, 2014), the court found that ERISA preempted MetLife's state law claims for conversion and mistake of fact regarding allegedly overpaid benefits because the claims "are premised upon and require a finding that MetLife was not required, under the Plan's terms, to make the optional coverage benefit payment." *Id.* "The proposed state law claims in this case," the court added, "clearly arise from an ERISA plan, direct the Court's inquiry to the Plan, require an analysis of the Plan's terms, and involve the calculation of benefits due to a Plan participant." *Id.*

f) In *Sheakalee v. Fortis Benefits Ins. Co.*, 2008 WL 4224575, at *2 (E.D. Cal. Sept. 15, 2008), the court held that the insurance company's state law claims for breach of contract, common count, and account stated "relate to" an ERISA plan and thus were preempted. The court relied on the insurance company's statement that "each claim in USIC's counterclaim

seeks reimbursement of overpayments *pursuant to the terms and conditions of the Policy*…." *Id*. at n.1 (emphasis in original).

g) Regardless of how Cigna frames its claims for overpayment, Cigna's alleged state law causes of action require interpretation of the plan terms, fall squarely within ERISA's preemptive scope, and fail as a matter of law.

3. <u>Cigna's Equitable Relief Claim Fails as a Matter of Law</u>

a) In its "Equitable Relief (ERISA)" cause of action under 29 U.S.C. § 1132(a)(3), Cigna seeks "an order requiring the return" of allegedly overpaid funds and "a declaration that Cigna may offset the amount of these overpayments from future payments." Doc. 66-1 at 34. This is not proper equitable relief under ERISA.

b) In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002), the Supreme Court held that the insurance company's demand for an injunction "to enforce the reimbursement provision" was ***not*** appropriate equitable relief under ERISA.

c) The Supreme Court rejected the insurance company's argument that ERISA permitted their claim to enjoin "respondents' failure to reimburse the Plan," finding that "an injunction to compel the payment of money past due under a contract or specific performance of a past due monetary obligation, was not typically available in equity." *Id.* at 210-211.

d) Cigna's request for an injunction "requiring the return of such funds" or an offset of the funds seeks "in essence, to impose personal liability" on Humble for a contractual obligation to pay money, *i.e.*, enforcement of plan terms authorizing reimbursement of overpayments. Cigna's sought-after relief is "not typically available in equity" and thus not recoverable under Knudson. *Id*. at 210.

e) In *Verizon Employee Benefits Committee v. Adams*, 2006 WL 66711, at *4 (N.D. Tex. Jan. 11, 2006), the court relied on *Knudson* and ruled that the plaintiff's demand for a constructive trust on the accounts, funds, or real property "*where those funds may be traced*" sought "to impose personal liability upon Defendant to pay a sum of money, which is a defining feature of an action in law." The court found that plaintiff's complaint "did not identify a specific res, such as a bank account or trust, where its [funds] could be found," and that simply alleging an equitable remedy was "not sufficient for the Court to infer the existence of a res that would support an action under § 502(a)(3)." *Id*.

f) Cigna has not identified – and cannot identify – a specific *res* where the allegedly overpaid funds could be found. Like the plaintiff in *Verizon*, Cigna wants "a tracing of any portion of the funds no longer in the

Defendant's possession or control." Doc. 66-1 at 34. Cigna thus concedes that any allegedly overpaid funds "have been dissipated so that no product remains" and Cigna "cannot enforce a constructive trust of or an equitable lien upon" Humble's other property. *Knudson*, 534 U.S. at 213.

g) Cigna's claim for equitable relief under ERISA fails as a matter of law.

4. <u>Cigna's Claims are Legally and Factually Incorrect</u>

a) In *N. Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 186 (5th Cir. 2015), Cigna made identical allegations that it had no obligation to pay because "North Cypress as an out-of-network provider did not charge the patients for coinsurance." *Id.* at 195. The Fifth Circuit explained:

> ERISA plans are interpreted in their ordinary and popular sense as would a person of average intelligence and experience ... [and] must be interpreted as they are likely to be understood by the average plan participant. The inquiry is thus whether ordinary plan members who read that payment for the following is specifically excluded from this plan: ... charges for which you are not obligated to pay or for which you are not billed, would understand that they *have no insurance coverage* if they are not charged for coinsurance. That is, would a plan member understand the language to *condition* coverage on the collection of coinsurance, rather than simply describing the fact that the insurance does not cover all of a patient's costs.

b) Although it did not reach the merits of Cigna's plan interpretation, the Fifth Circuit noted "***there are strong arguments that Cigna's plan interpretation is not 'legally correct.'***" *Id.* (emphasis added). Here, the evidence will show that:

   i. An ordinary plan member would not understand that they have no insurance coverage if they are not charged for coinsurance.

   ii. An ordinary plan member would not understand that their coverage is conditioned on the collection of coinsurance.

   iii. Patients often contacted Cigna because they did not understand what the claim denial language meant when it said "charges which you are not obligated to pay or for which you are not billed are not covered under the benefit plans administered by and or underwritten by CIGNA and its subsidiaries."

    iv.    Claims processing personnel within Cigna often contacted the Special Investigations Unit because they did not understand what the claim denial language meant when it said "charges which you are not obligated to pay or for which you are not billed are not covered under the benefit plans administered by and or underwritten by CIGNA and its subsidiaries."

    v.    Cigna used a "verification of services" form to determine how much of the patient responsibility portion of a charge had been paid by the patient.  Cigna used the amount disclosed by the patient to determine what proportionate share of the claim Cigna would pay.

    vi.    This "proportionate share" approach is not disclosed in the plans; it does not take into account the maximum reimbursable charge calculations disclosed in the plan; it does not take into account a reasonable and customary or usual and prevailing database of similar charges; and Cigna did not explain to plan participants that any such "proportionate share" approach existed.

    vii.    Cigna's "verification of services" form also failed to inform the participant that it was being used to determine what proportionate share would be paid, or that Cigna would deny the claim if the participant failed to respond.

c) Cigna did not have discretion to absolve itself of responsibility for payment of hundreds of claims.

    i.    Cigna did not deny coverage to patients who were not charged or billed for their co-pays or coinsurance to in-network providers.

    ii.    Cigna had a conflict of interest in its application of the fee-forgiving policy

    iii.    Cigna lacked good faith in its application of the fee-forgiving policy

    iv.    Cigna's determination of a proportionate share is inconsistent with the plan

d) Humble does not waive patient responsibility as a matter of fact.  Humble collects or attempts to collect patient responsibility prior to each procedure and bills patients after procedures for the balance.  Cigna's own corporate representative testified that there is no fee-forgiving if a provider tries, but fails, to collect from a patient.

e) Cigna improperly denied hundreds of claims as "Requested information not received" or "missing information needed." When denying claims based on missing information, ERISA requires a description of any

additional information needed and an explanation of why such information is necessary. Contrary to ERISA requirements, Cigna did not inform the patient what specific information was missing, did not inform the patient where he might find the information needed, and did not explain to the patient why the information was necessary.

f)  Cigna cannot prove all the elements of its claims for fraud, money had and received, unjust enrichment tortious interference, or declaratory judgment.

g)  Cigna cannot prove all the elements of its kickback allegations.  Indeed, Humble's agreements with physicians violate not law, and there is no private right of action for the type of conduct Cigna alleges.

h)  Some or all of Cigna's claims are barred by waiver, payment, release, acquiescence, estoppel, conduct and performance, ratification, laches, unclean hands, limitation of liability and/or accord and satisfaction.

i)  Some or all of Cigna's claims are barred by Cigna's own conduct, failure to act in a commercially-reasonable manner, failure to mitigate damages, and failure to follow plan provisions.

V.    <u>Exhibits</u>.

See Cigna's and Humble's Exhibit Lists attached hereto as Exhibit "A" and Exhibit "B," respectively.

VI.   <u>Witnesses</u>.

See Cigna's and Humble's Witness Lists attached hereto as Exhibit "C" and Exhibit "D," respectively. If other witnesses are to be called at the trial become known, their names, addresses and subject of their testimony will be reported to opposing counsel as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

VII.  <u>Trial</u>.

The probable length of trial is three (3) weeks. Scheduling considerations include the necessity for calling certain out-of-town fact and expert witnesses. Out-of-town witnesses will require at least seven (7) days' notice to travel to Houston for trial.

Given that Cigna's out-of-town witnesses will be traveling to Houston for the trial, Cigna requests that the trial begin on January 11, 2016, if that date is available for the Court.

VIII.   <u>Additional Required Attachments</u>.

    (1)    Cigna's proposed questions for *voir dire* examination are  attached hereto as Exhibit "E";

    (2)    Cigna's proposed Jury Charge, including instructions, definitions and special interrogatories with authorities is attached hereto as Exhibit "F";

    (3)    Cigna's proposed Findings of Fact and Conclusion of Law are attached hereto as Exhibit "G";

    (4)    Cigna's Motion and Order in Limine is attached hereto as Exhibit "H";

    (5)    Cigna's Trial Brief on ERISA § 502(c) Penalties is attached hereto as Exhibit "I";

    (6)    Humble's proposed *voir dire* questions are attached hereto as Exhibit "J";

    (7)    Humble's proposed Jury Charge, including instructions, definitions and special interrogatories with authorities is attached hereto as Exhibit "K";

    (8)    Humble's proposed Findings of Fact and Conclusion of Law are attached hereto as Exhibit "L"; and

    (9)    Humble's Motion and Order in Limine marked hereto as Exhibit "M."

Respectfully submitted,

**ANDREWS KURTH LLP**

By: ____*s/John B. Shely*____
    **John B. Shely**
    State Bar No. 18215300
    Southern District No. 7544
    **Dena Palermo**
    State Bar No. 08928830
    Southern District No. 6082
    **Brian Pidcock**
    State Bar No. 24074895
    Southern District No. 1654553
    600 Travis, Suite 4200
    Houston, Texas 77002
    (713) 220-4105 (JBS)
    (713) 220-3846 (DP)
    jshely@andrewskurth.com
    dpalermo@andrewskurth.com
    brianpidcock@andrewskurth.com

**ATTORNEYS FOR PLAINTIFFS
CONNECTICUT GENERAL LIFE
INSURANCE COMPANY AND CIGNA
HEALTH AND LIFE INSURANCE
COMPANY**

**SUSMAN GODFREY LLP**

By: /s/ *Brian Melton*
    **Brian D. Melton** (Attorney-in-Charge)
    State Bar No. 24010620
    Southern District of Texas No. 26016
    **Jonathan J. Ross**
    State Bar No. 00791575
    Southern District of Texas No. 18293
    **Chanler A. Langham**
    State Bar No. 24053314
    Southern District of Texas No. 659756
    **John P. Lahad**
    State Bar No. 24068095
    Southern District of Texas No. 1114929
    1000 Louisiana Street, Suite 5100
    Houston, Texas 77002
    Telephone:  (713) 651-9366
    Facsimile:  (713) 654-6666
    bmelton@susmangodfrey.com
    jross@susmangodfrey.com
    clangham@susmangodfrey.com
    jlahad@susmangodfrey.com

**ATTORNEYS FOR DEFENDANT
HUMBLE SURGICAL HOSPITAL LLC**

HOU:3620104.1