IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONNECTICUT GENERAL LIFE | § | |
| INSURANCE COMPANY AND | § | |
| CIGNA HEALTH AND LIFE | § | |
| INSURANCE COMPANY | § | |
| | § | JURY DEMANDED |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION:  4:13-CV-3291 |
| | § | |
| HUMBLE SURGICAL HOSPITAL, LLC | § | |
| | § | |
| Defendant. | § | |

Humble's Amended Response and Objections
to Cigna's Deposition Objections and Counter Designations

Humble Surgical Hospital, LLC ("Humble") respectfully submits the following responses to Cigna's deposition objections and counter designations.  Humble further submits its objections and counter-counter designations to Cigna's counter designations.

A.    Humble's Response to Cigna's Objections to Linda Halik

1.  Cigna objection to Halik at 11:21-27: Relevance. FRE 402, 403.

    Q.    As a health care fraud investigator, do you ever investigate conduct dealing with charges for procedures that were made that, you know, the procedure actually wasn't performed?

    A.    The allegation may have been there, but the result was that it wasn't true, they had been performed.

Response:  Linda Halik is a member of the Cigna Special Investigations Unit that has worked for Cigna for over 20 years.  One of the major issues in this case will be the credibility of the investigation conducted by Cigna's Special Investigations Unit.  The fact that Linda Halik commenced an investigation against a provider and the allegation turned out to not be true is relevant to that credibility determination and not overly prejudicial to Cigna.

Outcome:            Sustained: ____            Overruled: ____

2.  Cigna objection to Halik at 12:14-20: Relevance. FRE 402, 403.

> Q.     You have never investigated Humble for any sort of procedure that
> they charged for, that wasn't actually performed?
>
> A.     No.
>
> Q.     You're not familiar with any allegation that has been made about
> Humble in that regard, correct?
>
> A.     Correct.

Response: Cigna sent several letters to Humble patients called "Verification of Services"
letters. Cigna witnesses have explained that the term "verification of services" is typically
used in the context of providers who billed for procedures that were not actually
performed.  This testimony clarifies that no such allegation has been made against
Humble and that Cigna's use of the term "verification of services" in this context is
misleading.

Outcome:          Sustained: ____          Overruled: ____

3.  Cigna objection to Halik at 29:18-23: Relevance. FRE 402, 403.

> Q.     Did you receive some sort of training in your position with the Call
> Center?
>
> A.     Yes.
>
> Q.     What training was that?
>
> A.     The basic screen shots, how the claim systems function, how to
> answer a call.

Response:  Linda Halik has worked for Cigna for over 20 years.  She previously worked
as a call center representative for Cigna.  The above testimony establishes that call center
representatives (like those that Humble and patients contacted to determine coverage
eligibility) received training from Cigna.

Outcome:          Sustained: ____          Overruled: ____

4.  Cigna objection to Halik at 37:9-38:7: Relevance, Foundation; Speculative (38:4-
9). FRE 402, 403, 602.

> Q.     At that point when a particular facility is selected and it's
> determined that it's in-network or out-of-network, is there some
> place in the system that tells the customer service representative
> that that particular facility is flagged in some way?

> A.      They would have to access one of the claims system and enter the tax ID number to see if there was a flag placed on the tax ID number.

> Q.      So that's a different system?

> A.      Correct.

> Q.      And once the customer service representative accesses the Central Provider File, looks at a particular facility, determines whether it's in-network or out-of-network, is it typical that they would access another system, enter in the identification number to determine whether they're flagged or not?

> A.      Not typically.

> Q.      Are they trained to look to see if there is a flag?

> A.      I don't know what they're trained.

Response: Linda Halik has worked for Cigna for over 20 years.  She previously worked as a call center representative for Cigna.  She now works for the Special Investigation Unit in charge of investigating fee-forgiving allegations and managing claims for providers that have been flagged.  The fact that a call center representative (who Humble and patients contact to determine coverage eligibility) must go through several different systems to determine whether a provider is flagged is relevant to the issue of whether Cigna informed such representatives about a flag or fee forgiving.  The fact that a Special Investigations Unit representative does not know what training exists for such purposes, is pertinent to the same issue.

Outcome:           Sustained: ____           Overruled: ____

5.    Cigna objection to Halik at 38:4-9: Relevance, Foundation; Speculative (38:4-9). FRE 402, 403, 602.

> Q.      Have you in your workings as a – in the Special Investigations Unit as a health care fraud investigator, heard of any training of Call Center representatives to teach them to look for flags?

> MS. PALERMO: Form.

> A.      No, to my knowledge.

Response: Same response as above.

Outcome:           Sustained: ____           Overruled: ____

6.      Cigna objection to Halik at 64:23-27: Foundation; Speculative; Misstates the
        Facts (64:18-27). FRE 602.

   Q. Does this refresh your recollection as to whether Cigna has ever
        taken the position that Humble patients are fully responsible for
        paying Humble the amounts that Cigna did not cover?

   MS. PALERMO: Object to the form.

   A. Yes, yes.

   BY MR. LANGHAM:

   Q. And how does it refresh your recollection?

   A. Because it's written here on the Explanation of Benefits.

<u>Response</u>:   This testimony must be viewed in context. At page 48-49, Linda Halik
previously testified that she was not aware that Cigna had "taken the position that
Humble patients are fully responsible for paying Humble the amounts that Cigna did not
cover."  After showing Halik several Explanation of Benefits forms produced by Cigna,
the above question was asked.  Halik's previous testimony establishes the foundation for
her answer, and she provides a basis for her answer in the response.  *See* 48:25-49:11.

   Q. Has Cigna ever taken the position that Humble patients are fully
        responsible for paying Humble the amounts that Cigna did not
        cover?

   A. Formally taken the position?

   Q. Yes.

   A. I'm not aware of.

<u>Outcome</u>:   Sustained: ___   Overruled: ___

7.      Cigna objection to Halik at 88:3-89:25: Hearsay. FRE 801, 802.

   Q. What is a client advocate?

   A. I'm not sure.

   Q. According to this, it appears to be someone within Cigna?

   A. It is.

   Q. And Tanya Duncan is asking or saying, "The client is asking me
        why claim," and lists the numbers, "are not paying since we
        covered the services if medically necessary," right?

4

A.     Yes.

Q.     Below shows, "SIU told us to deny the claims. Can you please assist on why we are denying claims so I can try to communicate back to the client." Right?

A.     Yes.

Q.     And one of the references she gives is, "This requested information not received from member. Claim will be considered upon receipt of requested information," correct?

A.     Correct.

Q.     And this is the type of information – or the actually the exact phrase that you could find in an Explanation of Benefits, right?

A.     Correct.

Q.     And this person within Cigna is saying, "Can you give me more information, I don't understand what this means," right?

A.     Yes.

Q.     And you have experienced that, correct?

A.     Yes.

Q.     Then there's another reference to "charges which you are not obligated to pay, or for which you are not billed are not covered under the benefit plans administered by and/or underwritten by Cigna and its subsidiaries," right?

A.     Yes.

Q.     And this is a direct quote of what you would sometimes see in Explanation of Benefits, right?

A.     Yes.

Q.     And this person within Cigna is saying, "I don't understand. Can you please provide more information on what this means," right?

A.     Uh-hum.

Q.     Yes?

A.     Yes.

Q.      You have experienced that in your role, correct?

A.      Yes.

Response: This testimony relates to Exhibit 135.  Exhibit 135 is an email contained in the Special Investigation Unit files and displays a conversation between two Cigna representatives.  Under FRE 801(e)(2)(A) & (D) the statement is not hearsay and is admissible as an admission by a party opponent.  Even if Exhibit 135 contains hearsay statements, the exhibit need not be offered for the truth of the matter asserted.

Linda Halik's admission that Cigna representatives did not understand the phrase "charges which you are not obligated to pay, or for which you are not billed are not covered under the benefit plans administered by and/or underwritten by Cigna and its subsidiaries" is admissible to show whether an ordinary person would understand Cigna's claim language to mean that a members coverage is conditioned on their payment of coinsurance. *See N. Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 186 (5th Cir. 2015) ("The inquiry is thus whether . . . would a plan member understand the language to condition coverage on the collection of coinsurance, rather than simply describing the fact that the insurance does not cover all of a patient's costs.").

Outcome:            Sustained: ___            Overruled: ___

8.  Cigna objection to Halik at 146:22-26: Misstates the Facts.

Q.      And in this provision, it does not explain that Cigna is going to take into account what some other patients paid or didn't pay when determining whether this particular claim will be paid?

A.      Correct.

Response:  This testimony must be taken the context of the testimony that directly precedes Cigna's objection.  The testimony establishes the basis, foundation, and facts that support the question and Halik's response. *See* 145:25-146:21

Q.      And I want to go back to this language that we see over and over in these Explanation of Benefits, the 322 language, where it says, "Charges which *you* are not obligated to pay, or for which *you* are not billed, are not covered under benefit plans administered by and/or underwritten by Cigna and its subsidiaries," right?

A.      Right.

Q.      And this language, that's individualized to a particular individual, right?

MS. PALERMO: Object to form.

BY MR. LANGHAM:

6

Q.      It's written to say you, and "you" typically means the reader, right?

A.      Right.

Q.      And the reader in this case is the patient, right?

A.      Correct.

<u>Outcome</u>:           Sustained: ___                    Overruled: ___

9. Cigna objection to Halik at 160:9-23: Hearsay. FRE 801, 802.

Q.      …Under these exclusions and expenses not covered in general limitations there is a bullet that says, "Charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan," right?

A.      Yes.

. . .

Q.      Do you know if the Special Investigations Unit provides patients any further explanation of what that exclusion means?

A.      No.

Q.      Yet you have had to explain what it means to individuals within Cigna, right?

A.      I have.

Q.      Have you personally explained what that exclusion means to any patients?

A.      I would imagine so.

Q.      Because they asked?

A.      Yes.

Q.      And the reason they asked is because they didn't know what it meant?

A.      Yes.

<u>Response</u>: Under FRE 801(e)(2)(A) & (D) the statement is not hearsay. Linda Halik's admission that Cigna representatives and patients did not understand the exclusion language and had to ask her what it meant is directly pertinent to major issues in this case.

*See N. Cypress*, 781 F.3d at 186 ("The inquiry is thus whether . . . would a plan member understand the language to condition coverage on the collection of coinsurance, rather than simply describing the fact that the insurance does not cover all of a patient's costs.").

Outcome:          Sustained: ____          Overruled: ____

B.     Humble's Objections to Cigna's Counter Designations for Linda Halik:

| Begin Page | Begin Line | End Page | End Line | Objection |
|---|---|---|---|---|
| 6 | 3 | 6 | 9 | Improper 106 |
| 6 | 14 | 7 | 20 | Improper 106 |
| 40 | 19 | 41 | 12 | Improper 106 |
| 79 | 23 | 79 | 25 | FRE 106 "Sticking with Exhibit 14" only.  Otherwise, improper 106 |
| 83 | 23 | 84 | 7 | Improper 106 |
| 90 | 21 | 91 | 3 | Exhibit withdrawn. Objection to duplicative exhibit sustained. |
| 91 | 16 | 91 | 20 | Exhibit withdrawn. Objection to duplicative exhibit sustained. |
| 91 | 24 | 92 | 19 | Exhibit withdrawn. Objection to duplicative exhibit sustained. |
| 98 | 10 | 99 | 3 | Improper 106 |
| 98 | 18 | 99 | 3 | Exhibit withdrawn. Objection to duplicative exhibit sustained. |
| 125 | 4 | 125 | 7 | Improper 106 |
| 125 | 16 | 125 | 22 | Improper 106 |
| 162 | 19 | 162 | 23 | Leading |
| 162 | 24 | 163 | 5 | Leading |
| 166 | 9 | 166 | 25 | Hearsay. Speculation. |
| 166 | 27 | 167 | 4 | Calls for legal conclusion. Speculation. |
| 175 | 14 | 175 | 20 | Optional completeness. FRE 106 |
| 178 | 23 | 179 | 5 | Hearsay. Speculation. |
| 179 | 20 | 179 | 24 | Hearsay. Speculation. |

8

C.     Humble's Counter- Counter Designations for Linda Halik

| Begin Page | Begin Line | End Page | End Line |
|---|---|---|---|
| 170 | 23 | 171 | 25 |
| 172 | 23 | 173 | 6 |
| 173 | 11 | 173 | 23 |
| 181 | 4 | 182 | 10 |

D.     Humble's Response to Cigna's Objections to Robert Patterson

1.  Cigna Objection to Patterson at 64:11 –65:6: Relevance, Foundation, FRE 401, 402, 403

Q.     So you don't know how MultiPlan gets paid by Cigna for its work?

A.     I do not.

Q.     You don't know if it's on a percentage level of the savings or if it's a flat fee, or how?  The more MultiPlan saves, the more MultiPlan gets paid, right?

A.     Yes.

Q.     Would you consider the service to constitute cost containment for Cigna?

A.     Yes.

Response: MultiPlan gets paid on the percentage of the savings between a provider's billed charges and a charge output from its database or the amount it is able to negotiate with a provider. The greater the difference between the two numbers, the more that MultiPlan gets paid. This evidence goes to the motivation behind the charges MultiPlan offers to providers, and the motivation behind its negotiations, which is untethered to the plan language. The contingency fee motivates MultiPlan to drive and keep amounts as low as possible. This bears on whether those amounts are truly "usual and customary" values, as required by the plans.

Outcome:                Sustained: ____            Overruled: ____

2.  Cigna Objection to Patterson at 89:20-90:21: Relevance, Foundation, FRE 401, 402, 403

> Q.    Mr. Patterson, does that refresh your recollection as to whether or not when Cigna reached out to MultiPlan, MultiPlan understood that it was performing this pricing project for use in a legal action?

> A.    That was going to be my response, is that my name is not any – on any of these e-mails. And so once something comes in to an account team and a request from a client to an account team, that doesn't necessarily mean that the objective of why that is being done is being given to the people who run the report. I mean, I see really no value in that. I would never give it to anybody running the report. I'd just say, here are 455 claims, we need you to run them through at this percentile and using this methodology and get it back to us. So whether or not they had knowledge of it being used in a legal case is beyond my scope of knowledge.

<u>Response</u>: This proves that MultiPlan understood that it was performing a task for Cigna in relation to this litigation, and for use in responding to Humble's expert report. This project was not in the ordinary course of MultiPlan's business and goes to the integrity of the data relied on by Cigna's expert.

<u>Outcome</u>:          Sustained: ____          Overruled: ____

3.  Cigna's Objection to Patterson at 98:20-99:11: Relevance, Foundation, FRE 401, 402, 403

> Q.    Why did MultiPlan perform this project for Cigna?

> A.    It's the same reason we perform any project that we're going to get paid for. You know, it helps our bottom line, right?

> Q.    Did MultiPlan perform this project because it wants to maintain a good business relationship with Cigna?

> A.    Of course that's an important part of it as well. But also the payment amount is an equally important part.

<u>Response</u>: Mr. Patterson testified that MultiPlan would be paid by Cigna, but only after this case settled. MultiPlan's contingency fee bears on its bias and the integrity of the data provided. MultiPlan's desire to placate Cigna and assist it in litigation also goes to the integrity of the data relied on by Cigna and its expert.

<u>Outcome</u>:          Sustained: ____          Overruled: ____

4.  Cigna's Objection to Patterson at 101:11-101:19: Hearsay, Attorney client privilege, FRE 801, 802, 502

> Q.    I guess my question is, how do you – how do you know that MultiPlan hasn't been paid for this project?

A.     I was told that they would be paid after the entire case was settled.

Q.     Okay. Who told you that?

A.     My attorney.

Response: MultiPlan performed Cigna's litigation project in December 2014, and MultiPlan had not gotten paid by November 20, 2014. Mr. Patterson testified that MultiPlan would be paid by Cigna, but only after this case settled. His attorney told him that, presumably after reaching some sort of after-the-fact understanding with Cigna and its counsel. This goes to the integrity of the data and Cigna's and MultiPlan's good faith. Moreover, Cigna's lawyers have no privileged relationship with the witness or MultiPlan and cannot assert privilege.

Outcome:           Sustained: ____           Overruled: ____

5.  Cigna's Objection to Patterson at 134:20-136:9: Hearsay. 801, 802.

Q.     And when were those conference calls please?

A.     Conference calls? When were they?

Q.     If you recall.

A.     Was that your question?

MR. KING: Yes.

THE WITNESS:

A.     I'm not sure the exact dates of them, but they were conference calls that I had with Marjorie Wild, who was in-house counsel as well as Mr. King. And probably two different times.

BY MR. LAHAD:

Q.     Did you speak with anyone other than Ms. Wild at MultiPlan in preparation for your deposition?

A.     Not really in preparation for this deposition, no.

Q.     Did you speak with anyone at Cigna in preparation for your deposition today?

A.     No. Outside of Dena. I was on a conference call with Dena and Mr. King. So. ..

Q.     When was that call?

A.      Yesterday. What was it about?

Q.      Yeah.

MR. KING: That's attorney-client privilege. I was on the call. I was in the meeting.

MR. LAHAD: Yeah, but so was a third party. So was a third party. Third party destroys privilege.

Q.      What did y'all talk about?

A.      Just about the background of the case –

Q.      What specifically?

A.      – from their perspective

Q.      From Cigna's perspective?

A.      Yes.

Q.      So Cigna gave you its interpretation of the case?

A.      They gave me background on the case, yes.

Q.      What did they say?

A.      They said that they were bringing a lawsuit and that you're – you've got a counter lawsuit.

Response: This testimony is not being presented to prove the truth of the matter asserted. Rather, it goes to bias. Cigna's lawyers participated in the preparation of MultiPlan's corporate representative. This evidence is relevant in weighing statements by MultiPlan's witness.

Outcome:        Sustained: ____        Overruled: ____

E.    Humble's Objections to Cigna's Counter Designations for Robert Patterson

| Begin Page | Begin Line | End Page | End Line | Objection |
|---|---|---|---|---|
| 15 | 8 | 15 | 22 | Improper 106 |
| 17 | 11 | 17 | 21 | Improper 106 |

| 35 | 9 | 35 | 19 | Improper 106 |

**F.**   Humble's Objections to Cigna's Designations for Kim Isaacs

| Begin Page | Begin Line | End Page | End Line | Objection |
|---|---|---|---|---|
| 20 | 1 | 20 | 7 | Hearsay |

**G.**   Humble's Objections to Cigna's Designations for Belinda Hazelton

| Begin Page | Begin Line | End Page | End Line | Objection |
|---|---|---|---|---|
| 12 | 18 | 12 | 20 | Hearsay. Document not admitted. |
| 14 | 13 | 14 | 17 | Hearsay. Document not admitted. |
| 31 | 12 | 33 | 8 | 401, 402, 403, Relevance, Hearsay |
| 34 | 24 | 35 | 16 | 401, 402, 403, Relevance |
| 36 | 12 | 37 | 2 | 401, 402, 403, Relevance |
| 37 | 13 | 37 | 19 | 401, 402, 403, Relevance |
| 43 | 23 | 43 | 25 | Hearsay. Document not admitted. |
| 46 | 13 | 47 | 5 | Hearsay. Document not admitted. |
| 49 | 1 | 9 | 8 | Hearsay. Document not admitted. |
| 53 | 22 | 54 | 18 | Hearsay. Document not admitted. |

13

| 73 | 11 | 73 | 19 | 401, 402, 403, Relevance |

H.   Humble's Counter Designations for Belinda Hazelton

| Begin Page | Begin Line | End Page | End Line |
| --- | --- | --- | --- |
| 25 | 12 | 25 | 18 |
| 30 | 11 | 30 | 23 |
| 64 | 20 | 66 | 13 |
| 71 | 6 | 71 | 8 |
| 80 | 15 | 81 | 3 |

14

By: */s/ Chanler A. Langham*
    Brian D. Melton
    Southern District of Texas No. 26016
    State Bar No. 24010620
    bmelton@susmangodfrey.com
    Jonathan J. Ross
    Southern District of Texas No. 18293
    State Bar No. 00791575
    jross@susmangodfrey.com
    Chanler A. Langham
    Southern District of Texas No. 659756
    State Bar No. 24053314
    clangham@susmangodfrey.com
    John P. Lahad
    Southern District of Texas No. 1114929
    State Bar No. 24068095
    jlahad@susmangodfrey.com
    Aimee Vidaurri
    Southern District of Texas No.2781826
    State Bar No. 24098550
    avidaurri@susmangodfrey.com
    SUSMAN GODFREY L.L.P.
    1000 Louisiana Street, Suite 5100
    Houston, Texas 77002
    Telephone:  (713) 651-9366
    Facsimile:  (713) 654-6666

    *ATTORNEYS FOR DEFENDANT*
    *HUMBLE SURGICAL HOSPITAL LLC*

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served on the undersigned counsel via ECF on the 18th day of January, 2016:

> John B. Shely
> Dena Palermo
> Brian Pidcock
> **ANDREWS KURTH LLP**
> 600 Travis Street, Suite 4200
> Houston, Texas 77002
> (713) 220-4152
> (713) 238-7206 fax
>
> *Attorneys for Plaintiffs*

*/s/ Chanler A. Langham*

4070369v1/014796