IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONNECTICUT GENERAL LIFE | § | |
| INSURANCE COMPANY AND | § | |
| CIGNA HEALTH AND LIFE | § | |
| INSURANCE COMPANY | § | |
| | § | JURY DEMANDED |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.:  4:13-CV-3291 |
| | § | |
| HUMBLE SURGICAL HOSPITAL, LLC | § | |
| | § | |
| Defendant. | § | |

HUMBLE SURGICAL HOSPITAL, LLC'S
<u>MOTION FOR ATTORNEY'S FEES</u>

## <u>Table Of Contents</u>

I.  Background ...............................................................................................................1

II.  Legal Standard .........................................................................................................2

III.  Humble Is Entitled to Attorney's Fees...................................................................3

    A.  Humble Succeeded On The Merits ...............................................................3

    B.  Humble Is Entitled to Attorney's Fees Under the *Bowen* Factors ...........6

        1.  Cigna's Significant Culpability and Bad Faith .............................6

        2.  Cigna Can Easily Satisfy An Attorney's Fees Award ...............8

        3.  Awarding Attorney's Fees Would Deter Other Persons Acting Under Similar Circumstances ..........................................8

        4.  Humble's Case Benefits ERISA Participants ...............................9

        5.  Cigna's Position Lacked Merit ....................................................10

IV.  Humble Is Entitled to Its Lodestar As Reasonable Fees....................................10

    A.  Humble's Lodestar.......................................................................................11

    B.  The Applicable *Johnson* Factors Demonstrate That Humble's Lodestar is Reasonable .........................................................12

        1.  This Litigation Required Significant Time and Labor................12

        2.  This Litigation Presented Novel and Difficult Questions..........13

        3.  Humble's Lawyers are Skilled Litigators .................................13

        4.  Humble's Lawyers Were Precluded From Working on Other Matters ..........................................................14

        5.  The Customary Fee and Whether It Is Contingent ...................14

        6.  Awards In Similar Cases..............................................................15

V.  Conclusion ..............................................................................................................16

i

## <u>Table of Authorities</u>

<u>Cases</u>

*1 Lincoln Fin. Co. v. Metro. Life Ins. Co.*,
    428 Fed. App'x 394 (5th Cir. 2011) ................................................................. 3

*Conner v. Mid South Insurance Agency, Inc.*,
    943 F. Supp. 663 (W.D. La. 1996)................................................................. 13

*Dial v. NFL Player Supp. Disability Plan*,
    174 F.3d 606 (5th Cir. 1999) ........................................................................ 6

*Freedman v. Texaco Marine Servs., Inc.*,
    882 F.Supp. 580 (E.D. Tex. 1995)....................................................... 6, 8, 10

*Hardt v. Reliance Standard Life Ins. Co.*,
    130 S. Ct. 2149 (2010)............................................................................. 2, 3

*Hollowell v. Orleans Regional Hospital LLC*,
    217 F.3d 379 (5th Cir. 2000) ...................................................................... 15

*Humphrey v. United Way of Texas Gulf Coast*,
    2008 WL 5070057 (S.D. Tex. Nov. 20, 2008) .................................. 6, 8, 13, 15

*Iron Workers Local No. 272 v. Bowen*,
    624 F.2d 1255 (5th Cir. 1980) ...................................................................... 2

*Johnson v. Big Lots Stores, Inc.*,
    639 F. Supp. 2d 696 (E.D. La. 2009) ........................................................... 15

*Johnson v. Georgia Highway Express*,
    488 F.2d 714 (5th Cir. 1974) ............................................................. 3, 12, 14

*Johnson v. Prudential Ins. Co. of Am.*,
    2008 WL 901526 (S.D. Tex. Mar. 31, 2008).................................................. 6

*Lewallen v. City of Beaumont*,
    2009 WL 2175637 (E.D. Tex. July 20, 2009) ............................................... 15

*LifeCare Management Services LLC v. Insurance Management Administrators, Inc.*,
    703 F.3d 835 (5th Cir. 2013) ........................................................................ 2

*Martin v. Metropolitan Life Ins. Co.*,
    2000 WL 554199 (N.D. Tex. May 4, 2000) .................................................... 8

*Migis v. Pearle Vision, Inc.*,
    135 F.3d 1041 (5th Cir. 1998) .................................................................... 12

*Miles-Hickman v. David Powers Homes, Inc.*,
   2009 WL 995632 (S.D. Tex. Apr. 14, 2009) .................................................................. 15

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*,
   781 F.3d 182 (5th Cir. 2015) .......................................................................................... 4

*Phillips v. Maritime Association, I.L.A. Local Pension Plan*,
   198 F. Supp. 2d 838 (E.D. Tex. 2002) ................................................................... passim

*Shipes v. Trinity Indus.*,
   987 F.3d 311 (5th Cir. 1993) ........................................................................................ 14

*St. Luke's Episcopal Hosp. v. Acordia Nat.*,
   2008 WL 686204 (S.D. Tex. Mar. 7, 2008) .................................................................... 3

*Taylor v. Washington Mutual, Inc.*,
   2011 WL 98838 (W.D. La. Jan. 12, 2011) ............................................................. 7, 8, 9

*Unum Life Ins. Co. of Am. v. Brandon*,
   2000 WL 175363 (N.D. Tex. Feb. 14, 2000) .................................................................. 7

*Wegner v. Standard Ins. Co.*,
   129 F.3d 814 (5th Cir. 1997) ..................................................................................... 3, 6

Statutes

29 U.S.C. § 1132(g)(1) ........................................................................................... 1, 2, 3

Rules

FRCP 54(d) ............................................................................................................... 1

4196030v1/014796

Pursuant to the Court's March 16, 2016 Order, Doc. 245, Humble submits this Motion for Attorney's Fees under 29 U.S.C. § 1132(g)(1) of ERISA. At trial, Humble proved that Cigna's interpretation of the relevant ERISA plan language was legally incorrect and that its handling of Humble's claims constituted an abuse of discretion. Humble incurred significant attorney's fees in establishing Cigna's arbitrary and capricious behavior, and this Court should exercise its discretion and award Humble its reasonable attorney's fees of $2,743,790.25.[1]

## I.    Background

Cigna filed this lawsuit on November 7, 2013, asserting causes of action for money had and received, common law fraud, negligent misrepresentation, unjust enrichment, injunctive relief, declaratory judgment under state law, and equitable relief under ERISA. Doc. 1. On December 4, 2013, Humble answered, denying Cigna's factual and legal allegations, and asserting counterclaims against Cigna for nonpayment, underpayment, and delayed payment of claims for Humble services provided to Cigna's beneficiaries. Doc. 10. Humble sought relief under ERISA §§ 502 and 503, including enforcement of substantive benefit rights, enforcement of ERISA's procedural requirements, breach of fiduciary duty, and failure to provide a full review of claims. *Id*.

Between January 11, 2016 and January 21, 2016, this Court presided over a bench trial related to the ERISA claims, and heard closing arguments on February 3, 2016. On March 16, 2016, this Court issued an order stating that "in order to bring the ERISA aspects of this case to conclusion, both the plaintiffs and defendants should file the appropriate motions for ERISA attorney's fees, if any may be awarded…." Doc. 245.

---

[1] The Court has not asked for briefing regarding recovery of prejudgment and postjudgment interest and costs under FRCP 54(d). Humble respectfully requests and reserves the opportunity to seek applicable interest and costs.

1

The Court has not yet ruled on the merits. Humble, however, presumes that the Court will rule in Humble's favor on its claims for unpaid benefits, finding that Cigna's plan interpretation is not legally correct and that Cigna abused its discretion by ignoring the plan language, manufacturing a reimbursement methodology divorced from the plan language, and putting its interests ahead those of plan participants and their beneficiaries and assignees.

## II.   <u>Legal Standard</u>

ERISA provides that "[i]n any action under this subchapter … by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In *LifeCare Management Services LLC v. Insurance Management Administrators, Inc.*, 703 F.3d 835, 846 (5th Cir. 2013), the Fifth Circuit reiterated that reasonable attorney's fees are available "so long as the party has achieved 'some degree of success on the merits.'" (Quoting *Hardt v. Reliance Standard Life Ins. Co*., 130 S. Ct. 2149, 2151 (2010)). This success-on-the-merits threshold is met "if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Id*. (quoting *Hardt*).

Before the Supreme Court's decision in *Hardt*, courts in this circuit applied the five-factor test from *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980) to determine whether they should award fees. The so-called *Bowen* factors are: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney's fees; (3) whether a fee award would deter other persons acting under similar circumstances: (4) whether the party seeking fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Id*. In *Hardt*, however, the Supreme Court

2

clarified that the *Bowen* factors are discretionary: "Because these five factors bear no obvious relation to § 1132(g)(1)'s text or our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section." "130 S. Ct. at 2158; *see also 1 Lincoln Fin. Co. v. Metro. Life Ins. Co*., 428 Fed. App'x 394, 396 (5th Cir. 2011) ("A district court may consider the five factors, but *Hardt* does not mandate consideration.").

Once the court determines that a party is entitled to attorney's fees, the lodestar method is then used to determine the amount to be awarded. *Wegner v. Standard Ins. Co*., 129 F.3d 814, 822 (5th Cir. 1997); *see also St. Luke's Episcopal Hosp. v. Acordia Nat*., 2008 WL 686204, at *6 (S.D. Tex. Mar. 7, 2008) (citing Wegner). Under the lodestar method, the district court determines the reasonable number of hours expended on the litigation and the reasonable hourly rates of the participating attorneys, multiplying the figures to obtain the lodestar. *Wegner*, 129 F.3d at 822. The lodestar is then adjusted up or down, depending on the circumstances of the case as viewed through the factors set forth in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717-719 (5th Cir. 1974).

## III.    Humble Is Entitled to Attorney's Fees

By every measure, Humble achieved "success on the merits" of this case, and the *Bowen* factors confirm that Humble is entitled to fees.

### A.    Humble Succeeded On The Merits

Cigna initiated this lawsuit in November 2013, brashly alleging various kinds of malfeasance by Humble. Cigna lobbied allegations of "exorbitant" and "excessive" charges for services, improper kickbacks, and rampant violations of federal and state law, and demanded millions of dollars in damages for alleged overpayments. Humble counterclaimed, seeking reimbursement for over $30 million dollars' worth of unpaid claims.

The foundation of Cigna's case was a tortured, fabricated and (ultimately) legally incorrect interpretation of exclusionary plan language. Cigna took the position that ordinary plan members who read that "payment for the following is specifically excluded from this plan: ... charges for which you are not obligated to pay or for which you are not billed," would understand that they *have no insurance coverage* if they are not charged for coinsurance. Cigna stuck with this pretext even after the Fifth Circuit, in *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 196 (5th Cir. 2015), bluntly stated that "there are strong arguments that Cigna's plan interpretation is not legally correct."

At trial, Humble eviscerated Cigna's case. Humble proved that Cigna's plan interpretation—manifested in its so-called "fee-forgiving" protocol—was legally and factually incorrect. Humble showed that plan participants and even Cigna's own employees did not understand the relevant exclusionary language. *See* Humble's Findings of Fact and Conclusions of Law, Doc. 241, at ¶¶ 15, 17, 18. Humble demonstrated how Cigna had to modify the plan language to make it compatible with its fee-forgiving protocol. *Id.* at ¶¶ 21-22.

The undeniable proof that Cigna's "fee forgiving" investigation was and has always been pretext came in through the words of the Director of Cigna's Special Investigations Unit ("SIU"), Kenneth Faustine, who sent an email in November 2010—three months after Humble opened its doors—challenging his counterparts in other Cigna departments to deny high-dollar claims submitted by Humble. *Id.* at ¶ 28. Mr. Faustine said nothing about waiving patient responsibility or needing evidence that the provider was collecting from the patient. In fact, Mr. Faustine conceded that there was no fraud. *Id.* His email and the other emails in the chain are directed to finding *some* reason to deny high-dollar claims.

Humble also proved that Cigna flagged Humble as an alleged fee-forgiver based on a threadbare record of hearsay and purposefully deficient information. In particular, Cigna's SIU intentionally failed to investigate or account for: (1) whether and how much the patient paid towards their deductible and out-of-pocket maximums to other providers, (2) whether the patient had met his or her deductible for the year, (3) whether the patient had reached his or her out-of-pocket maximums for the year, (4) whether Humble had billed the patient, (5) whether Humble, in fact, had collected anything from the patients, (6) Humble's stated policies regarding billing and collections, (7) whether the patient executed an agreement accepting ultimate financial responsibility for accounts with Humble whether paid by insurance or not, and (8) undisputed facts that patients did in fact pay up front. *See, e.g.*, Doc. 241 (Humble's Findings of Fact and Conclusions of Law) at ¶¶ 26–38, 40–46, 48–49. Cigna's sham investigation was itself an abuse of discretion, and Cigna further compounded that abuse by adopting an approach inconsistent with the plan language and plan member's interests. By the end of trial, Cigna could not establish that it was entitled to any relief whatsoever.[2]

By destroying Cigna's case, Humble proved its own. Cigna's sole justification for refusing to pay was its plan interpretation. Without it, Cigna had no leg to stand on. And, other than trying to stymie Humble's attempts to obtain discovery from third-party MultiPlan and feeble, last-minute attempts to exclude her testimony, Cigna did little, if anything, to rebut Ms. Kohler's conservative, claim-by-claim assessment. Indeed, Ms. Kohler's benefits-due model is the best approximation of what would have happened had Cigna not tried to avoid its payment obligations by imposing its manufactured "fee-forgiver" protocol on Humble.

---

[2] This is not to mention that Cigna's only ERISA claim, one for so-called equitable relief, is improper and unavailable under Supreme Court and Fifth Circuit law, as explained in Humble's Rule 52(c) Motion for Judgment as a Matter of Law. Doc. 242.

In short, this Court can fairly call the outcome of Humble's case against Cigna as "some success on the merits without conducting a lengthy inquiry into the question" of whether Humble's success was substantial or occurred on a central issue. Accordingly, Humble is entitled to reasonable attorney's fees.

B.     Humble Is Entitled to Attorney's Fees Under the *Bowen* Factors

While their use is discretionary, the *Bowen* factors strongly compel awarding attorney's fees to Humble.

1.     Cigna's Significant Culpability and Bad Faith

A party's conduct may rise to the level of bad faith for egregious conduct, such as the pursuit of frivolous claims. *See, e.g., Freedman v. Texaco Marine Servs., Inc.*, 882 F.Supp. 580, 584–585 (E.D. Tex. 1995) (holding that defendant's "indefensible" interpretation of plan could possibly constitute bad faith). A party may still be culpable for conduct that does not rise to the level of bad faith. *See, e.g., Dial v. NFL Player Supp. Disability Plan*, 174 F.3d 606, 614 (5th Cir. 1999) ("[A]lthough the Court stops short of accusing [defendant] of acting in bad faith, [defendant] is clearly responsible for its erroneous interpretation that was in direct conflict with the plain meaning of the settlement agreement."); *Wegner*, 129 F.3d at 821 (affirming district court's holding that, although not bad faith, defendant's frivolous justification weighed in favor of awarding attorney's fees). "Culpable conduct includes conduct that is blameworthy, censurable, careless, at fault, or involves the breach of a legal duty, although a party is not culpable merely because it takes a position that did not prevail in litigation." *Johnson v. Prudential Ins. Co. of Am.*, 2008 WL 901526, at *8 (S.D. Tex. Mar. 31, 2008).

In *Freedman*, the district court concluded that the first *Bowen* factor supported awarding fees because the defendants adopted an "indefensible" interpretation of the Texaco Plan "that was facially inconsistent with the clear mandate" of the Plan. 882 F. Supp. at 584.  Likewise, in

6

*Humphrey v. United Way of Texas Gulf Coast*, 2008 WL 5070057, at *4 (S.D. Tex. Nov. 20, 2008), the district court found that the first factor weighed in favor of awarding fees because "the Defendants abused their discretion in calculating the class members' ERP benefits in a manner directly in conflict with the plain language of the 96 Plan." And, in *Taylor v. Washington Mutual, Inc.*, 2011 WL 98838, at *9 (W.D. La. Jan. 12, 2011), the district court ruled that this factor favored awarding fees because the defendant "abdicated its responsibility to enforce the plan as written and is culpable for Taylor incurring significant legal expense and delay in recovering his rightful payment." The court added that it considered the "continued defense of such a self-evidently erroneous decision to be almost frivolous" and that the defendants should "bear the expense of their stubbornness." *Id.*; *see also Unum Life Ins. Co. of Am. v. Brandon*, 2000 WL 175363, at *3 (N.D. Tex. Feb. 14, 2000) (finding first factor supported awarding fees because defenses to liability were "baseless").

Cigna's culpability in this case justifies awarding fees. The entirety of Cigna's dealings with Humble constituted an unapologetic and blameworthy abuse of discretion. Rather than reimburse claims as set forth in the plans, Cigna concocted an indefensible plan interpretation and used it as a means to deny claims and bring a lawsuit. Cigna's own witnesses admitted that its plan interpretation is inconsistent with, unsupported by, and not outlined in the plan language. *See, e.g.*, Doc. 241 (Humble's Findings of Fact and Conclusions of Law) at ¶¶ 40–46. To get paid, Humble had to refute Cigna's persistent plan interpretation, which led Humble to incur significant legal expenses.

Cigna's culpability is compounded by its bad faith, which includes (a) misrepresenting the availability of benefits to its plan members and to Humble, (b) routinely giving Humble the run-around on submitted claims, and (c) intentionally failing to determine what the plan member

actually paid (in the absence of a responsive "survey") before summarily denying the claim. Doc. 241 at ¶¶ 26, 41, 159. This behavior underscores how Cigna handled Humble and its patients, and alone justifies awarding attorney's fees.

### 2. Cigna Can Easily Satisfy An Attorney's Fees Award

In its most recent Form 10-K filing with the Securities and Exchange Commission, Cigna disclosed that "as of December 31, 2015, our [Cigna's] consolidated shareholders' equity was $12.0 billion, assets were $57.1 billion and we reported revenues of $37.9 billion for 2015." Form 10-K, Cigna Corporation, at 1 (Feb. 4, 2016), available at http://www.cigna.com/about-us/investors/quarterly-reports-and-sec-filings/. More important, Cigna's Form 10-K states that it has "pre-tax reserves as of December 31, 2015 of $190 million ($125 million after-tax)" for its legal matters. *Id*.at 113. Cigna easily can satisfy the attorney's fees award Humble seeks in this case. *See Martin v. Metropolitan Life Ins. Co.*, 2000 WL 554199, at *3 (N.D. Tex. May 4, 2000) (finding this factor favored fees award because "MetLife is a major insurance company that is able to pay attorney's fees and costs").

### 3. Awarding Attorney's Fees Would Deter Other Persons Acting Under Similar Circumstances

In *Freedman*, the court ruled that "[a]warding attorney's fees in this case may deter future corporate defendants from adopting, as their initial position, an interpretation of a pension plan that is wholly unsupported by the text of the plan." 882 F. Supp. at 585. In *Humphrey*, the court likewise found that awarding attorney's fees "would deter plan sponsors and administrators from denying benefits in direct contradiction to the plain language of the plan." 2008 WL 5070057, at *4; *see also Taylor*, 2011 WL 98838, at *10 (finding an award "worthwhile to deter administrators from acting arbitrarily in the future").

This reasoning applies with even greater force in this case. Awarding attorney's fees would have significant deterrent benefit *on Cigna itself* as well as future corporate defendants plan administrators generally. Cigna repeatedly has used its "fee-forgiving" protocol and faulty plan interpretation as both a sword and a shield against healthcare providers like Humble, frequently bringing claims and counterclaims for alleged overpayments. *See, e.g., North Cypress Med. Ctr. Operating Co. v. Cigna*, Case No. 4:09-cv-2556 (S.D. Tex.); *Cigna v. True View Surgery Center One*, Case No. 3:14-cv-1859 (D. Conn); *Cigna v. Grand Avenue Surgical Center*, Case No. 13-C-4331 (N.D. Ill.); *Arapahoe Surgery Center v. Cigna*, Case No. 13-cv-3422 (D. Colo.). There likely are multiple other healthcare providers facing the same arbitrary and capricious denial of claims by Cigna. An order refuting Cigna's plan interpretation in this case and awarding attorney's fees against Cigna would curb Cigna's improper antics nationwide.

### 4.  Humble's Case Benefits ERISA Participants

This factor favors awarding fees when the party seeking fees "is fighting on behalf of a larger group of beneficiaries, or to resolve any significant legal question regarding ERISA itself." *Taylor*, 2011 WL 98838, at *10. In *Phillips v. Maritime Association, I.L.A. Local Pension Plan*, 198 F. Supp. 2d 838, 845 (E.D. Tex. 2002), the district court found this factor favored awarding attorney's fees because "Plaintiffs in this case sought not only to recover amounts due to them individually but also to force the Plan to adopt proper procedures…."

In this case, Humble seeks to recover amounts due to it, to be sure, but it also brought suit to refute Cigna's interpretation of the exclusionary language and undermine the basis for Cigna's fee-forgiving protocol. As discussed above, Cigna relies on identical exclusionary language to avoid paying claims submitted by multiple participants through their healthcare providers. Any success here would be shared with hundreds of other Cigna plan participants and providers now and in the future. Additionally, other administrators relying on similar exclusionary language to

deny claims as "fee-forgiving" may also recognize the imprudence of their positions and change course, avoiding the issues that have arisen in this case.

5.  Cigna's Position Lacked Merit

This factor is not close and weighs heavily in favor of awarding fees. At trial, Cigna offered no evidence and elicited no testimony that would tend to show that its actions were proper. Cigna made no effort to show that its plan interpretation was legally correct or rebut any of Humble's witnesses or arguments regarding its abuse of discretion. As Cigna views it, it can process claims and interpret plans however it wants with impunity. The only legal support Cigna proffers for its approach is a Seventh Circuit case from 1991 that was later limited to its unique facts *by the Seventh Circuit*. And, rather than confront Humble's legal and factual arguments, Cigna tried to distract the Court with sideshows involving use agreements, baseless allegations of kickbacks, and repeated bills of proof. Humble prevailed on all of the issues at trial, and Cigna, rather than Humble, should bear the burden of this litigation.

In summary, the facts and circumstances of this case clearly support an award of attorney's fees. Without such an award, this court would implicitly be condoning Cigna's unreasonable actions. *Phillips*, 198 F. Supp. 2d at 846 (citing *Freedman*, 882 F. Supp. at 585).

**IV.  Humble Is Entitled to Its Lodestar As Reasonable Fees**

Humble seeks attorney's fees of $2,743,790.25. This lodestar is the number of hours Humble's counsel, Susman Godfrey and Pierce & O'Neill, expended on the litigation multiplied by the hourly rates of the individual participating attorneys. "The lodestar figure is a presumptively reasonable fee." *Phillips*, 198 F. Supp. at 846. No upward or downward adjustment under the *Johnson* factors is necessary.

A.    Humble's Lodestar

Humble retained Susman Godfrey L.L.P. in December 2013 as counsel in this case and as counsel in a similar litigation pending against Aetna. *See* Exhibit 1 (Melton Decl.) at ¶ 3. Susman Godfrey prepared and filed Humble's answer, responded to a near-frivolous motion to transfer the case to Judge Hughes, successfully moved for judgment on the pleadings, and prosecuted the case as required.

In July 2014, the firm of Pierce & O'Neill replaced Susman Godfrey as counsel for Humble after Susman Godfrey learned of a potential conflict in its representation of Humble in the Aetna matter. *Id*. At that time, for financial reasons, Humble made the decision to have only one firm represent them in both Andrews Kurth-filed cases. *Id*. Susman Godfrey returned as counsel for Humble in April 2015, and Pierce & O'Neill withdrew. Susman Godfrey finished discovery, prepared the case for a jury trial, and once the Court bifurcated the jury issues, presented Humble's case to the bench.

Within the Declaration of Brian Melton (Exhibit 1) is a chart detailing the Susman Godfrey timekeepers who have worked more than 100 hours on this matter, the amount of total time spent on this matter per timekeeper, the average hourly rate for that time, and the total fees per timekeeper. This chart was prepared from contemporaneous daily time records regularly prepared and maintained by Susman Godfrey, and shows that eight Susman Godfrey attorneys and paralegals dedicated 4,828.6 hours to this matter for a total of $2,253,504.25 in fees.[3]

The Declaration of Jack O'Neill (Exhibit 2) contains a similar chart detailing the Peirce & O'Neill timekeepers who have worked on this matter, the amount of time spent on this matter,

---

[3] There were several Susman Godfrey timekeepers who assisted in this matter, but did not bill more than a few hours. Melton Decl. ¶ 4. All told, those timekeepers expended approximately $82,000 worth of time. *Id*. Humble does not seek those hours as part of Susman Godfrey's lodestar.

the average hourly rate for that time, and the total fees for that timekeeper. This chart was prepared from contemporaneous daily time records regularly prepared and maintained by Pierce & O'Neill, and shows that Peirce & O'Neill attorneys and paralegals dedicated 1,687.8 hours to this matter for a total of $490,286.00 in fees.

These records confirm that Humble's lodestar is $2,743,790.25.

B.     The Applicable *Johnson* Factors Demonstrate That Humble's Lodestar is Reasonable

This Court may adjust the lodestar figure up or down based on the factors set forth in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717-719 (5th Cir. 1974).  The factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  In *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998), the Fifth Circuit explained that "of the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel."

In this case, no adjustment is necessary.

1.     This Litigation Required Significant Time and Labor

Cigna initiated this litigation in November 2013, describing trumped up allegations of excessive billing, fraud, and kickbacks. Humble counterclaimed, seeking recovery of unpaid benefits for nearly 600 individual medical claims. Not only did Humble have to defend itself

from Cigna's baseless charges, Humble had to prove up its own case. Discovery was extensive and hard-fought, lasted nearly two years, and involved substantial document production, several depositions, and numerous expert reports. Humble was forced to file multiple motions to compel, including (1) a motion to compel depositions after Cigna reneged on its agreement to produce its experts for deposition, and (2) a motion to compel third-party MultiPlan—relief Cigna objected to *only after* the parties learned that Judge Wood in New York was inclined to grant Humble's Motion. In light of the nature of this case, exacerbated by Cigna's behavior, the time counsel spent preparing this case for trial is more than reasonable.

2.   This Litigation Presented Novel and Difficult Questions

This case presented novel and difficult ERISA questions, including whether Cigna's interpretation of the plan was legally correct, whether Cigna abused its discretion, and whether Cigna's equitable claim is viable under ERISA and Supreme Court law.  These questions arose before a backdrop of the usual evidentiary and discovery challenges attendant with a complex commercial case, and required a thorough analysis of applicable precedent. Humble's lodestar is appropriate considering the complexity of the case. *Phillips*, 198 F. Supp. 2d at 847 (finding no modification under this *Johnson* factor for a case involving "complex questions under ERISA"); *see also Humphrey*, 2008 WL 5070057, at *7 (finding that the lodestar adequately "reflect[ed] the novelty and complexity of the case").

3.   Humble's Lawyers are Skilled Litigators

In *Conner v. Mid South Insurance Agency, Inc*., 943 F. Supp. 663, 669 (W.D. La. 1996), the district court described this factor, stating:

> Like the world-class figure skater who "effortlessly" lands triple axels, a well-prepared and highly skilled attorney can make difficult legal problems seem easy. While some tasks require almost the same amount of time regardless of the attorney's overall ability, at the margin, an attorney with greater expertise in a

13

> particular area will have a greater likelihood of success though he bills the same number of hours. That greater likelihood of success can make a difference both to the client's ability to vindicate his ERISA rights as well as developing ERISA law.

Similarly, in *Phillips*, the district court found that the plaintiffs' lawyers were "skilled litigators with extensive experience in complex litigation" and that "their expertise was necessary to adequately pursue plaintiffs' claims." 198 F. Supp. 2d at 847 (citing *Conner*).

Here, the experience and skill of Humble's counsel was necessary to adequately pursue Humble's claims against an entity with limitless resources and an incentive to craft ERISA law to suit its business and economic needs. This experience and skill ensured that only the necessary time and effort was spent on the litigation, and that at trial, Humble presented its case efficiently and in accordance with the parameters set forth by this Court. Humble's requested lodestar is reasonable compensation.

### 4.    Humble's Lawyers Were Precluded From Working on Other Matters

This factor refers to both available business that is foreclosed and the fact that counsel cannot work on other matters once the employment is accepted. *Johnson*, 488 F.2d at 718. By representing Humble in this matter, Humble's lawyers were forced to forego other work or set that work aside in order to execute our responsibilities in this case. Melton Decl. at ¶ 14; O'Neill Decl. at ¶ 15. The Fifth Circuit has held that this factor is generally subsumed in the lodestar, making adjustment under this factor unnecessary. *Shipes v. Trinity Indus.*, 987 F.3d 311, 322 (5th Cir. 1993).

### 5.    The Customary Fee and Whether It Is Contingent

Susman Godfrey currently represents Humble pursuant to a contingent fee. Melton Decl. at ¶ 14. In *Phillips*, the district court explained that "reimbursing counsel from plaintiffs' monetary recovery would both diminish the recovery plaintiffs were awarded and punish counsel

14

for the extensive work they put into the case." 198 F. Supp. 2d at 848. The district court thus concluded that "the fact that counsel had a contingent fee arrangement with plaintiffs does not warrant any reduction in the fee award requested." *Id*. In this case, a ruling on the merits compensates Humble for services it provided to Cigna-administered beneficiaries, but does not account for the costs incurred in recovering those wrongfully-denied benefits.

The district court in *Phillips* also noted that "plaintiffs' counsel has advanced all of the costs of this litigation with no guarantee that those funds would ever be reimbursed." *Id*. Moreover, in *Hollowell v. Orleans Regional Hospital LLC*, 217 F.3d 379, 392 (5th Cir. 2000), the Fifth Circuit declined to adopt a rule of proportionality between damages and attorney's fees. For these reasons, no adjustment is warranted under this *Johnson* factor.

6.   <u>Awards In Similar Cases</u>

The facts in this case are unique, but courts routinely approve such awards in ERISA actions. In *Humphrey*, Judge Harmon awarded over $825,000 in attorney's fees. 2008 WL 5070057, at *8. In *Phillips*, the district court awarded over $283,809 in attorney's fees. 198 F. Supp. 2d 838. In some cases, the fees awarded exceed the recovery. In *Lewallen v. City of Beaumont*, 2009 WL 2175637, at *1 (E.D. Tex. July 20, 2009), for example, the district court awarded over $428,000 in attorney's fees on the plaintiff's recovery of $75,000 in past and future compensatory damages. In *Miles-Hickman v. David Powers Homes, Inc*., 2009 WL 995632, at *7 (S.D. Tex. Apr. 14, 2009), Judge Atlas awarded over $59,000 in attorney's fees for a recovery of $23,775. *See also Johnson v. Big Lots Stores, Inc*., 639 F. Supp. 2d 696, 700 (E.D. La. 2009) (awarding fees of over $290,000 for recovery under FLSA of $126,000 in unpaid overtime).

The hourly rates charged by Humble's counsel are also consistent with hourly rates of peer firms and lawyers in this region. In a disclosure submitted as part of a fee request by

15

Andrews Kurth, Cigna's law firm in this case, in a Delaware bankruptcy case for Hercules Offshore, Inc., the law firm summarized its billing rates for that matter as follows.

| Category of Timekeeper | Blended Rate | | |
| --- | --- | --- | --- |
| | (Column A) Billed by AK in Hercules Chapter 11 Case from August 13, 2015 to November 6, 2015 | (Column B) Billed by AK Houston and DC Offices to All Clients from November 1, 2014 to October 31, 2015† | (Column C) Billed by AK domestic offices to Hercules from November 1, 2014 to August 13, 2015 |
| Partner | $905 | $655 | $838 |
| Associate | $322 | $383 | $428 |
| Paralegal | $352 | $219 | $346 |
| Aggregated | $625 | $514 | $725 |

*In re Hercules Offshore, Inc.*, Case No. 15-11685 (D. Del. Dec. 9, 2015), ECF No. 241. Column C shows Andrews Kurth's domestic billing rates for the "Hercules matters during the period leading up to the bankruptcy." *Id*. Andrews Kurth's lawyers billed their time at $428/hour for associates and $838/hour for partners on this matter for Hercules. This ERISA litigation differs from a corporate or bankruptcy matter, to be sure, but it demonstrates that Humble's lawyers' rates are within reason.

**V.      Conclusion**

Based on the foregoing, Humble respectfully requests that this Court award its attorney's fees of $2,743,790.25.

Dated: March 24, 2016                    Respectfully submitted,

By: */s/ John Lahad*
    Brian D. Melton
    Southern District of Texas No. 26016
    State Bar No. 24010620
    bmelton@susmangodfrey.com
    Jonathan J. Ross
    Southern District of Texas No. 18293
    State Bar No. 00791575
    jross@susmangodfrey.com
    Chanler A. Langham
    Southern District of Texas No. 659756

State Bar No. 24053314
clangham@susmangodfrey.com
John P. Lahad
Southern District of Texas No. 1114929
State Bar No. 24068095
jlahad@susmangodfrey.com
Aimee Vidaurri
Southern District of Texas No. 2781826
State Bar No. 24098550
avidaurri@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666

*ATTORNEYS FOR DEFENDANT*
*HUMBLE SURGICAL HOSPITAL LLC*

17

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing document has been served on the undersigned counsel via ECF on the 24th day of March, 2016:

John B. Shely
Brian Pidcock
Laura Trenaman
**ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, Texas 77002
(713) 220-4152
(713) 238-7206 fax

*Attorneys for Plaintiffs*

/s/ John Lahad

18