## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

CONNECTICUT GENERAL LIFE §
INSURANCE COMPANY and §
CIGNA HEALTH AND §
LIFE INSURANCE COMPANY, §
§
    Plaintiffs, §          **JURY DEMANDED**
§
vs. §    **CIVIL ACTION NO. 4:13-cv-3291**
§
HUMBLE SURGICAL HOSPITAL, LLC, §
§
    Defendant. §

---

## CIGNA'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

---

**ANDREWS KURTH LLP**

**John B. Shely**
State Bar No. 18215300
Southern District No. 7544
**Laura Trenaman**
State Bar No. 00798553
Southern District No. 23815
**Brian C. Pidcock**
State Bar No. 24074895
Southern District No. 1654553
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4105 (JBS)
(713) 220-4783 (LT)
(713) 220-3916 (BCP)
jshely@andrewskurth.com
ltrenaman@andrewskurth.com
brianpidcock@andrewskurth.com

**ATTORNEYS FOR PLAINTIFFS
CONNECTICUT GENERAL LIFE
INSURANCE COMPANY and
CIGNA HEALTH AND LIFE INSURANCE
COMPANY**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................1

II.   BACKGROUND ............................................................................................................3

    A.    Cigna's Investigation of Humble.................................................................3

    B.    The Lawsuit ...................................................................................................5

    C.    Case Scheduling............................................................................................6

    D.    Other Pretrial Motions and Filings .............................................................7

    E.    Mediation ....................................................................................................11

    F.    Trial...............................................................................................................11

III.  AUTHORITIES & ARGUMENT ...................................................................................12

    A.    Cigna is Entitled to an Award of Attorneys' Fees and Costs............................12

    B.    Cigna's Requested Attorneys' Fees are Reasonable .................................14

        1.    Reasonable number of hours ....................................................16

        2.    Reasonable rates........................................................................19

        3.    Loadstar fee amount..................................................................21

        4.    The Johnson factors support an award for the lodestar
            amount................................................................................................22

            i.    Factors 1, 2, 3, 4, 5, 8 and 9 – subsumed within lodestar ............22

            ii.   Factors 6, 7, 10 and 11 – neutral ....................................................23

            iii.  Factor 12 – supports initial lodestar amount ................................23

    C.    Cigna's requested costs are appropriate ....................................................23

IV.   CONCLUSION............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*1 Lincoln Fin. Co. v. Metro. Life Ins. Co.,*
 428 F. App'x 394 (5th Cir. 2011) .................................................................................... 13

*Chin v. DaimlerChrysler Corp.,*
 520 F. Supp. 2d 589 (D.N.J. 2007) .................................................................................. 20

*Citizens Ins. Co. of America v. KIC Chemicals, Inc.,*
 2007 WL 2902213, 2007 U.S. Dist. LEXIS 73201 (D. Mich. Oct. 1, 2007) ............................ 20

*Cook Children's Med. Ctr v. New England PPO Plan of Gen. Consol. Mgmt., Inc.,*
 491 F.3d 266 (5th Cir. 2007), *cert. denied*, 552 U.S. 1180, 128 S. Ct. 1223 (2008) .................... 23

*Desert Rock Energy Co., LLC v. U.S. E.P.A.,*
 No. 08-872, 2009 WL 3247312 (S.D. Tex. Sept. 29, 2009)................................................20, 21

*Entm't Software Ass'n v. Granholm,*
 No. 05–73634, 2006 U.S. Dist. LEXIS 96429 (E.D. Mich. Nov. 30, 2006) ............................ 20

*Hardt v. Reliance Standard Life Ins. Co.,*
 560 U.S. 242 (2010) ...................................................................................................... 13

*Johnson v. Georgia Hwy. Express, Inc.,*
 488 F.2d 714 (5th Cir. 1974) .......................................................................................... 15

*Lain v. UNUM Life Ins. Co. of Am.,*
 279 F.3d 337 (5th Cir. 2002) (overruled on other grounds) .................................................14, 15

*League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.,*
 119 F.3d 1228 (5th Cir. 1997) ........................................................................................ 19

*LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.,*
 703 F.3d 835 (5th Cir. 2013) ................................................................................. 12, 13, 14

*Migis v. Pearle Vision, Inc.,*
 135 F.3d 1041 (5th Cir. 1998) ........................................................................................ 15

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.),*
 586 F. Supp. 2d 732 (S.D. Tex. 2008)............................................................................... 20

*Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air,*
 478 U.S. 546 (1986) ........................................................................................... 15, 21, 22

HOU:3652099.3

*Prospect Energy Corp. v. Dallas Gas Partners, LP*,
    No. 10-1396, 2011 WL 5864292 (S.D. Tex. Nov. 22, 2011) ........................................20

*Riley v. Adm'r of Supersaver 401K Capital Accumulation Plan for Emps. of Participating*
    *AMR Corp. Subsidiaries*,
    209 F.3d 780 (5th Cir. 2000) ........................................13

*Riley v. City of Jackson, Miss.*,
    99 F.3d 757 (5th Cir. 1996) ........................................19

*Rocky Bixby v. KBR, Inc.*,
    No. 9-632 (D. Ore. April 30, 2012), ECF 325........................................20

*Saizan v. Delta Concrete Prods. Co.*,
    448 F.3d 795 (5th Cir. 2006) (*per curiam*)........................................15, 16, 18, 21

*Shipes v. Trinity Indus.*,
    987 F.2d 311 (5th Cir. 1993) ........................................22

*Slipchenko v. Brunel Energy, Inc.*,
    No. 11-1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015)........................................20

*St. Luke's Episcopal Hosp. v. Acordia Nat.*,
    No. 05-1438, 2008 WL 686204 (S.D. Tex. Mar. 7, 2008) ........................................15

*Tollett v. City of Kemah*,
    285 F.3d 357 (5th Cir. 2002) ........................................19

*Wegner v. Standard Ins. Co.*,
    129 F.3d 814 (5th Cir. 1997) ........................................15

**Statutes**

28 U.S.C. § 1920 ........................................23, 24

29 U.S.C. § 1132(g)(1) ........................................12, 23

ERISA § 502(a)(1)(B) ........................................2, 9, 11, 13

ERISA § 502(a)(3) ........................................2, 5, 11, 13

ERISA § 502(c) ........................................2, 11, 13, 14

ERISA § 502(g)(1) ........................................1, 12, 14, 23

HOU:3652099.3

## CIGNA'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

Pursuant to the Court's Order (Dkt#245), Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively "Cigna") move for an award of attorneys' fees and costs to be paid by Defendant Humble Surgical Hospital LLC ("Humble"). In support of this motion, Cigna shows the following:

### I.    INTRODUCTION

Cigna requests this Court to award $2,198,740.56 million in reasonable and necessary attorneys' fees and costs to Cigna under ERISA § 502(g)(1).[1] The requested amount is associated with work undertaken by Cigna's counsel in the prosecution and defense of this case over a two-and-a-half-year period in which Cigna's counsel invested over 5,680 hours in attorney and paralegal time and advanced over $42,000.00 in recoverable costs on behalf of Cigna, its plan sponsor clients, and its member customers.

Cigna's counsel undertook reasonable and necessary efforts to prepare this case for resolution and a trial on the merits. The legal work undertaken by Cigna's counsel included: (1) identifying and investigating the benefit claims at issue; (2) preparing, filing, and serving Cigna's original complaint, amended complaint, and responsive pleadings to Humble's counterclaim; (3) conducting intensive fact discovery, including review of Cigna's investigative file and supporting evidentiary documents, review of voluminous documents produced by Humble, and preparing for and taking or defending depositions of fourteen different fact witnesses; (4) conducting expert discovery, including review and analysis of claims data, working with non-party pricing vendors and retained and non-retained experts on pricing of

---

[1] Cigna's total requested attorneys' fees and costs includes $2,156,570.82 in attorneys' fees and $42,169.74 in allowable costs of action. Cigna's attorneys' fees are calculated by multiplying the hourly rate of each individual on Cigna's legal time by the total number of hours billed after applicable write-offs for unproductive, excessive, or redundant work. Cigna's requested attorneys' fees also includes a 10% discount given to Cigna for professional courtesy.

medical benefits claims and developing pricing models for the claims at issue, and preparing for and defending depositions of Cigna's retained and non-retained experts; (5) preparing and filing responses to Humble's motions to dismiss and for judgment concerning significant ERISA issues; (6) preparing and participating in agreed mediation of the claims at issue; (7) preparing and filing pretrial filings, including a joint pretrial order and related attachments; (8) preparing for and participating in a bench trial on the ERISA aspects of this case; (9) preparing and filing post-trial briefs and motions for entry of judgment; and (10) preparing and filing the present motion for an award of attorneys' fees and costs.[2]

Prior to trial, Cigna's counsel attempted to resolve this dispute through mediation but was unable to reach a suitable resolution with Humble.[3]   Consequently, Cigna's counsel tried the ERISA aspects of this case to the bench and established each of the material elements of its claim for equitable restitution under ERISA § 502(a)(3), and further established that Humble failed to prove its claim for benefits under ERISA § 502(a)(1)(B) and for civil penalties under ERISA § 502(c).  The basis for Cigna's entitlement to entry of judgment in its favor and, thus, an award of attorneys' fees and costs is outlined in Cigna's post-trial Motion for Entry of Judgment.[4]   In light of the reasonable and necessary efforts undertaken by Cigna's counsel in the work, preparation, and trial of this matter, Cigna's request for fees and costs is fair, reasonable, and supported by the trial record and the affidavit of Cigna's lead trial attorney, John B. Shely, which is attached hereto as Exhibit A.  Accordingly, the Court should grant this motion.

---

[2] Ex. A (Affidavit of John B. Shely of Andrews Kurth LLP) at ¶ 3.

[3] *Id.* at ¶ 4.

[4] Dkt#238 (Cigna's Corrected Motion for Entry of Judgment).

## II. BACKGROUND

While the Court is very familiar with this case, Cigna provides a brief summary of the procedural history of this matter and the work undertaken by its counsel.

### A. Cigna's Investigation of Humble[5]

Humble opened for business in August 2010, and began submitting claims to Cigna for reimbursement of services provided to Cigna members at Humble. Cigna processed and administered those claims pursuant to the patients' health benefit plans. Most of these plans were employer-sponsored benefit plans, and Cigna paid the claims out of the employers' funds. A small number of claims were processed and paid pursuant to plans insured by Cigna.

In October 2010, Cigna began to suspect that Humble was engaging in a practice known as "fee forgiving" (*i.e.*, waiving members' out-of-network cost-share amounts). In April 2011, after multiple reports of suspicious activity, Cigna began investigating Humble's claims further by, among other things, sending post-payment surveys to members who received services at Humble to determine: whether or not they knew that Humble was out-of-network; whether or not the members were given an option to go in-network; what the member knew about the charges that were billed; and what the member paid Humble, if anything. Cigna customarily relies on such surveys to determine how or whether to continue the investigation. The member responses Cigna received revealed a pattern that the members were not told the truth about Humble's out-of-network status, they were not being informed of the true charges, and they were not being obligated to pay the balance due under their health plan benefits.

In December 2011, because Humble refused to provide information necessary for Cigna to adjudicate Humble's claims, Cigna implemented a "flag" in its system to review

---

[5] Dkt#238 at pp. 7-11.

HOU:3652099.3

Humble's claims prior to payment to determine whether Humble submitted evidence of patient responsibility or obligation with the claim.  The "flag" did not automatically deny claims, but instead asked members for information that Humble refused to provide.  A pre-payment survey was automatically sent to the member, asking the member about their knowledge of Humble's out-of-network status, about the cost of the services, and about any member payment obligation required by Humble.  If the member did not respond within 30 days, Cigna sent another survey.  If the member still did not respond, Cigna sent a final survey. If the members did not respond after three surveys sent over the course of 90 days, Cigna denied the claims.

Cigna received about 150 survey responses from members, and they confirmed that Humble was engaged in fee forgiving.  Cigna relied on the member survey responses to make its claim determinations under the plans.  If the members met their out of pocket maximum, Cigna processed the claims per plan terms.   If the members owed any deductible and responded with the amount of their payment, Cigna paid the proportionate share after giving credit for the deductible.  Cigna would pay more if it received additional information establishing what Humble had obligated the patient to pay—the numbers were not set in stone.

Cigna informed Humble and its outside counsel in writing about the basis of Cigna's decision to flag Humble and how Humble's claims would be handled on a going-forward basis. Specifically, Cigna requested that Humble submit proof of patient cost-share obligations and payments with future claims.  Humble did not.

HOU:3652099.3

B.      **The Lawsuit**

In September 2013, Cigna retained Andrews Kurth to sue Humble and recover overpayments that Cigna made concerning numerous medical claims submitted by Humble.[6] On November 7, 2013, Cigna's legal team at Andrews Kurth filed an original complaint against Humble for engaging in an out-of-network, fraudulent billing scheme designed to defraud Cigna and unjustly enrich Humble and its owners at the expense of Cigna, its members, and the members' benefit plans.  Cigna's Complaint alleged that Humble engaged in a dual prong scheme under which Humble (1) routinely waived and/or failed to obligate the members to pay their full out-of-network cost-share amounts under the terms of their benefit plans, and (2) paid illegal kickbacks to physicians based on patient volume to incentivize patient referrals to Humble.[7]  Both prongs violate the terms of Cigna's benefit plans, and Humble's bills disclosed nothing whatsoever about what Humble was doing.[8]  As a result, Cigna paid millions of dollars in overpayments to which Humble is not justly entitled.  Cigna sued to recover its overpayments under ERISA § 502(a)(3) and state law.

On December 4, 2013, Humble filed an original counterclaim against Cigna for reimbursement of certain claims for medical benefits purportedly assigned to Humble and which Humble alleged that Cigna had either underpaid or failed to pay.[9]  Humble's counterclaim asserted causes of action under ERISA as well as state law.[10]

---

[6] Ex. A (Shely Aff.) at ¶ 3.

[7] *See generally* Dkt#1.

[8] Dkt#238 at p. 1.

[9] Dkt#10.

[10] On June 6, 2014, Humble filed an amended counterclaim adding a state law claim for promissory estoppel.  Dkt#30.

HOU:3652099.3

## C.     Case Scheduling

On March 3, 2014, the Court entered its first scheduling order establishing deadlines for plaintiffs' and defendant's expert discovery to be completed by September and October 2014, respectively; fact discovery and dispositive motions to be completed by January 2015; and trial to be held in April 2015.[11]   Thereafter, the parties engaged in fact and expert discovery, which ultimately necessitated subsequent extensions of the Court's initial scheduling order.

Most of the requested scheduling extensions were sought by agreement of the parties. For example, on September 10, 2014, the Court granted the parties' agreed request to extend the deadline by which to complete expert discovery to December 2014.[12]   The trial date was not affected.  On January 29, 2015, the Court granted the parties' agreed request to extend the deadline to complete fact discovery and file dispositive motions to March 2015.   Again, the trial date was not affected.   On February 12, 2015, the Court granted the parties' second agreed request to extend the deadline by which to complete fact discovery and file dispositive motions to September 2015.  This time, the trial date was rescheduled to November 2015.

In August 2015, Cigna requested a continuance of the discovery and dispositive motion deadlines and also the trial date after Humble finally produced thousands of documents in response to Cigna's initial discovery requests.[13]   Humble had resisted producing these documents for over a year.[14]   Despite Humble's vigorous opposition to Cigna's

---

[11] Dkt#14.

[12] Dkt#48.

[13] Dkt#122.

[14] *Id.*

continuance motion, the Court moved the discovery deadline to October 30, 2015 and the trial date to January 4, 2016.[15]

On November 12, 2015, the Court held a scheduling conference after which it set this matter for trial on January 11, 2016, and ordered that all pretrial filings be filed by January 5, 2016.

## D.    Other Pretrial Motions and Filings

The parties submitted several pretrial motions and filings during the pendency of the case.  On November 11, 2013, Cigna filed a motion to transfer this case to Judge Lynn N. Hughes on the basis that it shared common questions of law and fact with another case pending before Judge Hughes, Civil Action No. 12-1206, *Aetna Life Ins. Co. v. Humble Surgical Hospital LLC*.[16]  Cigna filed this motion for judicial economy.  Humble opposed the motion, and the Court denied Cigna's request.[17]

On April 11, 2014, Humble filed a motion for judgment on the pleadings on the basis of ERISA preemption.[18]  Cigna prepared and filed a response.[19]  On December 4, 2014, Humble also filed a motion to dismiss on the basis that Cigna lacked standing to pursue state law claims on behalf of the self-funded benefit plans associated with the benefit claims at issue.[20]  Cigna prepared and filed a response to this motion as well.[21]  On March 24, 2015, the Court entered a memorandum opinion and order finding that ERISA preempts all state claims

---

[15] Dkt#132.

[16] Dkt#3.

[17] Dkt#4; Dkt#7.

[18] Dkt#16.

[19] Dkt#21.

[20] Dkt#53.

[21] Dkt#54.

HOU:3652099.3

arising from Cigna's self-funded plans and employee benefit plans, and that Cigna's state and federal claims are deficient as pled because they do not allege sufficient facts to establish Cigna's standing to sue under ERISA nor do they allege sufficient facts to establish the existence of any plan from which Cigna's ERISA claims arise.[22]  On April 15, 2015, Cigna filed motions and related briefs to vacate the Court's order and to amend Cigna's complaint concerning Cigna's standing to sue.[23]   Cigna prepared and filed these briefs to resolve important ERISA issues affecting the case.  Humble opposed each of Cigna's motions.  The Court subsequently reversed its prior decision, granted Cigna's motion to vacate, and permitted Cigna to amend its complaint.[24]  Cigna filed its First Amended Complaint on July 10, 2015.[25]

On November 24, 2014, Humble filed a motion for leave to file third-party claims against 114 benefit plans and their plan sponsors.[26]  Cigna filed a response in opposition contending that Humble was needlessly seeking to expand and complicate the scope of litigation.[27]  The Court agreed and denied Humble's request.[28]

On April 21, 2015, Cigna filed a motion to quash non-party subpoenas that Humble served on fifty-six plan sponsors seeking documents, which Cigna had already produced to

---

[22] Dkt#64.

[23] Dkt#65; Dkt#66; Dkt#67.

[24] Dkt#103.

[25] Dkt#105.

[26] Dkt#49.

[27] Dkt#50.

[28] Dkt#52.

8

Humble.[29]  After a hearing, the Court granted Cigna's motion to quash and ordered that the non-party plan sponsors did not have to respond or take any action.[30]

On June 17, 2015, Humble filed a motion to compel Cigna to produce certain documents.[31]  Cigna filed a response contending that Humble's motion was premature because Cigna was actively working on gathering documents responsive to Humble's requests, and that Humble could not fairly represent to the Court that the parties were unable to resolve the issue without court intervention.[32]  After holding a hearing, the Court denied Humble's motion to compel.[33]

On July 20, 2015, Cigna filed a motion for relief from Humble's efforts to harass Cigna plan sponsors and members by sending letters implying that Cigna had improperly refused to pay Humble and stating that Cigna members are responsible for paying Humble for the full cost of the services provided, despite the fact that the benefit claims at issue would be resolved by this litigation.[34]  Humble filed a response, and the Court elected not to intervene.[35]

On August 28, 2015, Cigna filed a partial motion to dismiss or for judgment on the pleadings contending that the only claim Humble could pursue was a claim for benefits under ERISA § 502(a)(1)(B), and that all other claims Humble asserted under ERISA or state law

---

[29] Dkt#71.

[30] Dkt#81.

[31] Dkt#88.

[32] Dkt#91.

[33] Dkt#101.

[34] Dkt#109.

[35] Dkt#114; Dkt#118.

HOU:3652099.3

failed as a matter of law.[36]   Humble filed a response, and the Court summarily denied Cigna's motion stating that "[o]nly motions that are dispositive of all claims will be addressed."[37]

On October 29, 2015, Humble filed a motion to compel depositions of Cigna's designated experts, two Cigna employees, and certain non-party witnesses identified in Cigna's disclosures as persons with knowledge of relevant facts.[38]   Cigna filed a response in opposition contending that Humble's motion was filed one day before the discovery deadline and therefore untimely, that Humble vigorously opposed Cigna's prior motion for continuance that would have obviated this predicament, that Humble had already deposed numerous individuals, that Humble's motion to compel depositions presented no good cause to extend discovery any further, and that the remaining time in the Court's scheduling order was needed to prepare the case for trial.[39]   Notwithstanding, the Court granted Humble's motion and ordered that depositions be complete by December 14, 2015.[40]

On December 24, 2015, Cigna filed a motion to strike 175+ new benefit claims that Humble's expert – Charlotte Kohler – added to one of her numerous, supplemental expert reports.  The basis of Cigna's motion was that Humble waited until the end of the discovery period to add these new benefit claims and failed to provide the underlying "facts or data" needed for Cigna to verify whether the newly added claims were in fact Cigna claims or involved Cigna members.[41]   Because Cigna lacked the information needed to test these newly

---

[36] Dkt#127.

[37] Dkt#129; Dkt#131.

[38] Dkt#134.

[39] Dkt#139.

[40] Dkt#141, Dkt#143.

[41] Dkt#151.

added claims as a basis for Humble's purported damages, Cigna sought to strike them from the case.  The Court, however, denied Cigna's request.[42]

On January 5, 2016, the parties filed a joint pretrial order, with related attachments, in accordance with the Court's scheduling order and procedures.[43]

## E.    Mediation

In October 2015, the parties agreed to mediate this dispute in an effort to reach resolution prior to trial.  After a full day of mediation on December 3, 2015, and several subsequent settlement discussions, the parties were unable to reach a suitable resolution.

## F.    Trial

On January 8, 2016, the Court bifurcated the issues presented in this case and allowed the parties to proceed with a bench trial on the ERISA aspects only, leaving other common law claims for a jury trial.[44]   On January 11, 2016, the Court commenced a bench trial on Cigna's claims for restitution under ERISA § 502(a)(3) and Humble's counterclaim for benefits under ERISA § 502(a)(1)(B) and civil penalties under ERISA § 502(c).  During the bench trial, the Court heard oral testimony from seven fact and expert witnesses presented by Cigna, and six fact and expert witnesses presented by Humble.  The Court also admitted numerous trial exhibits[45] from both sides into evidence and received the parties' respective deposition designations.

---

[42] Dkt#163.

[43] Dkt#158.

[44] Dkt##162, 164.

[45] Humble's original trial exhibit list alone, consisted of over 4,000 exhibits.

On February 2, 2016, the parties filed their respective post-trial motions for judgment and supplemental findings of fact and conclusions of law.[46]  On February 3, 2015, the Court heard closing arguments from both sides.  On February 23 and 24, 2016, Cigna and Humble respectively filed their corrected motions for judgment and corrected findings of fact and conclusions of law as ordered by the Court to conform record citations to the final trial transcripts.[47]

### III.   AUTHORITIES & ARGUMENT

### A.   Cigna is Entitled to an Award of Attorneys' Fees and Costs

Cigna seeks an award of attorneys' fees in the amount of $2,198,740.56 in attorneys' fees and costs of action.[48]  Pursuant to ERISA § 502(g)(1), this Court "'in its discretion may allow a reasonable attorney's fee and costs of action to either party' so long as the party has achieved 'some degree of success on the merits.'"  *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 846 (5th Cir. 2013) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 243 (2010) ("This Court's 'prevailing party' precedents do not govern here because that term of art does not appear in § 1132(g)(1).")).  A party satisfies the "success on the merits" requirement "if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question [of] whether a particular party's success was 'substantial' or occurred on a 'central issue.'"  *Id.* (quoting *Hardt*, 560 U.S.

---

[46] Dkt#220 (Cigna's Motion for Judgment); Dkt#222 (Cigna's Supplemental Findings of Fact and Conclusions of Law); Dkt#218 (Humble's Motion for Judgment); Dkt#219 (Humble's Proposed Findings of Fact and Conclusions of Law).

[47] Dkt#238 (Cigna's Corrected Motion for Judgment); Dkt#240 (Cigna's Corrected Findings of Fact and Conclusions of Law); Dkt#242 (Humble's Corrected Motion for Judgment); Dkt#241 (Humble's Corrected Findings of Fact and Conclusions of Law).

[48] Cigna's total requested attorneys' fees and costs includes $2,156,570.82 in attorneys' fees and $42,169.74 in allowable costs of action.  Cigna's attorneys' fees are calculated by multiplying the hourly rate of each individual on Cigna's legal time by the total number of hours billed after applicable write-offs for unproductive, excessive, or redundant work.  Cigna's requested attorneys' fees also includes a 10% discount given to Cigna for professional courtesy.

at 255 (quotations and citations omitted)).  By contrast, a party does not satisfy the "success on the merits" requirement by achieving only "trivial success on the merits or a purely procedural victor[y]." *Hardt*, 560 U.S. at 255  (quotations and citations omitted).[49]

In this case, Cigna meets the threshold requirement that it achieve "some success on the merits" as to its affirmative claim for equitable restitution under ERISA § 502(a)(3), and its defense of Humble's claim for benefits under ERISA § 502(a)(1)(B) and civil penalties under ERISA § 502(c).  The basis of Cigna's success on the merits is firmly supported by the trial record and Cigna's post-trial Motion for Entry of Judgment.[50]  According to its Motion for Judgment, Cigna established each of the following material issues at trial by a preponderance of evidence:

- Humble billed Cigna's members as if it were in-network, but then billed Cigna at inflated out-of-network rates;

- Humble entered into agreements to pay referring physicians 30% of Humble's facility fee for the solicitation and referral of patients to Humble;

- Humble intentionally kept its practice of waiving patients' cost share as well as its referral arrangements with Cigna's physicians a secret, thus, causing Cigna to overpay on hundreds of benefit claims;

- Cigna's benefit plans do not cover charges that Humble did not require the members to pay, or referral fees for the solicitation of patients;

---

[49] Once a court determines that a party is entitled to an award of reasonable attorney's fees and cost, the court "may consider," but is not required to consider, whether fees are appropriate by assessing five non-exclusive factors: (1) the degree of the opposing party's bad faith or culpability; (2) the opposing party's ability to satisfy an attorney's fee award; (3) whether an award of attorney's fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting attorney's fees aimed to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; (5) the merits of the parties' positions.  *LifeCare Mgmt.*, 703 F.3d at 846; *see also 1 Lincoln Fin. Co. v. Metro. Life Ins. Co.*, 428 F. App'x 394, 396 (5th Cir. 2011) ("A district court may consider the five factors, but *Hardt* does not mandate consideration." (citing *Hardt*, 560 U.S. at 254 ("Because these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section.")).  No one factor predominates over any other factor.  *See Riley v. Adm'r of Supersaver 401K Capital Accumulation Plan for Emps. of Participating AMR Corp. Subsidiaries*, 209 F.3d 780, 781-82 (5th Cir. 2000).

[50] Dkt#238 (Cigna's Corrected Motion for Entry of Judgment).

- Cigna conducted an investigation of Humble and took reasonable measures to respond to Humble's wrongful business practices;

- Humble did not prove that Cigna's decision was legally incorrect; instead, Cigna did not abuse its discretion because its decision was supported by substantial evidence and was not arbitrary or capricious;

- Humble failed to prove its damages with any reasonable certainty as to each of the 595 claims it placed at issue;

- All that Humble proved is that it has no right even to seek benefits from Cigna because Humble's corporate representative testified at trial that the unlicensed physician shell entities rendered the services at issue—not Humble—and that Humble has no assignments from these entities to submit bills for their services;

- Humble failed to prove its civil penalty claim under ERISA § 502(c) because it failed to prove that Cigna is a statutorily-defined plan "administrator"; and

- Humble's claims for benefits fail because of Humble's own unclean hands.

Cigna's success on the merits as to each of these issues was not simply trivial success or procedural victory, but overwhelming success established in favor of Cigna and against Humble.  Accordingly, Cigna is entitled to an award of reasonable and necessary attorneys' fees and costs for its efforts in prosecuting and defending the issues in this case.[51]

**B.    Cigna's Requested Attorneys' Fees are Reasonable**

Once a court determines a party is entitled to an award of attorneys' fees under ERISA § 502(g)(1), the lodestar method is then used to determine the amount of attorneys' fees to be awarded.  *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 348 (5th Cir. 2002) (overruled on

---

[51] Although the Court need not consider the five factors traditionally considered prior to *Hardt* to determine whether a fee award is appropriate, *LifeCare Mgmt.*, 703 F.3d at 846, such consideration only confirms Cigna's success on the merits and that an award of attorneys' fees and costs in favor of Cigna is appropriate. Cigna firmly established at trial that Humble's business practices were improper, illegal, and committed with a conscious disregard to Cigna's benefit plans and members.  There is no evidence that Humble would be unable to satisfy an award of attorneys' fees.  Such an award would undoubtedly serve to deter other out-of-network providers from engaging in similar billing practices and schemes.  And Cigna's effort to proceed with litigation in this matter was aimed directly at obtaining a favorable recovery of overpayments to the benefit of Cigna's self-funded plan sponsors and employee participants.

other grounds); *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997); *St. Luke's Episcopal Hosp. v. Acordia Nat.*, No. 05-1438, 2008 WL 686204, at *6 (S.D. Tex. Mar. 7, 2008).  The lodestar method requires the court to "assess the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the lodestar."  *Lain*, 279 F.3d at 348 (citing *Wegner*, 129 F.3d at 822) (internal citations omitted).

There is a "strong presumption that the lodestar figure – the product of reasonable hours times a reasonable rate – represents a 'reasonable' fee."  *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 565 (1986); *see also Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) (*per curiam*) ("There exists a strong presumption of the reasonableness of the lodestar amount.").  Depending on the circumstances of the case, however, the loadstar figure can be adjusted upward or downward based on the relative weights of twelve factors set forth in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Wegner*, 129 F.3d at 822.[52]  "'[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel.'"  *Saizan*, 448 F.3d at 800 (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)).  "Some of the[] [*Johnson*] factors are subsumed in the initial lodestar calculation and should not be double counted."  *Migis*, 135 F.3d at 1047; *see also Saizan*, 448 F.3d at 800 ("The lodestar may not be

---

[52] Those factors are: (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was "undesirable"; (11) the type of attorney-client relationship and whether that relationship was long-standing; and (12) awards made in similar cases.

15

adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting.").

A district court's award of attorneys' fees is reviewed "for abuse of discretion and its factual findings for clear error, assessing the initial determination of reasonable hours and rates for clear error and its application of the *Johnson* factors for abuse of discretion." *Saizan*, 448 F.3d at 800 (quotations and citations omitted).

### 1.    *Reasonable number of hours*

Cigna's legal team commenced work on this matter in September 2013 and has been litigating this case for nearly two and a half years.[53]  Cigna's time and expense records since then reflect a total of 5,687.20 hours in attorney and paralegal time spent in the prosecution and defense of this case through January 2016.[54]  The total hours expended by Cigna's legal team were reasonable and necessary given the size, duration, and complexity of this case.

This case presented complex factual and legal issues regarding restitution and benefits for nearly 900 medical claims.  As a result, the parties engaged in a significant amount of fact and expert discovery, including review and production of 4,700 documents from Cigna and 15,500 documents from Humble, preparation for and attendance at depositions for fifteen different witnesses, including two experts and several non-party individuals, and extensive review and analysis of the medical claims at issue, including time spent working with healthcare experts and pricing vendors to develop pricing models for restitution and damages. Cigna's counsel also briefed several important and significant legal issues regarding ERISA, such as preemption and standing, for which Cigna obtained favorable rulings from the

---

[53] Ex. A (Shely Aff.) at ¶ 3.

[54] *Id.* at ¶ 6.

Court.[55]  Cigna's counsel also spent time attempting to resolve this matter through formal and information settlement discussions prior to trial and even more significant time preparing for and presenting this case at a bench trial when those settlement discussions failed.[56]

Cigna's billing records reflect detailed task entries of the services each individual on Cigna's legal team performed, the date on which the services were performed, and the number of hours expended on each task over the course of a two-and-a-half-year period.[57]  The task entries for Cigna's attorney and paralegal time are not vague, and they standardly and adequately identify the content and purpose for the particular tasks and services performed and billed.[58]  A summary of the total hours expended by each member of Cigna's legal team is as follows:[59]

|    | Timekeeper | Hours | % of Total |
|----|------------|-------|------------|
| 1. | John Shely (partner) | 322.1 | 5.66% |
| 2. | Dena Palermo (partner) | 1,469.7 | 25.84% |
| 3. | Laura Trenaman (partner) | 490 | 8.62% |
| 4. | Cameron Pope (partner) | 423.5 | 7.45% |
| 5. | Brian Pidcock (associate) | 1,163.5 | 20.46% |
| 6. | Jeb Golinkin (associate) | 669 | 11.76% |
| 7. | Kelsey Hope (associate) | 108.5 | 1.91% |
| 8. | Jessica Schaffner (associate) | 51.1 | 0.90% |
| 9. | Thomas McCulloch (associate) | 1.6 | 0.03% |

---

[55] *Id.* at ¶ 7.

[56] *Id.*

[57] *Id.* at ¶¶ 5-6 and Ex. A-2.  For purposes of submitting billing records for review and consideration of this motion, certain entries have been redacted to protect attorney-client communications and attorney work product .

[58] *Id.*

[59] *Id.* at ¶ 7.

HOU:3652099.3

|  | Timekeeper | Hours | % of Total |
|---|---|---|---|
| 10. | Suzy Hodek (paralegal) | 630.9 | 11.09% |
| 11. | Todd White (paralegal) | 132 | 2.32% |
| 12. | Marta Lentino (paralegal) | 124.5 | 2.19% |
| 13. | Vanessa Car (paralegal) | 84.2 | 1.48% |
| 14. | Debbie Weatherford (paralegal) | 1.2 | 0.02% |
| 15. | Caroline Lee (legal assist.) | 11.4 | 0.20% |
| 16. | Bonnie Perry (legal assist.) | 2.5 | 0.04% |
| 17. | Chris Arellano (legal assist.) | 1.5 | 0.03% |
|  | **TOTAL** | **5,687.2** | **100%** |

The size, duration, and complexity of this case further demonstrates that Cigna's legal team was properly staffed.[60]   While multiple timekeepers billed time on this matter, due primarily to the longevity of the case, the bulk of the work was performed by a core group of individuals: Shely, Palermo, Pope, and Trenaman (partners), Pidcock and Golinkin (associates), and Hodek (paralegal).[61]   All attorney and paralegal work was monitored closely to ensure that the services performed and time billed was reasonable and necessary.[62]   Additionally, Cigna's legal team adjusted its fees and did not bill for certain services as a professional courtesy to Cigna.[63]   Specifically, Cigna's billing records reflect that 1,066 hours (approximately one sixth of the total hours expended) totaling $325,891.80 in fees were written off as either unproductive, excessive, or redundant.[64]   Such write-offs evidence reasonable billing judgment

---

[60] *Id.* at ¶ 8.

[61] *Id.* at ¶¶ 2, 8.

[62] *Id.* at ¶ 8.

[63] *Id.*

[64] *Id.* and Ex. A-3.

on the part of Cigna's legal team.  *See Saizan*, 448 F.3d at 799 ("Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant.").  Accordingly, based on the type and amount of legal work required, and the evidence of staffing and billing judgment, the hours that Cigna's legal team expended in this matter are reasonable.[65]

### 2.      Reasonable rates

The established basis for determining a reasonable hourly rate is the prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  The relevant market is the community where the district court sits.  *Id.*  Paralegal fees also may be awarded at market value "if the prevailing practice in the relevant community is to bill these services directly to clients."  *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1235 (5th Cir. 1997) (citing *Missouri v. Jenkins*, 491 U.S. 274, 286-88 (1989)).  The party seeking fees bears the burden of establishing the market rate.  *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).

Cigna seeks an award of attorney and paralegal fees at hourly rates customarily billed for handling complex litigation within the Southern District of Texas.[66]  Cigna's attorneys and legal team possesses the experience and training required to handle a case of the size and complexity as this case.[67]  The billing rates for Cigna's legal team in this matter range from $455 to $705 for partners, $275 to $375 for associates, and $195 to $236 for paralegals.[68]  The

---

[65] *Id.*

[66] *Id.* at ¶ 10.

[67] *Id.* at ¶ 9.

[68] *Id.* at ¶ 10.

HOU:3652099.3

average hourly rate for Cigna's combined attorney and paralegal time was $325.9 per hour.[69]  A survey of cases within the Southern District of Texas reflects that the hourly rates for Cigna's legal team are comparable to the rates charged by other large firms representing clients in cases involving issues of similar complexity as those presented here, which supports that the rates for Cigna's legal team are within the prevailing market rates for lawyers with comparable experience and expertise.[70]  *See e.g.*, *Slipchenko v. Brunel Energy, Inc.*, No. 11-1465, 2015 WL 338358, at *19 (S.D. Tex. Jan. 23, 2015) (finding that billing rates ranging from $635 to $775 for partners, $415 to $530 for associates, and $240 to $260 for paralegals, are generally comparable to the rates charged by Texas-based firms handling complex ERISA litigation).[71]

Moreover, the rates charged by Cigna's legal team fall within the rates of other similarly situated large Houston and Dallas firms as referenced in the 2007 survey of the National Law Journal ("NLJ"), which has been cited by courts as a reliable and appropriate source in assessing reasonable hourly rates.[72]  In fact, on three separate occasions, courts in this district have relied upon and credited the 2007 NLJ billing survey as evidence of reasonable large firm rates in the Houston and Dallas market.[73]  The NLJ's survey of billing rates for *2013* also

---

[69] *Id.*

[70] *Id.*

[71] *See also* Declaration of Vineet Bhatia, *Rocky Bixby v. KBR, Inc.*, No. 9-632 (D. Ore. April 30, 2012), ECF 325 (reflecting 2012 hourly rates for lawyers from Susman Godfrey's Houston office, including Chanler Langham as an associate (now a partner) at $400.00 per hour, and for other partners at $650 to $795 per hour).

[72] Ex. A (Shely Aff.) at ¶ 11; *see, e.g.*, *Entm't Software Ass'n v. Granholm*, No. 05–73634, 2006 U.S. Dist. LEXIS 96429, at *7–8 (E.D. Mich. Nov. 30, 2006); *Chin v. DaimlerChrysler Corp.*, 520 F. Supp. 2d 589, 608–09 (D.N.J. 2007); and *Citizens Ins. Co. of America v. KIC Chemicals, Inc.*, 2007 WL 2902213, **6–7, 2007 U.S. Dist. LEXIS 73201, at *18–19 (D. Mich. Oct. 1, 2007).

[73] *See Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 586 F. Supp. 2d 732, 779-81 (S.D. Tex. 2008) (finding rates of $344-720 for partners, and $200-400 for associates reasonable for large law firms in the Southern District of Texas based on 2007 National Law Journal Survey data of rates charged by the large firms in the Houston/Dallas area, including Andrews Kurth); *Prospect Energy Corp. v. Dallas Gas Partners, LP*, No. 10-1396, 2011 WL 5864292, at *7 (S.D. Tex. Nov. 22, 2011) (approving rates of up to $565 for partner, $300 for associate, $175 for paralegal and finding that such rates "were within the[] range of and even lower than those of comparable firms doing similar work in the Houston and Dallas area" (citing *Newby*, 586 F. Supp. 2d at 779-81)); *Desert Rock Energy Co., LLC v. U.S. E.P.A.*, No. 08-872, 2009 WL 3247312, at *4 (S.D. Tex. Sept. 29, 2009) (finding

supports that the rates charged by Cigna's legal team in this matter are within the prevailing market rate.[74]   Accordingly, the hourly attorney and paralegal fees that Cigna seeks to recover in this case are reasonable.

### 3.   *Loadstar fee amount*

Taking the total number of hours billed by the hourly rate of Cigna's legal team results in a loadstar figure of $2,396,189.80.[75]   Pursuant to the fee agreement between Cigna and its counsel, Cigna received a 10% discount on all billing fees.   Such discount further evidences billing judgment.   *See Saizan*, 448 F.3d at 799.   Cigna's counsel provided Cigna with a 10% discount of the billed fees as a professional courtesy for handling this matter.[76]   Adjusting the initial lodestar figure by 10% results in a reduced lodestar fee amount of $2,156,570.82.[77]   Because the hourly rates charged, and number of hours expended, by Cigna's legal team are reasonable and supported by the underlying tasks and issues presented in this case, the resulting loadstar figure is also reasonable.   *See Delaware Valley*, 478 U.S. at 565 (stating that there is a "strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee."); *Saizan*, 448 F.3d at 800 ("There exists a strong presumption of the reasonableness of the lodestar amount.").   Cigna does not seek any enhancement of its fees above the lodestar amount and requests that the Court award the fees

---

that the plaintiffs had "met their burden of demonstrating that their hourly rates" of up to $700 for partners and $337.50 for associates were reasonable in the Southern District of Texas in 2009 "by citing to a table detailing the average billing rates for Houston's large firms in 2007 that this Court relied on in its opinion from *Newby v. Enron Corp.*" (citing *Newby*, 586 F. Supp. 2d at 779-81)).   A summary of the 2007 NLJ survey of billing rates reflecting large law firms in the Houston area supports that the rates charged by Cigna's legal team in this matter are in line with rates charged in 2007.   *Id.* at ¶ 12.

[74] *Id.* at ¶ 13 and Ex. A-4.

[75] *Id.* at ¶ 14.

[76] *Id.* at ¶ 15.

[77] *Id.*   To date, Cigna has paid all outstanding invoices except for the last two, which issued in January (for December fees and costs) and February 2016 (for January fees and costs); these invoices are in line for approval and payment.   *Id.*

HOU:3652099.3

incurred for the time and labor involved as specifically set forth herein.   Accordingly, the Court should award Cigna $2,156,570.82 in fees.

### 4.    The *Johnson factors support an award for the lodestar amount*

The evidence presented in this motion, throughout the pendency of this action, and during trial, demonstrates that Cigna's lodestar amount is supported by the *Johnson* factors.[78]

### i.    *Factors 1, 2, 3, 4, 5, 8 and 9 – subsumed within lodestar*

The time and labor required for the litigation (factor 1); the novelty and complication of the issues (factor 2); the skill required to properly litigate the issues (factor 3); whether the attorney had to refuse other work to litigate the case (factor 4); the attorney's customary fee (factor 5); the amount involved and results obtained (factor 8); and the experience, reputation, and ability of the attorneys involved (factor 9); are each logically subsumed within the initial evaluation and consideration of the reasonable number of hours and reasonable hourly rates. *See, e.g.*, *Delaware Valley*, 478 U.S. at 565 ("'[N]ovelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.'" (citations omitted)); *Shipes v. Trinity Indus.*, 987 F.2d 311, 321-22 (5th Cir. 1993) (noting that factor 4 ordinarily will be subsumed within the lodestar amount).   At a minimum, these factors support Cigna's initial lodestar amount, if not a slight enhancement given the size, duration, and complexity of this case and the fact that Cigna's legal team has exercised considerable billing judgment in writing down hours and discounting its total billed fees.

---

[78] *See* list of factors in Part B, *supra*.

22

ii.     *Factors 6, 7, 10 and 11 – neutral*

Whether the fee is fixed or contingent (factor 6), whether the client or case circumstances imposed any time constraints (factor 7), whether this case was "undesirable" (factor 10), and the type of attorney-client relationship and whether that relationship was long-standing (factor 11), are each factors that do not weigh for or against the lodestar fee amount. Cigna's attorneys' fees in this matter were based on hourly rates, not fixed rates or a contingency fee. This case did not present any particular time limitations imposed either by Cigna or the circumstances of the case that warrant special consideration. There is no evidence or contention that this case was necessarily desirable or undesirable based on the novelty or expected difficulty of the factual and legal issues presented. And Cigna's relationship with its legal team in this matter also does not present any condition warranting special consideration affecting the lodestar amount. Thus, each of these factors are neutral and should not affect the initial lodestar amount.

iii.    *Factor 12 – supports initial lodestar amount*

Evidence of awards made in similar cases (factor 12) supports Cigna's lodestar amount as courts within the Southern District of Texas have awarded attorneys' fees at similar rates in similar types of complex litigation matters. *See* Part B.2, *supra*. Thus, this factor supports Cigna's requested lodestar amount.

## C.    Cigna's requested costs are appropriate

Cigna also seeks an award of its costs incurred prosecuting and defending this lawsuit in the amount of $42,169.74. ERISA § 502(g)(1) expressly authorizes a party to recover "costs of action." 29 U.S.C. § 1132(g)(1). An award of costs in an ERISA case is limited to those

23

listed in 28 U.S.C. § 1920.[79]  *Cook Children's Med. Ctr v. New England PPO Plan of Gen. Consol. Mgmt., Inc.*, 491 F.3d 266, 275-76 (5th Cir. 2007), *cert. denied*, 552 U.S. 1180, 128 S. Ct. 1223 (2008) (reversing the district court's decision awarding mediation expenses on grounds that mediation fees are not explicitly authorized by § 1920).  Each of the itemized costs that Cigna seeks to recover was necessary to the litigation and is expressly listed in 28 U.S.C § 1920.[80]  Accordingly, the Court should award Cigna its costs of action in this matter.

## IV.    CONCLUSION

Based on the foregoing, Cigna respectfully requests that the Court grant this Motion for Award of Attorneys' Fees and Costs, and order that Humble pay Cigna **$2,156,570.82** in reasonable attorneys' fees and **$42,169.74** in costs of action.  Cigna prays for such other and further relief to which it may be entitled.

---

[79] Section 1920 provides that the following may be taxed as costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under section 1923 of this title; (6) compensation of court appointed experts, compensation of interpreters, salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.  28 U.S.C. § 1920.

[80] Ex. A (Shely Aff.) at ¶ 16 and Ex. A-5.

HOU:3652099.3

Respectfully submitted,

**ANDREWS KURTH LLP**

By: ___*s/ John B. Shely*_____

    **John B. Shely**
    State Bar No. 18215300
    Southern District No. 7544
    **Laura Trenaman**
    State Bar No. 00798553
    Southern District No. 23815
    **Brian C. Pidcock**
    State Bar No. 24074895
    Southern District No. 1654553
    600 Travis, Suite 4200
    Houston, Texas 77002
    (713) 220-4105 (JBS)
    (713) 220-4783 (LT)
    (713) 220-3916 (BCP)
    jshely@andrewskurth.com
    ltrenaman@andrewskurth.com
    brianpidcock@andrewskurth.com

**ATTORNEYS FOR PLAINTIFFS**
**CONNECTICUT GENERAL LIFE**
**INSURANCE COMPANY and**
**CIGNA HEALTH AND LIFE INSURANCE**
**COMPANY**

25

## **CERTIFICATE OF SERVICE**

On March 24, 2016, the foregoing document was electronically filed with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the CM/ECF system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.

*s/ Brian C. Pidcock*
Brian C. Pidcock

HOU:3652099.3