## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY, | § § § § § | |
| Plaintiffs, | § § | **JURY DEMANDED** |
| vs. | § § | **CIVIL ACTION NO. H-13-3291** |
| HUMBLE SURGICAL HOSPITAL, LLC, | § § § | |
| Defendant. | § § | |

---

## RESPONSE TO HUMBLE'S MOTION FOR ATTORNEYS' FEES

---

Humble seeks $2.7 million in attorneys' fees to which it is not entitled.  Humble failed to meet its burden of proof at trial for ERISA benefits and civil penalties and, therefore, cannot establish any degree of success on the merits of its case.  But even if Humble were entitled to attorneys' fee, Humble failed to prove that the underlying legal services performed on its behalf were reasonable and necessary to the litigation.  Specifically, Humble (i) failed to submit evidence of its attorneys' billing records reflecting the nature and type of legal services performed, (ii) failed to submit evidence that its attorneys exercised billing judgment, and (iii) engaged in procedural shenanigans and discovery abuse that needlessly increased the cost of litigation.  Accordingly, the Court should deny Humble's motion for attorneys' fees in its entirety or, at the very least, reduce Humble's requested fees to an appropriate amount to account for its failure of proof.

HOU:3657743.1

1.      Humble failed to achieve success on the merits of its case by any degree. Humble's motion is chocked full of racy adjectives and rhetoric used to describe how it "eviscerated" and "destroyed" Cigna's case.  But no matter how many adjectives Humble uses, it cannot ignore the trial record of irrefutable facts – not rhetoric – proving Humble's wrongful and improper conduct and that Cigna's investigation and handling of benefit claims was careful, methodical, and reached the correct result.

2.      Cigna firmly established at trial that its investigative conclusions of Humble's business practices were entirely correct – *i.e.*, Humble was engaged in fee forgiving; it billed Cigna's members as if it were in-network, but then billed Cigna at inflated out-of-network rates; Humble was not truthful with Cigna or its members; it intentionally kept its practice of waiving patients' cost share as well as its referral arrangements with Cigna's network physicians a secret, thus, causing Cigna to overpay on hundreds of benefit claims.[1]  Cigna's investigation cannot constitute a "sham" or "pretext" or be criticized as an abuse of discretion when its conclusions were right and when Humble wholly failed to explain (despite ample opportunity to do so) why it never provided Cigna with the requested documentation regarding amounts that Cigna member were obligated to pay.[2]  It could have easily done so, but it chose instead to deceive.

---

[1] *See* Dkt#238 at pp. 3-11.

[2] *MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 478 (5th Cir. 2003) (An administrator's decision is not arbitrary and capricious as long as it "'fall[s] somewhere on a continuum of reasonableness—even if on the low end.'" (quoting *Vega v. Nat'l Life Ins. Serv. Inc.*, 188 F.3d 287, 297 (5th Cir. 1999))); *Truitt v. Unum Life Ins. Co.*, 729 F.3d 497, 510 (5th Cir. 2013) ("If the claimant has relevant information in his control, it is not only inappropriate but inefficient to require the administrator to obtain that information in the absence of the claimant's active cooperation."); *Mathis v. Conn. Gen. Life Ins. Co.*, 882 F. Supp. 92, 95 (N.D. Tex. 1994) (stating "[g]enerally, a plan administrator's decision is not an abuse of discretion where it requests but does not receive additional information"; holding that Cigna did not abuse its discretion in denying ERISA plan member's request for

3.      Nor can Humble ignore the overwhelming authority that supports Cigna's legally-correct interpretation that the plans do not cover charges Humble did not require members to pay.  *See Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 699–701 (7th Cir. 1991) (holding that provider was not entitled to payment from Cigna because it had waived patients' copayment, as the plan provided that "[no] payment will be made for expenses incurred … for charges which the Employee or Dependent is not legally required to pay"); Memorandum & Order (Dkt. #331), *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, No. 4:09-cv-2556, at 12–13 (S.D. Tex. Aug. 10, 2012) ("*North Cypress I*") ("[Cigna's] interpretation of the plans is legally correct.").[3]  Cigna's interpretation of the plans cannot

_____

precertification because member did not respond to request for information as to why in-patient care rather than out-patient care was necessary).

[3] *See also* Dkt#238 at pp. 11-15 & n.17 (citing *Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 522 F. App'x. 81, 82 (2d Cir. 2013) (holding that where provider "routinely" waived patients' "deductible and coinsurance obligations," "it was reasonable for [insurer] to pay a reduced amount"); *Bryant v. Am. Seafoods Co.*, 348 F. App'x 256, 257 (9th Cir. 2009) (holding that plaintiffs had no standing where provider did not balance bill); *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (adopting *Kennedy*'s reasoning); *Cedars-Sinai Med. Ctr. v. Mass. Mut. Life Ins. Co.*, No. 94-cv-55065, 1995 WL 564757 at *3 (9th Cir. 1995) ("[B]ecause health insurance is a contract to indemnify, courts have found that insurers are not obligated to provide coverage under a policy when the insured has no obligation to pay for medical services"); *Ross v. Albany Med. Ctr.*, 104 F.3d 351 (Table), 1996 WL 626349, at *1 (2d Cir. Oct. 30, 1996) (holding that plaintiff did not suffer injury in fact from unpaid overcharge); *Davidowitz v. Delta Dental Plan of Ca., Inc.*, 946 F.2d 1476, 1479 (9th Cir. 1991) (adopting the Seventh Circuit's reasoning in *Kennedy*); *Ark. Blue Cross Blue Shield v. St. Mary's Hosp.*, 947 F.2d 1341, 1346 & n.6 (8th Cir. 1991) (citing *Kennedy* and provider's increase of cost of service and waiver of co-payments to avoid the co-payment cost structure); *United States v. Metro. Life*, 683 F.2d 1250, 1252 (9th Cir. 1982) (insurer has no obligation to pay where insured incurred no actual charges); *N.M. ex rel. Kershner v. Equitable Life Assur. Soc. of U.S.*, 447 F.2d 620, 622–23 (10th Cir. 1971) (insurer not liable where insured "was not charged for, and incurred no expenses" for medical services, and policy obligated insurer to pay benefits "for only those charges incurred by the insured … and only upon proof of loss by the insured."); *United States v. St. Paul Mercury*, 238 F.2d 594, 598 (8th Cir. 1956) (holding that assignee provider of veteran could not recover from insurer under policy, because veteran had incurred no liability to provider arising from hospitalization); *Bollig v. Christian Cmty. Homes & Services, Inc.*, No. 02-C-532-C, 2003 WL 23200362, at *4 (W.D. Wis. July 10, 2003) ("If plaintiffs have no obligation to pay any bills, they have suffered no injury. Moreover, the health plan defendant sponsors defines a 'covered expense' as 'an expense, fee or charge incurred by or on behalf of a Covered Person … for which the Covered Person is obligated to pay.' This definition is inconsistent with plaintiffs' assertion that they are entitled to recovery regardless whether [the provider] can bill them for the unpaid medical services."); *Garofalo v. Empire Blue Cross & Blue Shield*, 67 F. Supp. 2d 343, 346–47 (S.D.N.Y. 1999) (holding that plaintiffs lacked standing to recover for insurer's alleged past overcharges of their portions of inpatient hospital charges, because plaintiffs never paid in excess of plan requirements); *Margolis v. Prudential Ins. Co. of Am.*, 629 F. Supp. 195, 198-99 (D.D.C. 1985) (insurer not obligated to pay insured where health care provider forgave unpaid charges in settlement of medical malpractice action); *Vaden v. PFL Life*

be "tortured, fabricated and (ultimately) legally incorrect" when numerous courts have held to the contrary and Cigna's interpretation is supported by the express terms of the plan, which uniformly require that the members be obligated to pay their deductible before the plans are required to share in the coinsurance.[4]  Even had Humble tied the score by offering a conflicting interpretation (it did not), the tie goes to the runner, which is Cigna.[5]

        4.      Any success that Humble might have achieved is limited to its proof that it has no right to seek benefits from Cigna at all as evidenced by Humble's corporate representative (Jacob Kohl) who testified at trial that the unlicensed physician shell entities rendered the services at issue – not Humble – and that Humble has no assignments from

---

*Ins. Co.*, No. CIV. A. 93-4952, 1994 WL 361515, at *4 (E.D. Pa. July 5, 1994) (rejecting plaintiff's claim for reimbursement to $72,167 bill where provider accepted $6,439 as payment in full and "at no point did plaintiff ever become liable to [the provider] for $72,167.00."); *Bloebaum vs. Great Am. Life Ins. Co.*, 734 S.W.2d 539, 540–41 (Mo. Ct. App. 1987) (insurer has no obligation to pay where insured's medical expenses had been waived and had no obligation to pay)).

    [4] Dkt#238 at 13.  As recently as last week, a district court in Colorado granted summary judgment in favor of Cigna in a similar fee-forgiving case, finding that Cigna's interpretation of plan documents and decision to reduce benefits based on evidence of what members were obligated to pay was not an abuse of discretion. *See* Order Granting in Part and Denying in Part Motions for Summary Judgment, *Arapahoe Surgery Ctr, LLC et al. v. Cigna Healthcare, Inc. et al.*, No. 13-3422 (D. Colo. Mar. 21, 2016), ECF No. 160 at 23-25; *see also id.* at 24 ("Even viewing these facts in the light most favorable to the ASCs, and considering Cigna's conflict of interest for those plans that it insures, the Court finds that Cigna's decision to reduce these payments was not unreasonable and was within its discretion. As such, Cigna's decision to reduce payments on the ASCs' claims must be upheld for those plans that are subject to abuse of discretion review. Cigna's Motion is therefore granted as to those plans."). In *Arapahoe Surgery*, the district court further found that "for those claims on which Cigna chose to pay nothing, Cigna's decision was reasonable only if it was supported by substantial evidence that the patients were "not obligated to pay or . . . not billed" for *anything at all. Id.* at 24 (emphasis in original).  In the present case, Cigna specifically requested Humble to provide evidence of member obligations on the claims it submitted.  When Humble refused, and the members did not respond to Cigna's patient surveys, Cigna denied the claims. Importantly, Cigna explained to Humble that it could provide evidence of member responsibility at any time and Cigna would reprocess the claim.  *See* Dkt#238 at 7-11.  On this record, Cigna's actions cannot be judged an abuse of discretion. *See Arapahoe Surgery*, No. 13-3422, ECF No. 160 at 24 (citing *Adamson v. UNUM Life Ins. Co. Of Am.*, 455 F.3d 1209, 1214 (10th Cir. 2006) ("The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole. . . . In applying this standard of review, we consider the evidence before the plan administrator at the time he made the decision to deny benefits.")).

    [5] *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92–93 (2d Cir. 2000) (stating that where both the claim administrator and a claimant "offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control.").

the shell entities to submit bills for their services.[6]  On this proof alone, Humble loses its case and is entitled to no fees.

5.      Humble's analysis of the *Bowen* factors mischaracterize Cigna's factually-correct investigation and legally-correct-plan interpretation as culpability and bad faith while grossly disregarding the fact that it was Humble – not Cigna – that engaged in culpable and bad faith conduct.  Cigna definitively established at trial that Humble's business practices were improper, illegal, and committed with a conscious disregard to Cigna's plans and members.  The trial record could not be more clear.  Despite this, Humble contends that Cigna's position lacked merit and that Cigna "concocted an indefensible plan interpretation and used it as a means to deny claims and bring a lawsuit."[7] Remarkably, however, Humble also contends that this case presented "novel and difficult ERISA questions, including whether Cigna's interpretation of the plan was legally correct."[8]  This admission contradicts Humble's position that Cigna knew it had no legal leg to stand on but went forward with litigation anyway.  If Cigna's plan interpretation was so indefensible, why did it take nine days of trial and fifteen witnesses for this case to resolve?  If anything was indefensible, and even ridiculous, it was Humble's presentation of its case as a skittish version of West Side Story.

6.      Humble further contends that "[t]o get paid, [it] had to refute Cigna's persistent plan interpretation, which led Humble to incur significant legal expenses."[9]

---

[6] Dkt#238 at pp. 23-24.

[7] Dkt#246 at 10, 7.

[8] *Id.* at 13.

[9] *Id.*

Wrong.  All Humble had to do was operate like an honest hospital, charge Cigna members their full out-of-network cost share, and be forthright with Cigna and furnish evidence of such obligations in response to Cigna's repeated requests.  Humble knew this, and, had it done so, this entire litigation would have been avoided.  This case is the product of Humble's own making.  As a result, Humble achieved zero success on the merits and is entitled to zero fees.[10]

7.      Even assuming that Humble somehow meets the threshold requirement to be entitled to an award of attorneys' fees, Humble fails to prove how the underlying legal services performed by its counsel were reasonable and necessary to the litigation.  Humble summarily asserts that counsel from two different law firms expended 6,516.4 hours in total time on this matter.  But Humble submits no proof of its counsel's detailed billing records showing the nature and type of legal tasks performed or the number of hours expended on each task.[11]  *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995) (reducing district court's award because claimant failed to provide detailed billing records and stating that the claimant must provide the court "with sufficient information to determine whether all of the amounts requested were reasonably expended on this

---

[10] Humble's contingency fee arrangement with Susman Godfrey further demonstrates that Humble should not recover attorneys' fees if it obtains no recovery on the merits.  But even if Humble obtains a recovery on the merits, Humble does not disclose the percentage of the recovery it agreed to, leaving the Court with no way to measure the reasonableness of Humble's requested fees to the amount Susman Godfrey expected when it accepted the case.  *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1057 (5th Cir. 1998) ("The presence of a pre-existing fee arrangement may aid in determining reasonableness [because] [t]he fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectation when he accepted the case.").  Humble is not entitled to attorneys' fees because it did not prove its case.  It also fails to prove its contingency fees, which provides an additional basis to deny attorney's fees.

[11] By contrast, Cigna's counsel submitted billing records reflecting detailed task entries of the services each individual on Cigna's legal team performed, the date on which the services were performed, and the number of hours expended on each task over the course of a two-and-a-half-year period.

6

litigation" and that "[t]he district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review."). Nor did Humble submit evidence that its counsel exercised billing judgment by writing off hours as unproductive, excessive, or redundant.[12] *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam) ("Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."). Unlike Cigna, Humble submits no billing records at all but instead states that they are "available for submission to the Court for review *in camera*."[13] In the absence of proper documentation, this Court cannot adequately judge the reasonableness or necessity of the work performed by Humble's counsel in this matter.[14]

8.     More importantly, Humble fails to prove how the underlying legal services performed by its counsel were reasonable and necessary to the litigation given Humble's proven track record of procedural shenanigans and discovery abuse, which needlessly prolonged and increased the costs of litigation. For example, Cigna's counsel was forced to spend endless hours counseling Cigna and its plan sponsors regarding Humble's continuing procedural efforts to drag plan sponsors into unnecessary litigation. A year

---

[12] Humble claims that it is not seeking $82,000 in purported fees for time expended by timekeepers from Susman Godfrey who billed less than 100 hours, but it submits no evidence that this reduction was the result of billing judgment. Humble also claims no reduction at all for work performed by timekeepers from Pierce & O'Neill. By contrast, Cigna's submitted evidence that its legal team exercised considerable billing judgment by writing off 1,066 hours amounting to over $325,000 in fees and by extending a 10% discount to Cigna on all billed fees as a professional courtesy to Cigna.

[13] Dkt#246-1 at ¶ 5; Dkt#246-2 at ¶ 5.

[14] *See Leroy v. City of Houston (Leroy II)*, 906 F.2d 1068, 1080 (5th Cir. 1990) (striking hours as "not illuminating as to the subject matter" or "vague as to precisely what was done"); *Leroy v. City of Houston (Leyroy I)*, 831 F.2d 576, 585-86 (5th Cir. 1987) (reversing when district court accepted all hours from records that were "scanty," completely missing, or lacking in explanatory detail).

after this case was filed, Humble filed a motion for leave to join 114 plan sponsors as third party defendants.[15] Cigna was forced to prepare and file a response opposing Humble's motion on the grounds that it was a needless effort to expand and complicate the scope of litigation; the Court agreed and quickly denied Humble's motion.[16]  Humble then filed a separate federal lawsuit against fifty-six of the these plan sponsors; but when Humble learned that the case had been assigned to Judge Hughes, it quickly filed a notice of dismissal.[17]  Undeterred, Humble then served non-party subpoenas on the same fifty-six plan sponsors harassing them for documents, which Cigna had already produced.  Cigna was forced to file a motion to quash the non-party subpoenas, which the Court granted.[18] Cigna was then forced to file another motion for relief from Humble's continuing efforts to harass plan sponsors, this time by sending letters to the sponsors and their members implying that Cigna had improperly refused to pay Humble, misinforming members about Cigna's legal rights, and demanding that Cigna members pay Humble for the full cost of the services.[19]  Humble opposed Cigna's motion despite Cigna's request that Humble retract the letters since any amount owned between Cigna and Humble was an issue to be determine in this litigation.[20]  While the Court elected not to intervene, Cigna's counsel was

---

[15] *See* Dkt#49.

[16] *See* Dkt#50; Dkt#52.

[17] *See Humble Surgical Hosp., LLC v. Altria Med., Dental and Retiree Life Benefits Plan for Salaried Employees, et al.*, No. 14- 3586 (S.D. Tex., filed Dec. 16, 2014), ECF Nos. 1, 4, 5, & 6.

[18] *See* Dkt#71; Dkt#81.

[19] *See* Dkt#109.

[20] *Id*; *see also* Dkt#114; Dkt#118.

HOU:3657743.1

required to expend time an effort counseling Cigna and its plan sponsors and members regarding Humble's needless and harassing campaign.

9.     Humble's conduct in discovery was even worse.  For example, Cigna was forced to file a response opposing Humble's petty motion to compel immaterial documents from Cigna, despite the fact that Cigna's counsel told Humble's counsel that Cigna was actively working to gather the requested documents and that Humble could not fairly represent to the Court that the parties were unable to resolve the issue without court intervention; the Court agreed and denied Humble's motion.[21]  And most significantly, Cigna was forced to file a motion for continuance over Humble's vigorous opposition after Humble dumped 70,000 pages of documents on Cigna (roughly 80% of Humble total document production volume in the case), which Humble had refused to produce for over a year despite Cigna's repeated inquiries.[22]  Humble never provide an excuse or explanation for its discovery abuse, and instead attempted to deflect attention from its bad acts by casting blame on Cigna.[23]  As a result, the Court granted a short continuance, which would have been avoided entirely had Humble simply complied with its discovery obligations and produced the documents when initially requested.[24]  Humble's procedural and discovery antics should be credited against Humble in assessing the reasonableness and necessity of attorneys' fees if any should be awarded to Humble.

---

[21] *See* Dkt#88; Dkt#91; Dkt#101.

[22] *See* Dkt#122.

[23] *See* Dkt#130.

[24] Dkt#132.

10.     Humble attempts to mask its bad behavior by not mentioning it and by casting further blame on Cigna.[25]   Humble points to just two instances in which it claims to have been required to filed motions to compel but avoids mentioning (in standard Humble form) its own behavior leading up to those motions.  For example, Humble claims it had to file a motion to compel fact and expert depositions, contending that Cigna reneged on its "agreement" to produce its experts for deposition.[26]   Notably, Humble leaves out the fact that it filed its motion just one day before the extended discovery deadline imposed after Cigna's motion for continuance, which Humble vigorously opposed.   Humble also fails to mention that the parties never reached any express "agreement" to extend the discovery deadline for fact and expert witness depositions.[27] Despite having already deposed all of Cigna's main fact witnesses, Humble waited until the 11th hour to compel further depositions and then blamed Cigna when the clock ran out.

11.     Humble also claims it was required to file a motion to compel non-party Multiplan to provide pricing information on Humble's benefit claims and that Cigna objected to this relief.[28]   Cigna does not control Multiplan and had no control over Multiplan's compliance with Humble's subpoena.   Moreover, Cigna opposed Humble's motion because it was filed after the October 30, 2015, discovery deadline and nearly a year after Humble became aware that Cigna has used Multiplan to re-price Humble's

---

[25] *See* Dkt#246 at 13.

[26] Dkt#246 at 13.

[27] Dkt#139.

[28] Dkt#246 at 13; *see also Connecticut Gen. Life Ins. Co. et al. v. Humble Surgical Hosp.*, No. 15-10121 (N.D. Ill. filed Nov. 6, 2015), ECF No. 2.

claims.[29]   In reality, Humble's late motion stemmed from its own persistent inability to understand the reimbursement benefits for the claims at issue.   Humble's incompetence was shown at trial through the testimony of Humble's retained expert, Charlotte Kohler, which revealed a series of evolving opinions offered through no less than five expert reports, three of which were issued during and after trial.[30]   Humble's delay and incompetence, both products of Humble's own making, not Cigna's, should be credited against Humble in assessing the reasonableness and necessity of attorneys' fees if any should be awarded to Humble.

12.   Based on the foregoing, Humble's request for attorneys' fees should be denied in its entirety or, at a minimum, substantially reduced to properly account for Humble's failure to prove that such fees are for legal services that were reasonable and necessary to the litigation.

---

[29] On December 31, 2014, Cigna served the expert rebuttal report of Michael Battistoni stating that Cigna had caused Multiplan to re-price Humble's benefit claims using reimbursement methodologies that would have been used had Humble not engaged in fee forgiving.

[30] Dkt#228 (providing evolution of expert reports by Charlotte Kohler).

HOU:3657743.1

Respectfully submitted,

**ANDREWS KURTH LLP**

By: ___*s/ John B. Shely*_____

      **John B. Shely**
      State Bar No. 18215300
      Southern District No. 7544
      **Laura Trenaman**
      State Bar No. 00798553
      Southern District No. 23815
      **Brian C. Pidcock**
      State Bar No. 24074895
      Southern District No. 1654553
      600 Travis, Suite 4200
      Houston, Texas 77002
      (713) 220-4105 (JBS)
      (713) 220-4783 (LT)
      (713) 220-3916 (BCP)
      jshely@andrewskurth.com
      ltrenaman@andrewskurth.com
      brianpidcock@andrewskurth.com

      **ATTORNEYS FOR PLAINTIFFS**
      **CONNECTICUT GENERAL LIFE**
      **INSURANCE COMPANY and**
      **CIGNA HEALTH AND LIFE INSURANCE**
      **COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

On March 29, 2016, the foregoing document was electronically filed with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the CM/ECF system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.

<u>s/ Brian C. Pidcock</u>

Brian C. Pidcock

13

HOU:3657743.1