UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, *et al.*, | § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-3291 |
| | § | |
| HUMBLE SURGICAL HOSPITAL, LLC, | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

This suit was brought by Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, "Cigna") against Humble Surgical Hospital, LLC ("Humble"), to recover alleged overpayments made to Humble for out-of-network healthcare services rendered at its facility to members/patients of healthcare benefit plans administered and/or insured by Cigna.   According to Cigna, the overpayments are a result of Humble's fraudulent billing practices and/or scheme to defraud private payors, such as Cigna, by engaging in prohibited practices, namely routinely waiving members' financial responsibility under the terms of their plans and paying kickbacks to hospital physician-owners for their unlawful patient referrals.   As a result of Humble's alleged scheme to defraud, Cigna has commenced the instant suit against it, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and state common law, seeking reimbursement of all overpayments allegedly made to Humble.

Specifically, Cigna asserts causes of action against Humble for fraud, money had and received, negligent misrepresentation, unjust enrichment, equitable relief under ERISA § 502(a)(3), injunctive relief, declaratory relief, exemplary damages and attorneys' fees.   With

1

respect to its claim for declaratory relief, Cigna seeks a declaratory judgment that Humble has violated various Texas statutes relative to its billing of medical services, entitling it to recoup all overpayments paid to Humble. With regard to its claim for injunctive relief, Cigna requests that Humble be enjoined from: (a) charging unreasonably excessive fees and waiving patient responsibility for its out-of-network services or making other promises to induce Cigna's members to use its facilities; (b) balance billing Cigna's members for unreasonable fees; and (c) fee-splitting its hospital facility fees with its physicians, especially those having an ownership interest in Humble, for their referral of patients to Humble for surgery.

Cigna maintains that since August 2010, Humble has employed a billing scheme that has caused it to pay more than its member/participant/insured's required share under the various benefit plans, while permitting plan members to pay virtually nothing at all or, at best, nominal amounts. As such, Cigna intimates that it is also entitled to equitable restitution under state common law, given Humble's "excessively" large claim amounts and fraudulent fee-splitting practice. Therefore, Cigna contends that its claim for equitable relief should be granted, including imposing a constructive trust on physicians' fees improperly obtained and levying an injunction precluding the disposition or transfer of identifiable funds. Cigna points out that, at all times material hereto, certain physicians, who participated in Humble's alleged fraudulent billing scheme, were "in-network" physicians under contract with it. Nevertheless, and in spite of their contractual obligations to Cigna, these physicians referred their patients to Humble, despite being well aware that Humble was an "out-of-network" facility.

Humble denies that Cigna is entitled to reimbursement of the overpayments alleged relative to its assigned benefit claims. Humble further asserts that Cigna failed to timely provide plan documents necessary for it to properly process and/or appeal its claims. As a consequence,

it asserts counterclaims against Cigna for, *inter alia*: (a) nonpayment of current member/patient's claims, underpayment of certain claims, and delayed payment of all claims in violation of ERISA § 502(a)(1)(B); (b) failure to provide a full and fair review under ERISA; (c) breach of fiduciary duties of loyalty and care under ERISA; and (d) penalties pursuant to ERISA § 502(c).

On January 11, 2016, this Court presided over a bifurcated bench trial addressing only the ERISA claims and defenses presented by the parties in this case over a span of nine days. During this time, the Court received testimonial evidence, documentary evidence, written briefs and arguments of counsel. On February 3, 2016, the parties presented their closing arguments to the Court. After a conclusion of the trial and after having carefully reviewed the parties' submissions, the record, the evidence admitted, the arguments of counsel and the applicable law, the Court sets forth its findings of fact, legal analysis, and conclusions of law in this Memorandum Opinion and Order. The Court will also address Humble's motion for judgment brought pursuant to Rule 52(c) of the Federal Rules of Civil Procedure.

Based on the analysis and reasoning set forth herein, the Court determines that Cigna's claim(s) for reimbursement of overpayments made pursuant to ERISA and/or common law fail, as a matter of law; therefore, Humble's Rule 52 motion for judgment should be **GRANTED**. The Court further concludes that Cigna's defenses to Humble's ERISA claims fail and Humble is entitled to recover damages under § 502(a)(1)(B)[1] and penalties under § 502(c)(1)(B).

---

[1] One or more of the ERISA plans at issue do not appear to expressly require exhaustion. However, to the extent that an exhaustion of administrative remedies is required by one or more of the plans, the claims at issue are "deemed" exhausted under 29 C.F.R. § 2560.503-1(l), given Cigna's failure to follow claims procedures.

## II.  FACTUAL BACKGROUND

### A.  Cigna's Administrative Services Only Agreements

Cigna is a managed healthcare company and, as a fiduciary, manages both ERISA welfare benefit plans and private policies for health insurance.  Its management responsibilities include providing third-party administrative claims review services for self-funded plans, including government entities, Health Maintenance Organizations ("HMOs") and group insurance policies maintained by private employers for the benefit of their employees and their dependents, generally pursuant to Administrative Services Only Agreements ("ASO Agreements").  Cigna distinguishes the services that it provides as claims administrator to plan sponsors pursuant to ASO Agreements from those it provides as plan administrator under non-ERISA plans.

The facts demonstrate that Cigna generally enters into private agreements with physicians and healthcare facilities thereby extending to them "in-network"[2] provider status.  According to Cigna, this status means that healthcare providers and facilities are permitted to engage in the practice of "steerage."  Steerage, according to Cigna, is a method by which physicians and facilities that maintain in-network status may refer patients to each other pursuant to in-network agreements.  Therefore, according to Cigna, referrals to and amongst physicians and facilities within the in-network community are permitted without fear of reprisal by state regulatory commissions that prohibit patient referrals for a fee.  According to Cigna, in-network status also protects members/patients from incurring excessive physician/facility charges that are often

---

[2] Out-of-network claims are distinguished by the fact that when members/patients obtain healthcare services from an out-of-network provider, members/patients are responsible for charges that the plan might not cover, or that exceed Cigna's reimbursement obligation to members/patients under the plan.

imposed when a member/patient uses an out-of-network physician or facility. Cigna's stated objective in offering in-network status is to keep the cost of healthcare at a minimum.

In addition to the services provided to in-network members, Cigna provides claim processing, on a limited benefits basis, for "out-of-network" facilities when a member/patient's plan permits "open access" to medical services. Such plans inform the member/patient that he/she may be required to pay a larger portion of the expenses, *i.e.*, higher deductibles, coinsurance and/or co-payments, when obtaining healthcare services or supplies at out-of-network facilities. Cigna's plan members, however, are generally incentivized to receive services from in-network providers because they are subject to paying lower coinsurance, deductibles and copayments for their services.

### B. Humble's Out-of-Network Facility

In August 2010, Humble, a physician-owned hospital, opened for business as an out-of-network facility. This meant that self-funded health benefit plan providers and certain providers of private policies of insurance could limit their member/patient reimbursement benefits to those covered by their respective plans if the member/patient chose to receive healthcare services at a facility like Humble. In this circumstance, a member/patient would be exposed to a "balance bill", *i.e.*, the balance remaining after the allowed amount has been paid under the plan. Such circumstances were not likely to occur where the member/patient received the same or similar healthcare services at an in-network facility. For this reason, Humble customarily obtained an "assignment of benefits" and a "personal guarantee" to cover any balance due for healthcare services. Specifically, its admissions form included both an irrevocable assignment and an assignment of insurance benefits to physician. (*See* Humble Ex. Nos. 300 – 816; *see also* 2591). The irrevocable assignment provides, in relevant part, as follows:

I irrevocably assign and transfer to the hospital all rights, title, and interest in any benefits payable and all causes of action against all insurance companies, benefits, services or products provided by the hospital, and I hereby appoint the hospital as my attorney in fact, with the power of substitution to sue or otherwise obtain payment of benefits from the responsible parties. This irrevocable assignment and transfer shall be for the purpose of granting the hospital an independent legal right of recovery against such responsible parties, but shall not be construed to be an obligation of the hospital to pursue any such right of recovery.

*Id.* at 2591. The assignment of insurance benefits to physician states:

I hereby assign all my rights, title, and interest in and to the basic and major medical benefits specified herein, that would otherwise be payable to me, to my physician(s) (including, but not limited to, my anesthesiologist(s), radiologist(s), pathologist(s) and emergency room physician/s and any other health care professional(s) who is providing professional services to me hereunder. Furthermore, I authorize separate payments to be made directly to such physician(s) and/or health care professional(s) if, and to the extent, they agree to accept this assignment of insurance benefits. I understand that I am financially responsible to such physician(s) and/or health care professional(s) if, and to the extent, they do not accept assignments of their party pay(s) and/or insurance benefits. In the event such physician(s) and/or health care professional(s) do accept assignments of third party payor(s), and/or insurance benefits, I understand that I am responsible for any and all charges not covered by this assignment of benefits.

*Id.* Further, the top of each admissions form included a paragraph, entitled, "Financial Responsibility" which expressly states:

I agree to pay the Humble Surgical Hospital, LLC, Humble, Harris County, Texas ("the hospital") for all services and products administered to the patient. I understand and acknowledge that any monies collected by the hospital prior to the date services are rendered or products are administered by the hospital will be applied as a deposit towards total charges assessed for the patient's care. The deposit shall not be considered payment in full for services rendered or products administered by the hospital. If I participate in a manages [sic] care plan, such as an HMO or a PPO, I promise to pay for any services or products administered to the patient that are not covered under the plan as a result of inaccurate, incomplete or untimely patient information provided by me to the hospital and any out-of-network charges.

*Id.* All claims submitted by Humble to Cigna contain a certification that indicates that Humble acquired an assignment of benefits for each claim presented. (*See* Dkt. No. 236, Kohl, Trial Tr. at 77:23 – 78:3 (01/21/16)).

Shortly after Humble opened for business it began submitting claims for reimbursement to Cigna based on services provided to members/patients covered under plans either insured and/or administered by Cigna. Prior to October 2010, Cigna processed many, if not all, of Humble's claims through Multiplan or Viant, two third-party repricing entities that determined "allowable" amounts through negotiated pricing agreements.[3] For several months, Cigna paid Humble's claims based on negotiated repricing agreements between Humble and Multiplan or Viant, essentially, without dispute. In October of 2010, however, after Cigna recognized what it referred to as exceedingly large-dollar claim amounts, it opted to review Humble's claims in-house and directed incoming claims to its Special Investigations Unit ("SIU") for investigation, processing and payment.

### C. Cigna's SIU's Probe

The SIU method of claim processing continued into 2011 and persisted well through 2014. Nevertheless, it was not until April/May of 2011, that Cigna officially commenced a formal investigation and began "flagging" Humble's claims. Flagging Humble's claims meant that Humble's claims would continue to by-pass Cigna's claims processing department and its usual claims processing methods.

Albert Ramirez, a Cigna corporate representative, contacted Cigna's claims processing department and Cigna executives concerning Humble's claim for patient, D.W. While pondering

---

[3] Both Multiplan and Viant negotiated repricing agreements on Humble's claims pursuant to Cigna's "cost containment" designation. Under Cigna's ASO Agreements, Cigna designated self-insured plan claims as cost containment claims subject to negotiation. Cigna earned a portion of its income from the "savings" realized by this method.

patient D.W.'s claim, Cigna received at least two other large-dollar claims for surgeries performed at Humble that were not of an exigent nature. Generally, emergency services provided at out-of-network provider facilities are paid at 100% of charges, unlike non-emergency services, according to the deposition testimony of Robert Patterson, a Cigna witness. Cigna also discouraged in-network physicians from using out-of-network facilities for non-emergency surgeries in order to avoid high-dollar charges. During its investigation, Cigna determined that many of the physicians who performed non-emergency surgeries at Humble had in-network status agreements with Cigna at the time the non-emergency surgeries were performed. This practice, Cigna contends, not only violated the agreements between Cigna and the physicians, but also exposed Cigna to large-dollar claims.

From August 2, 2010 to March 25, 2014, Humble allegedly caused Cigna to overpay certain claims for services provided to members/patients. According to Cigna, its obligation was to pay the lesser of the physician or facility's usual charges, or the maximum reimbursable charge ("MRC").[4] Cigna contends that Humble inflated its claim amounts so as to obscure the fact that it was paying "kickback" fees to physicians who referred their patients to Humble. [5] Cigna also contends that Humble engaged in a fee-forgiving practice by consistently waiving the "patient cost-share" of Humble's billed charges--a practice that it contends violates federal and state laws. To this end, Cigna asserts that Humble, nevertheless, represented, in the claim forms submitted to Cigna, that it was collecting the member/patient's full cost-share of the billed

---

[4] The plans define the "MRC" as the amount charged for the service provided but only to the extent that the charge is consistent with the "usual and customary" charge in the area for the same service, taking into account unusual circumstances or complications requiring additional time, skill and experience in connection with the particular service provided.

[5] Cigna's claim that Humble engaged in a fee-splitting arrangement with physicians is based on Use Agreements ("UAs") between Humble and the physicians or the physicians' entities. According to Cigna, the UAs permitted Humble to pay illegal referral fees to the physicians who used Humble's facilities under the terms of the UAs, which payments it terms as "kickbacks."

charges, when in fact it was not. Lastly, Cigna disputes the accuracy of Humble's UB-04 claim forms and asserts that they were fraudulently prepared.

The evidence shows that Cigna had no database or automated system for processing claims or for recognizing large-dollar claim amounts. Nevertheless, Cigna bypassed its claims processing department and, after October 2010, began processing Humble's claims through its SIU. Processing Humble's claims through SIU was unusual and cumbersome, particularly in light of Cigna's ongoing investigation and the fact that Cigna had previously processed Humble's claims utilizing the services of third-party vendors, such as Multiplan and Viant. Such vendors generally negotiated Humble's claims based on the usual and customary rate ("UCR").[6] Negotiations by Viant, regardless of the plan requirements, were targeted at 500% of the Medicare allowable. Claims processed through Viant usually resulted in an allowed amount that averaged 70% of Humble's billed charges. Cigna ended this practice in late 2010, when it received member/patient D.W.'s claim.

In June 2011, Cigna conducted a survey by sending letters/questionnaires to members/patients who had received services at Humble and whose claims had been adjudicated and paid by Cigna. The survey yielded insufficient responses and Cigna increased the number of letters/questionnaires in the survey, thereby expanding its search. Based on approximately 113 member/patient responses, Cigna concluded that Humble was engaged in a "fee-forgiving" practice, which it contends accounts for Humble's large-dollar claim amounts. Cigna then accused Humble of increasing the amount of its claims so that, even after negotiations, Humble would still receive an exceedingly large reimbursement.

---

[6] The UCR charge for a service or supply is the lowest of or the "lessor of": (a) the provider's usual charge for furnishing it; (b) the charge an administrator determines to be appropriate, based on factors such as the cost of providing the same or a similar service or supply and the manner in which charges for the service or supply are made; or (c) the charge the administrator determines to be the 80th Percentile made for that service or supply.

Fee-forgiving, according to Cigna, meant that Humble intentionally failed to collect the member/patient's share of the cost for the healthcare services, specifically the co-pay and/or co-insurance. On multiple occasions, Cigna contacted Humble and inquired as to whether Humble had enacted such a policy. Cigna also demanded documents from Humble specifically concerning the relationship between Humble and its physician-owners, as a condition for payment. In fact, on one such occasion, August 18, 2011, Cigna forwarded an inquiry to Humble seeking an explanation of Humble's collection policy for member/patient's deductibles, co-pays and/or co-insurance. It requested patient ledgers on ten (10) members/patients who had received healthcare services at Humble.

On September 19, 2011, Humble responded to Cigna's inquiry, via letter of the same date, informing Cigna of its practices and further providing it with a summary chart that included Humble's "collection notes" concerning each member/patient that was the subject of Cigna's inquiry. In its response, Humble expressly stated: "[I]t is the policy of [HSH] to hold its patients responsible for the full payment of their respective out-of-network responsibilities and obligations for services rendered at our facility." (*See* Cigna Ex. No. 14.) Humble did not, however, provide Cigna with any proprietary information concerning its physician-owners. Nonetheless, in spite of the information provided, Cigna maintained its stance that Humble was engaged in a fee-forgiving protocol and refused to process Humble's claims as it had in the past, asserting that Humble had failed to provide the specific information that it had requested and needed in order to complete the processing of its claims.

From December 2010 to April 2014, Humble's claims continued to languish in SIU and, for the most part, remained unpaid. Cigna asserts that the claims were not paid because it either, never received the information that it requested from Humble, or noticed that the member/patient

10

had not fully paid his/her co-pay or co-insurance. Cigna took the position that when it received notice of additional payment, it "re-adjudicated" Humble's claims utilizing what it referred to as a "proportionate share analysis." [7] Notwithstanding the aforementioned, Humble's 595 claims, the subject of its counterclaims discussed herein, never fully met Cigna's documentation requirements. In fact, only those claims that satisfied Cigna's demand that co-payment and/or co-insurance be paid upfront were processed. Others were processed in accordance with Cigna's proportionate share analysis, and were paid proportionately.

### D. Cigna's Proportionate Share Analysis

Cigna, contrary to its normal protocol and in spite of its failure to give its member/patient's notice of the same, interpreted the exclusionary language in self-funded plans administered by it to mean that if a member/patient owed a deductible, co-pay or co-insurance, Cigna would either not pay at all, or pay a portion of the claim(s) based on the percentage-share that the member/patient had paid at the time the healthcare service was provided. Cigna's view, that a proportionate share analysis applies to Humble's claims, rest solely in its *own* interpretation of the "exclusionary"[8] provision found in most of the plans at issue in this case. Cigna interprets the exclusionary language provision to mean that if the member/patient had no obligation to pay for the service, or was excused from paying a portion of the bill, Cigna,

---

[7] Cigna's proportionate share analysis, when applied to Humble's claims, meant that Cigna determined the percentage payable of the member/patient's bill by the amount the member/patient had paid or had been obligated to pay and used that percentage to determine the percentage that it would pay of its share. (*See* Cigna Ex. No. 15).

[8] The exclusionary language from the plans relied upon by Cigna to condition coverage upon a member's/patient's payment states, in pertinent part, as follows:

> Additional coverage limitations determined by plan or provider type are shown in the Schedule. Payment for the following is specifically excluded from this plan: . . . charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under this plan.

(*See* Cigna Ex. No. 27).

likewise, is excused from making full payment under the terms of the plan. (*See* Cigna Ex. Nos. 27, 64 & 199). At some point during the course of its dispute with Humble, Cigna advised members/patients of its legal interpretation and further informed them that if Humble did not collect the full deductible, co-pay or co-insurance at the time of their admission, members/patients had no obligation to pay any balance. Humble maintains that these and other similar communications by Cigna frustrated its collection efforts and further complicated its claim processing with respect to members/patients covered under plans administered and/or insured by Cigna.

On November 7, 2013, Cigna commenced the instant suit against Humble for overpayment of past claims, seeking $5,121,137[9] in overpayments. On December 4, 2013, Humble filed counterclaims pursuant to ERISA and state common law based on Cigna's alleged abuse of discretion. Humble asserts that when it submitted claims for reimbursement during the relevant period, Cigna failed to process the claims pursuant to the terms of the plans, utilizing either UCR or MCR. Humble points out that Cigna never challenged its claims on the basis that the claims sought reimbursement for services that were not provided, not medically necessary, or that were negligently performed. Humble contends that Cigna has acted in bad faith setting out on a course to discredit Humble as a reputable surgical hospital. Additionally, Humble claims that Cigna: (a) violated its fiduciary duties under the plans; (b) abused its discretion in processing Humble's claims in the manner that it did; and (c) while serving as a *de facto* plan administrator, refused to provide pertinent plan information and documents to Humble, pursuant to ERISA § 502(c). Therefore, Humble seeks $11,392,273 in unpaid and/or underpaid ERISA

---

[9] In accordance with Cigna's expert, Mary Beth Edwards ("Edwards"), when performing a claim-by-claim, plan-by-plan analysis using a proportionate share analysis, Humble was overpaid by $5,600,000. A separate analysis, however, conducted by Michael Battistoni ("Battistoni"), Cigna's non-retained industry expert, estimates Cigna's net overpayment at $5,121,137.

12

claims[10] pursuant to § 502(a)(1)(B), ERISA penalties in the amount of $10,115,600 from October 25, 2013 through June 2, 2014, pursuant to § 502(c), and attorney's fees.

## III.  LEGAL STANDARDS

### A.  Standard of Review Under Fed. R. Civ. P. 52(c)

Humble moved for the dismissal of Cigna's suit at the end of Cigna's presentation of evidence pursuant to Rule 52(c) of the Federal Rules of Civil Procedure.  Rule 52(c) provides that "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c).  To this end, a court entering judgment pursuant to Rule 52(c) "must find the facts specially and state its conclusions of law separately" as denoted in Rule 52(a).  Fed. R. Civ. P. 52(a)(1).  However, case law interpretation of Rule 52(a) "does not require that the district court set out [its] findings on all factual questions that arise in a case." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1054 (5th Cir. 1997) (citing *Golf City, Inc. v. Wilson Sporting Goods Co., Inc.*, 555 F.2d 426, 433 (5th Cir. 1977)).

Nor does it demand "punctilious detail [or] slavish tracing of the claims issue by issue and witness by witness." *Century Marine Inc. v. U.S.*, 153 F.3d 225, 231 (5th Cir. 1998) (citing *Burma Navigation Corp. v. Reliant Seahorse M/V*, 99 F.3d 652, 656 (5th Cir. 1996) (quoting *Schlesinger v. Herzog*, 2 F.3d 135, 139 (5th Cir. 1993)) (other citations omitted). Rather, a court's "[f]indings [are sufficient to] satisfy Rule 52[(a) and (c)] if [the memorandum] affords the reviewing court a clear understanding of the factual basis for the trial court's decision." *Interfirst Bank of Abilene, N.A. v. Lull Mfg.*, 778 F.2d 228, 234 (5th Cir. 1985) (citing *Lujan v.*

---

[10] Humble seeks to recover on 595 claims compromised of 584 out-patient claims and 11 in-patient claims.  The 595 claims are not the entirety of Humble's alleged losses.  Humble proffers that the 595 claims are claims where the amount withheld exceeds $5,000, and for which Cigna paid ten percent or less of the usual and customary charges.

*New Mexico Health & Soc. Servs. Dep't,* 624 F.2d 968, 970 (10th Cir. 1980), citing *Kelley v. Everglades Drainage Dist.*, 319 U.S. 415, 422, 63 S. Ct. 1141, 1145, 87 L. Ed. 1485 (1943); *Stanley v. Henderson*, 597 F.2d 651 (8th Cir. 1979)). Within these parameters, the Court addresses the critical issues raised by the parties' motion for judgment concerning Cigna's case and Humble's counterclaims.

### B.   Standard of Review Under ERISA § 502(a)(1)(B)

The United States Supreme Court has generally held that the denial of a right to benefits under an ERISA plan is reviewed under a *de novo* standard. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed.2d 80 (1989); *see also Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004). However, where the benefit plan expressly confers the "discretionary authority to determine eligibility for benefits or to construe the terms of the plan" on a claims administrator or fiduciary, the applicable standard of review is abuse of discretion. *Firestone*, 489 U.S. at 115, 109 S. Ct. 948; *Baker*, 364 F.3d at 629; *see also Gellerman v. Jefferson Pilot Fin. Ins. Co.*, 376 F. Supp.2d 724, 731 (S.D. Tex. 2005) (citing *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999)). Here, the various plans at issue vest the administrator and/or its assigns with discretionary authority to determine eligibility for benefits and thus, the standard of review applicable is the abuse of discretion standard.

"Under the abuse of discretion standard, '[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.'" *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 - 98 (5th Cir. 2007) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)). The substantial evidence rule requires "more than a scintilla, less than a preponderance, and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* Under this standard, a decision is arbitrary when made "without a rational connection between the known facts and the decision or between the found facts and the evidence." *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996)).

Ordinarily, when resolving factual controversies, the court's review is confined "to the evidence before the plan administrator." *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008) (internal citations omitted); *see also Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 639 (5th Cir. 1992). Such review is not confined to the administrative record, however, when determining whether a claims administrator abused its discretion in interpreting the plan's terms and making a benefit determination. *Wildbur*, 974 F.2d at 639.

The Fifth Circuit usually employs a two-step analysis when determining whether a claims administrator has abused its discretion in construing the plan's terms. *James v. Louisiana Laborers Health and Welfare Fund*, 29 F.3d 1029, 1032-33 (5th Cir. 1994). First, the court must determine whether the claims administrator's interpretation was the legally correct interpretation. *Id.* Second, if the claims administrator's interpretation was not the legally correct interpretation, then the court must consider whether the administrator's interpretation amounts to an abuse of discretion. *Id.* However, "if the administrator's interpretation and application of the plan is legally correct, then [the] inquiry ends because obviously no abuse of discretion has occurred." *Baker*, 364 F.3d at 629 – 30 (citing *Spacek v. Maritime Ass'n*, 134 F.3d 283, 292 (5th Cir. 1998)).

Where, as here, the role of the claims administrator presents a conflict of interest -- Cigna evaluates claims for benefits, pays benefits and reimburses itself, based on what it "saved" the plan sponsors -- the Court must consider this conflict as a factor in determining whether Cigna abused its discretion in the manner that it processed Humble's claims. *Firestone*, 489 U.S. at 115, 109 S. Ct. 948 (citations omitted). However, the conflict of interest created by a claims administrator's dual role is "but one factor among many that a reviewing judge must take into account." *Glenn*, 554 U.S. at 116, 128 S. Ct. at 2351. Such a conflict does not necessitate that a court "create special burden-of-proof rules, or other special procedural or evidentiary rules" focused on the party with the apparent conflict of interest when other rules or standards are applicable. *Id.*

## IV.    ANALYSIS AND DISCUSSION

### A.    Cigna's Claims for Equitable Relief Under ERISA § 502(a)(3)

As a threshold matter, Cigna asserts a claim for equitable reimbursement of overpayments pursuant to ERISA § 502(a)(3). Specifically, Cigna seeks equitable restitution in the amount of $5,121,137. The evidence shows that this sum represents the difference between the benefits that Cigna paid and the benefits that the members/patients were contractually entitled to receive under the plans. Cigna maintains that based on Humble's fraudulent billing practices and/or scheme to defraud it, by engaging in prohibited practices, namely routinely waiving members/patients' financial responsibility under the terms of their plans and paying kickbacks to hospital physician-owners for their unlawful patient referrals, this Court should impose a constructive trust and/or equitable lien against Humble's assets pursuant to ERISA § 502(a)(3). Cigna also asserts causes of action against Humble for fraud, money had and received, negligent misrepresentation and unjust enrichment premised on Humble's fee splitting

16

practice with referring physicians. Further, it seeks exemplary damages, attorneys' fees, and a declaratory judgment that Humble has violated various Texas statutes relative to its billing for medical services and that Cigna is entitled to recoup all overpayments made to Humble. Finally, Cigna requests that Humble be enjoined from: (a) charging unreasonably excessive fees and waiving patient responsibility for its out-of-network services or making other promises to induce Cigna's members to use its facilities; (b) balance billing Cigna's members for unreasonable fees; and (c) fee-splitting its hospital facility fees with its physicians, especially those having an ownership interest in Humble, for their referral of patients to Humble for surgery.

Humble seeks a dismissal of this aspect of Cigna's suit. The dismissal of Cigna's suit, after being fully heard, requires a demonstration that Cigna has not made a favorable showing entitling it to recover because the facts and law do not support such a recovery. *See* Fed. R. Civ. P. 52(c).

Section 502(a)(3) provides that a fiduciary, such as Cigna, may bring a suit to enjoin acts that violate ERISA, or the terms of a plan, or to obtain other appropriate equitable relief that redresses violations of ERISA or enforces provisions of ERISA or terms of a plan. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006) (citing 29 U.S.C. § 1132(a)(3)). Consequently, Cigna must establish that the relief it seeks is equitable and available pursuant to ERISA. *Id.* Cigna asserts a claim under § 502(a)(3) against Humble seeking restitution of past "overpayments" that were purportedly made to Humble in contravention of the plans' terms. The issue of whether the relief Cigna seeks is both equitable and available necessarily hinges on the basis for Cigna's claims "and the nature of the underlying remedies sought." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 - 13 (2002) (internal citation omitted). The United States Supreme Court has repeatedly explained that the phrase "appropriate equitable

17

relief' within the meaning of § 502(a)(3)(B), is limited to "those categories of relief that were *typically* available in equity[.]" *Sereboff*, 547 U.S. at 361 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (emphasis in original)). Stated another way, a fiduciary seeking restitution of overpayments under § 502(a)(3) must demonstrate that the relief sought is equitable rather than legal. *See Knudson*, 534 U.S. at 212 - 13 ("[W]hether [a claim for restitution] is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought."). "Simply framing a claim [for restitution] as equitable relief is insufficient to escape a determination that the relief sought is legal." *Central States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk Inc.*, 756 F.3d 356, 365 (5th Cir. 2014) (citing *Knudson*, 534 U.S. at 210 – 11). Accordingly, since there is no dispute that Cigna qualifies as a fiduciary under ERISA,[11] applying the framework set forth above, this Court must determine if Cigna's claims for restitution of overpayments are equitable in nature under either the equitable lien by agreement or constructive trust rationale set forth in *Sereboff* or the tracing method set forth in *Knudson*.

### 1. Cigna's Claim for Equitable Relief Based on Lien by Agreement

Cigna maintains that the plans at issue in this case contain provisions authorizing it to recover overpayments of benefits. (*See* Cigna Ex. Nos. 25 & 28). Cigna contends that these provisions create an equitable lien on the specific assets that it conferred upon Humble, by virtue of Humble's assignments obtained from Cigna's members/patients. Humble argues that Cigna cannot seek recovery of any alleged overpayments made to it premised on an equitable lien by

---

[11] ERISA "provides that not only the persons named as fiduciaries by a benefit plan, but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets" is a fiduciary. *Mertens*, 508 U.S. at 251 (internal citations omitted).

agreement theory because no lien exists over any payments made by Cigna to it as a medical services provider.

"ERISA-plan provisions do not create constructive trusts and equitable liens by the mere fact of their existence; the liens and trusts are created by the agreement between the parties to deliver assets." *Health Special Risk*, 756 F.3d at 365. The evidence establishes that Cigna is not the plan sponsor of any of the plans that are the subject of this suit. Nevertheless, Cigna is bound by the terms of the plan documents in its attempt to recover any alleged overpayments. Courts must look to the plan documents to determine when an equitable lien is appropriate, whether by plan terms or by implication. *Id.* (citing *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1546 (2013) (holding that the plan's terms, not other equitable principles, control when seeking to enforce a lien by agreement); *see also Walker v. Brown*, 165 U.S. 654, 664 (1897).

Here, Cigna relies on a provision within many of its plan documents entitled, "Recovery of Overpayment," which provides, "When an overpayment has been made by Cigna, Cigna will have the right at any time to: recover that overpayment from the person to whom or on whose behalf it was made; or offset the amount of that overpayment from a future claim payment." (*See* Cigna Ex. Nos. 25 & 28). Indeed, the plan language permitting recoupment is contractual in nature and permits recovery of "some" funds from "plan members" to whom or "on whose behalf" an overpayment has been made. The "on whose behalf" phrase appears to be the operative language that permits Cigna to seek reimbursement for overpayments from a provider like Humble. However, this provision, standing alone, is insufficient to create a lien or constructive trust as it does not: mention the words "lien" or "trust"; state that any overpayment shall constitute a charge against any particular proceeds; give rise to a security interest in such proceeds; even suggest that a trust is being sought for Cigna's and/or the plan's benefit on any

particular provider payments; or advise of the need for any particular provider to preserve, segregate or otherwise hold such funds or proceeds in trust.

Cigna's own fact witness and non-retained industry expert, Michael Battistoni ("Battistoni"), buttressed this very fact. When questioned regarding the plan language that entitles or authorizes Cigna to recover any alleged overpayments from Humble, Battistoni testified as follows:

> Q. Mr. Battistoni, you had an opportunity to—you had an opportunity to review Cigna's Exhibit 25, correct?
>
> A. I believe so.
>
> Q. And this language that CIGNA's lawyers have extracted from the various plans at issue, correct?
>
> A. It appears to be, yes.
>
> Q. And CIGNA relies on this plan language for its overpayment claims, correct?
>
> A.  I believe this is one example, yes.
>
> Q. Based on your review of at least this selected language on overpayments, you don't see anything here about a lien on payments paid to providers, do you?
>
> A. A lien?
>
> Q. A lien.
>
> A. No, there is no verbiage about liening.

(*See* Dkt. No. 232, Battistoni, Trial Tr. at 91:9- 23 (1/14/2016)).  This fact is further substantiated by the language contained in the section preceding the "Recovery of Overpayment" section entitled, "Subrogation/Right of Reimbursement" under the heading, "Expenses For Which A Third Party May Be Responsible," which provides, in relevant part, as follows:

> If a Participant incurs a Covered Expense for which . . . another party may be responsible or for which the Participant may receive payment as described above . . . [t]he plan is [] granted a right of reimbursement from the proceeds of any recovery whether by settlement, judgment, or otherwise. The right of reimbursement is cumulative with and not exclusive of the subrogation right granted . . . but only to the extent of the benefits provided by the plan.

(*See* Cigna Ex. No. 28.). Of further significance is the fact that a subsection of this section expressly includes a provision, entitled "Lien of the Plan" which states, in pertinent part, the following:

> By accepting benefits under this plan, a Participant: ● grants a lien and assigns to the plan an amount equal to the benefits paid under the plan against any recovery made by or on behalf of the Participant . . . .[;] ● agrees that this lien shall constitute a charge against the proceeds of any recovery and the plan shall be entitled to assert a security interest thereon; [and] ● agrees to hold the proceeds of any recovery in trust for the benefit of the plan to the extent of any payment made by the plan.

(*Id.*)

This language, unlike that contained in the "Recovery of Overpayment" provision referenced in the preceding paragraphs, clearly expresses the intent to create a lien and/or constructive trust on particular funds, provides that the plan is entitled to assert a security interest in such funds, advises of the need to hold such proceeds in trust for the benefit of the plan and can reasonably be appreciated by a plan member or third party provider as asserting a lien or constructive trust. Therefore, the Court determines that Cigna has failed to establish that the "Recovery of Overpayment" provision contained in its plan documents creates a constructive trust or equitable lien by agreement. *See Central States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 157 (2d Cir. 2014) ("There is no equitable lien by agreement because there is no agreement between Central States and Gerber that 'specifically identified a particular fund, distinct from [Gerber's] general assets' nor 'a particular share of that fund to which [Central States] was entitled.'"); *Cigna v. Advanced Surgery Ctr. of Bethesda,*

*LLC*, Civil Action No. DKC 14-2376, 2015 WL 4394408, *8 - 10 (D. Md. July 15, 2015) (construing similar plan language contained in a Cigna plan and holding "[t]he language used in the Overpayment Provision cannot be understood by a plan member—or a provider that is not a party to the plan—as asserting an equitable lien or constructive trust on plan overpayments to providers.").

### 2. Cigna's Claim for Equitable Relief Based on the "Tracing" Method

Likewise, Cigna is not entitled to equitable restitution of any alleged overpayments based on the "tracing" method, as it cannot identify any specific *res* separate and apart from Humble's general assets. *See Health Special Risk*, 756 F.3d at 366 (reasoning that "*Sereboff* did not move away from any tracing requirement; it distinguished between equitable liens by agreement—which do not require tracing—and equitable liens by restitution—which do."). As the Court explained in *Knudson*, the basis for petitioners' claim is "that petitioners are contractually entitled to *some* funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable . . . but legal---the imposition of personal liability for the benefits that they conferred upon respondents." *Knudson*, 534 U.S. at 214.

During the course of the bench trial, Cigna submitted no evidence that the alleged overpayments are: (i) specifically identifiable; (ii) kept in separate accounts by Humble; or (iii) that they are separate and distinct from Humble's general assets. In fact, the evidence presented establishes quite the contrary. Jakob Kohl, Humble's corporate representative, testified that Humble does not maintain separate bank accounts for each surgery, patient or commercial payor. (*See* Dkt. No. 236, Kohl, Trial Tr. at 82:19 - 21; 82:22 - 83:2; (01/21/16)). More importantly, Kohl testified that no existing bank account maintained by Humble contains monies paid by Cigna dating back to April 2014. His actual testimony at trial is transcribed as follows:

> Q: If you assume that the last Cigna payment for which Cigna seeks money back in this case is April 2014, is there any bank account that would contain any Cigna money from that time frame?
>
> A: No.

(*Id.*, Trial Tr. at 83:3 - 7.)

In this case, Cigna makes only a bare assertion that the overpayments it seeks, which were purportedly made between 2010 and 2014, are still within Humble's possession and identifiable from Humble's general assets. Presumably, the burden of establishing that the overpaid benefits remain in Humble's possession rests with Cigna. *See Advanced Surgery Ctr. of Bethesda, LLC*, 2015 WL 4394408 at *9, n.5 (internal citation omitted). Such a bald assertion, without more, is insufficient to establish that the overpayments are specifically identifiable funds located in a separate account, paid by a specified third-party payor, such as Cigna, or that such funds are otherwise distinct from Humble's general assets so as to warrant Cigna's entitlement to equitable relief. The evidence presented at trial established that the funds paid by Cigna to Humble have been dissipated and Cigna cannot maintain an action in equity to attach Humble's general assets. *See Montanile v. Bd. of Trustees of the Nat'l Elevator Ind. Health Benefit Plan*, --- U.S. ---, 136 S. Ct. 651, 655 (Jan. 20, 2016) (holding the "when a participant dissipates the whole settlement on nontraceable items, the fiduciary cannot bring a suit to attach the participant's general assets under §502(a)(3) because the suit is not one for 'appropriate equitable relief.'"); *see also Health Special Risk*, 756 F.3d at 366 (affirming the dismissal of a plan fiduciary's claim brought pursuant to ERISA §502(a)(3) because the fiduciary had not identified specific funds, but merely the general assets of defendants).

Further, the fact that Cigna purports to identify the exact amount owed by Humble based on the amount expended to satisfy the claims of the insured/member/patients is also insufficient.

*See ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 527 - 28 (5th Cir. 2013) ("Under *Knudson*, *Sereboff* and other authorities cited above, the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable res that can be restored to its rightful recipient."); *Advanced Surgery Ctr. of Bethesda, LLC*, 2015 WL 4394408 at *8 – 10 ("The Cigna entities' complaint fails to establish that the §502(a)(3)(B) claim is 'equitable' in nature because its allegations do not plausibly allege that the overpayments are currently in the [defendant's] possession and are specifically identifiable."); *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc*., Civil Action No. 13-cv-3422-WJM-CBS, 2015 WL 1041515, *4 (D. Colo. Mar. 6, 2015) (finding "the overpayments sought by Cigna are not in a specifically identifiable fund, and thus are not properly the subject of a §502(a)(3) claim").

### 3. Cigna's Claim for Equitable Relief Premised on Injunction/Declaration

In its cause of action entitled, "Equitable Relief (ERISA)," Cigna seeks:    (a) a constructive trust over physicians' fees improperly obtained; (b) an injunction precluding the disposition or transfer of identifiable funds in Humble's possession; (c) an order requiring the return of funds and a tracing of any funds no longer in Humble's possession or control; (d) a permanent injunction directing Humble to submit bills only for the amounts actually required from the plan member as payment; and (e) alternatively, a declaration  that Cigna may offset the amount of any overpayments from future payments to Humble.  (*See* Dkt. No. 105 at 33 – 34.). In its claim for declaratory judgment, Cigna seeks, *inter alia*, a declaration that it is "entitled to recoup all overpayments paid to Humble on the excessive charges made on medical claims submitted for the treatment of Cigna's members." *Id.*   Its request for an order requiring the return of funds, declaration that it is entitled to offset any overpayments from future payments to

Humble as well as its declaration that it is entitled to recoup all overpayments paid to Humble are not appropriate requests for equitable relief under ERISA. *See Arapahoe Surgery Ctr., LLC*, 2015 WL 1041515 at *4 (reasoning that Cigna's request for declaratory relief "merely couches [its] restitution claim in the form of a declaration that it may obtain said restitution through offsetting future claims reimbursements. Such reframing does not change the nature of the relief sought, which falls outside the scope of §502(a) because the amounts requested are not specifically identifiable funds.").

In *Knudson*, the Supreme Court reasoned that an insurance company's demand for an injunction "to enforce the reimbursement provision" or "to compel a defendant to pay a sum of money past due under a contract or specific performance of a past due monetary obligation" was not appropriate equitable relief under ERISA, as such relief was not typically available in equity. 534 U.S. at 210 - 11. (internal citations omitted). Similarly, in *Verizon Emp. Benefits Comm. v. Adams*, a Dallas district court held that a plaintiff's requests "to impose a constructive trust on the overpayment of $220,106.94, *wherever it may be found*, and to receive equitable restitution in the same amount to recoup the assets that rightfully belong to the plan" coupled with its request to "impose a constructive trust in the amount of $220,106.94 on the funds and/or equitable liens on the accounts, funds, or real property *where those funds may be traced*" sought merely to impose personal liability upon the defendant to pay money, an essential feature of a legal action rather than an equitable one. *See Verizon*, No. Civ. A. 3:05-CV-1793-M, 2006 WL 66711, at *4 (N.D. Tex. Jan. 11, 2006). Cigna, much like the plaintiff in *Verizon*, has not identified a specific *res* where the funds allegedly overpaid can be found but seeks a tracing "of any funds no longer in Humble's possession or control." Thus, Cigna's attempts to

recharacterize its aforementioned requests for monetary relief as equitable relief in the form of an injunction or declaration falls short under the circumstances.

### 4. Cigna's Claim for Equitable Relief Under State Law

Finally, Cigna argues that it is also entitled to equitable relief under applicable state law for the same reasons it is entitled to equitable relief under ERISA § 502(a)(3). To this end, it asserts causes of action for money had and received[12] and/or unjust enrichment[13] and denies that these claims are preempted by ERISA. This Court disagrees. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."). Notwithstanding the fact that Cigna's unjust enrichment and money had and received claims are likely time-barred pursuant to the two-year statute of limitations applicable to such claims, [14] of critical importance to Cigna's equitable recovery under state law is its contention that "[w]hile Cigna's plans are required to cover some portion of the actual charges for services that plan members receive from out-of-network providers like Humble, they are not required to cover amounts for which the members are not billed, are not obligated to pay, or would not have been

---

[12] *See London v. London,* 192 S.W.3d 6, 12 – 14 (Tex. App.-Houston [14th Dist.] 2005, pet. den.) ("[A claim for money had and received] is not premised on wrongdoing, but looks to the justice of the case and inquires whether the party has received money that rightfully belongs to another.") (citation omitted); *see also Staats v. Miller,* 150 Tex. 581, 243 S.W.2d 686, 687 – 88 (1951) ("'The question, in an action for money had and received, is to which party does the money, in equity, justice, and law, belong. All plaintiff need show is that defendant holds money which in equity and good conscience belongs to him.'" (quoting 58 C.J.S. Money Received § 4a, at 913)).

[13] "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits," regardless of whether the defendant engaged in wrongdoing. *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.,* 300 S.W.3d 348, 367 (Tex. App.-Dallas 2009, pet. den.) (citation omitted). "Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Id.* (citation omitted).

[14] *Verizon Employee Benefits Comm. v. Frawley,* 655 F. Supp. 2d 644, 646 (N.D. Tex. 2008), *aff'd,* 326 F. App'x 858 (5th Cir. 2009) (reasoning that unjust enrichment claims, like money had and received claims, are governed by the two-year statute of limitations).

billed if they did not have insurance." (*See* Dkt. No. 105 at 26 & 29).  Cigna also maintains that Humble "routinely waived the members/patients' financial responsibility and, in turn, submitted bills to Cigna falsely stating charges for amounts that were higher than those paid by the members/patients. (*Id.*)

In order for Cigna to recover under either theory, the Court must determine the nature of the benefits Cigna was required to pay, which necessarily directs this Court's inquiry to the plans, requires an analysis of the plans' terms, and presumably involves the calculation of payments due to members/patients under the various plans.  Consequently, Cigna's claims for equitable reimbursement, premised on its claims for unjust enrichment and/or money had and received, are preempted by ERISA as they refer and/or "relate to" the various plans.  *See Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004) (reasoning, among other things, that ERISA preempts state law causes of action that concern the primary administrative functions of a benefit plan.  The processing of claims for healthcare services, as well as efforts to recover reimbursements due to overpayments, are administrative tasks associated with benefit plans.).  Regardless of how Cigna frames its claims for overpayments, its alleged causes of action will require construction of the plans' terms and, as such, will fall squarely within ERISA's preemptive scope.

Furthermore, even in the absence of preemption, this Court concludes that Cigna's "money had and received" and "unjust enrichment" claims seek legal rather than equitable relief.  *See Health Special Risk*, 756 F.3d at 361 ("Simply framing a claim as equitable is insufficient to escape a determination of whether the relief sought is[, in fact,] legal.").  The evidence shows that Cigna independently determined the method by which Humble's claims would be adjudicated.  After such claims were adjudicated, Cigna paid the claims.  The evidence

establishes that the funds were disbursed to Humble and/or various physician entities upon receipt. Hence, the funds are not now nor were they ever exclusively in Humble's possession or held in an account under Humble's name. Evidentiary support in the record also establishes that the funds were disbursed shortly after they were received. Therefore, based on undisputed facts, Cigna's "money had and received" and "unjust enrichment" claims fail because Cigna's suit simply seeks monetary recovery against Humble's general assets. *Id.* Because Cigna cannot identify a specific *res* apart from Humble's general assets, it is not entitled to equitable restitution.

**B.     Cigna's Claims for Fraud, Negligent Misrepresentation and Violations of State Statutory Provisions**

Cigna also seeks to recover based on Humble's fraudulent conduct, negligent misrepresentations and violations of various state statutory provisions, grounded in part on the physician's UAs. Physicians who used Humble's facilities were subjected to a "use" fee when they performed surgeries at Humble. These payments are characterized by Cigna as "kickback" referrals. Cigna maintains that these UAs are at the center of Humble's "large-dollar" claims-- meaning, Humble simply added 30 percent to each claim for the benefit of the referring physician. Cigna argues that this practice by Humble constitutes fraud because Humble: (a) failed to disclose the UAs to members/patients and to Cigna; (b) failed to properly document and provide notice on its UB-04[15] forms to Cigna that an additional 30% "use" fee was included in its bills; and (c) paid kickback fees to referring physicians in violation of various state statutes. Therefore, Cigna argues, it is entitled to recover overpayments on past claims and should be free to reject all or part of Humble's current claims as an offset to such overpayments. Further, Cigna

---

[15] UB-04 claims are standard, authorized forms utilized by hospitals and, perhaps other healthcare providers, when making a claim to an insurance company, such as Cigna, for payment and/or reimbursement for medical services rendered. (*See, e.g.,* Cigna Ex. No. 31.)

contends that the UA practice violates state and federal laws because the certifications, contained on the UB-04 forms, are false in that Humble omitted material information necessary for the processing of its claims. The Court will address Cigna's contentions in turn.

### 1. Cigna's Fraud Claim

First, Cigna argues that Humble breached its duty to disclose the UAs it maintained with referring physicians in its UB-04 forms provided to members/patients at the time of their admissions and to Cigna. Cigna avers that Humble's failure to disclose, in this regard, constitutes fraud. Under Texas law, fraud occurs when: (1) a party makes a material representation; (2) the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of its truth and as a positive assertion; (3) the misrepresentation is made with the intention that it should be acted on by the other party; and (4) the other party relies on the misrepresentation and thereby suffers injury. *Beijing Metals & Minerals Import/Export Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir.1993); *see also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

Cigna has not proffered a written agreement that it or any member/patient has with Humble that gives rise to a duty to disclose the UAs as a prerequisite for reimbursement on any claims. Before there can be a breach of duty, a duty must first exist, either arising out of an agreement or imposed by law. *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708 - 09 (Tex. 1990).

It is clear from the evidence proffered at trial that the UAs contain proprietary and/or privileged physician information. Moreover, nothing on the UB-04 forms requires the disclosure of the type of information sought by Cigna. Absent any agreements to the contrary, Cigna's assessment of Humble's disclosure duties is fallacious, at best. The fallacy is manifested in

several respects. First, Cigna has not publicly disclosed its ASO Agreements with plan providers to any of its members/patients or third-party healthcare providers because it considers such documents to be proprietary as well. To this end, Cigna cannot expect unfettered access to contracts maintained by third-party healthcare providers without permitting them unrestricted access to the same. To require otherwise would be to reward Cigna's duplicitous conduct.

Additionally, there is no evidence that Cigna routinely seeks such proprietary information from other healthcare providers, regardless of their network status. Consequently, the Court finds that Humble owed no duty to disclose the UAs to Cigna and its failure to do so on its UB-04 forms was not fraudulent, as a matter of law. Even assuming that the law imposed a duty of disclosure upon Humble, the evidence fails to establish that Cigna regularly relies on such privileged and proprietary information to process its claims. This Court concludes that Humble had, on numerous occasions, disclosed to Cigna its practice of billing members/patients in such a way as to parallel in-network rates and Cigna has failed to proffer any evidentiary support sufficient to establish a material misrepresentation warranting recovery on a fraud claim.

### 2.     Cigna's Negligent Misrepresentation Claim

Further, Cigna contends that in past and current billings, Humble failed to properly document and present its UB-04 claims to it and this deficiency constitutes negligent misrepresentation. Cigna's negligent misrepresentation claim is simply another way of seeking legal redress on its claims for overpayment. Nevertheless, the Court will address this cause of action. Under Texas law, a negligent misrepresentation occurs when: (1) a party makes a representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation supplies false information for the guidance of others in their business; and (3) the party making the representation did not exercise reasonable care or competence in

obtaining or communicating the information. *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (quoting *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

There is no evidence that Humble supplied false information, failed to exercise reasonable care in supplying claim information, or failed to supply information necessary for processing its claims. Rather, the evidence shows that Humble submitted claims for payment to Cigna with correct CPT codes for the services provided. The evidence also shows that Cigna never challenged the codes reported by Humble on its UB-04 claim forms. Nor has it challenged the medical necessity of any of the procedures performed or claimed that any such surgical procedures were negligently performed. Moreover, the record is devoid of any evidence establishing the falsity or materiality of any of the information that Cigna now asserts was necessary to properly process Humble's claims. Therefore, the Court concludes that Humble did not negligently misrepresent its claims to Cigna on its UB-04 claim forms or elsewhere.

The Court also finds that Cigna is not entitled to maintain its overpayment claims under a negligent misrepresentation theory because the evidence fails to establish that past payments were, in fact, made. From the beginning, when Humble submitted claims to Cigna for processing, Cigna selected third-party contractors, such as Multiplan and Viant, to reprice or negotiate the claims. After these contractors negotiated Humble's claims, Cigna paid Humble based on the negotiated agreements. The negotiated amounts, thereafter, became the UCR for that claim. Thus, the Court is of the opinion that the funds that Cigna seeks to recover were paid pursuant to the plans and were based on negotiated agreements between Cigna and Humble. Cigna cannot now claim that it overpaid Humble's claims based on negligent misrepresentations purportedly made to it by Humble.

### 3.     Cigna's Claim for Violations of State Statutory Provisions

Lastly, Cigna asserts a claim for reimbursement premised on the fact that the UAs between the physicians and Humble permitted "referral" fees that were actually kickbacks and, therefore, violated various state statutes.   In support of its assertion, Cigna maintains that Humble violated several provisions of the Texas Occupation Code and the Texas Insurance Code.   *See* Tex. Occ. Code §§ 101.203, 102.001, 102.006, 105.002 and Tex. Ins. Code § 1204.055.   (*See* Dkt. No. 105; *see also* Cigna Exhibit No. 198).

Cigna argues that the Texas Occupation Code prohibits a person from knowingly offering to pay or entering into an agreement to accept, directly or indirectly, overtly or covertly, remuneration for referring a patient to another physician.  (*See* Tex. Occ. Code § 102.001.)  The statute also addresses improper and unreasonable billings, particularly for services that were medically unnecessary.  (*See* Health and Safety Code § 311.0025).  The Court, however, is of the opinion that these state statutes are inapplicable to this case because the members/patients were patients of the "referring" physicians.   Therefore, the physicians did not, in fact, refer any members/patients to "another" physician within the meaning of the statute.

The evidence also shows that Humble did not add 30% to its claims in order to pay kickback fees to physicians.  Humble followed the Chargemaster method for pricing the services it rendered and employed the services of K & S Consulting to calculate its billed charges. According to the evidence, between July 2010 and March 2011, K & S Consulting utilized the 2009 INGENIX database for Greater Houston, K&S's "Fee Analyzer", a data base similar to INGENIX, and data provided by physicians to determine the usual and customary fees.  (*See* Cigna Ex. No. 46).  The evidence strongly suggests that the Chargemaster is the same database used by Methodist Hospital, Memorial Hermann Hospital and other hospitals in the Harris

County area. Cigna appears to argue, without support, that Humble does not merit the same billing rates as Methodist or Memorial. Be that as it may, the fact that Humble used an accepted database to prepare its bills undercuts and refutes Cigna's claim that Humble excessively overcharged members/patients and/or the plans. Based on these findings, the Court concludes that the Texas Occupation Code provisions cited here are inapplicable and Humble's practices do not amount to statutory violations for which Cigna is entitled to sue.

Equally compelling is the fact that the provisions of the Texas Occupation Code do not provide a basis for a private right of action. Cigna has not presented facts nor case law that shows "clear legislative" intent that a private cause of action was intended or contemplated by the state legislature for the violations alleged. More importantly, the Texas Supreme Court has spoken on this very issue. *See Brown v. De La Cruz*, 156 S.W.3d 560, 564 (Tex. 2004). In *Brown*, the Texas Supreme Court held that "a statute which imposes a penalty must be strictly construed, and that a person who seeks to recover a penalty thereunder must bring himself clearly within the terms of the statute." *Id.* at 564. Legislative intent gives rise to a private cause of action only when legislative intent is manifestly clear. *Id.* at 566.

Similarly, a Texas Court of Appeals, when addressing the private right of action issue in a case brought under the Texas Occupation Code, reasoned that a court must first discern intent "from the plain and common meaning of the statute" and then "read the statute as a whole [in an effort to] give meaning to the language consistent with other provisions in the statute." *Davis*, 294 S.W.2d at 838 – 39. To this end, the Court held that a private party maintained no right to enforce provisions of the Texas Occupation Code, reasoning that the statutory background established that enforcement be pursued as a state administrative agency function and dismissed

the suit. *Davis*, 294 S.W.2d at 838 – 39. Therefore, Cigna's claim for reimbursement based on the statutory violations alleged is also unfounded.

Finally, with regard to its remaining claims for declaratory relief, Cigna seeks a declaration that Humble: (1) "has violated Texas statutory laws concerning the billing of medical treatment and services provided to Cigna members"; (2) "did not disclose waivers, reassurances, or other promises made to induce patients to use its facility, including reassurances that they would not pay more in coinsurance, deductibles or other patient-responsibility charges than they would at an in-network facility"; and (3) "has violated Texas statutory laws concerning payment for patient referrals and it did not disclose to Cigna that it entered into fee-splitting contracts with physicians and physician practice groups for their referral of patients to Humble for surgery." (*See* Dkt. No. 105 at 31 – 32, ¶ 94).

"The federal Declaratory Judgment Act [however] . . . does not create a substantive cause of action . . . [it] is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *O'Neill v. CitiMortgage, Inc.*, Civil Action No. 4:13-cv-656-O, 2014 WL 1199338, at *4 (N.D. Tex. Mar. 24, 2014). "Thus, a plaintiff cannot use the Declaratory Judgment Act to create a private right of action where none exists." *Reid v. Aransas Cnty.*, 805 F. Supp.2d 322, 339 (S.D. Tex. 2011). As such, this Court interprets Cigna's requests for declaratory relief as theories of recovery premised upon its request to enforce certain provisions of the Texas Occupation Code and Texas Insurance Code. Since Cigna has pointed to no authority authorizing it, as a private litigant, to seek enforcement under any of the aforementioned statutes, it cannot use the Declaratory Judgment Act to seek such relief. Its remaining claims for injunctive relief likewise fail. *See Cook v. Wells Fargo Bank, N.A.*, Civil Action No. 3:10–CV–0592–D, 2010 WL 2772445, at *4 (N.D. Tex. July 12,

34

2010) ("Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action.").

Pursuant to findings of fact and conclusions of law set forth above, Humble's motion for judgment is hereby **GRANTED**. Cigna's claims for reimbursement under ERISA and/or common law are **DISMISSED** with prejudice.

## V. HUMBLE'S COUNTERCLAIMS

Humble, by its counterclaims, seeks to recover ERISA benefits on 595 claims for medical services provided to members/patients who had healthcare insurance coverage under plans insured and/or administered by Cigna.[16] Each of the 595 claims is the subject of an ASO Agreement between a plan sponsor and Cigna. For purposes of Humble's ERISA counterclaim, the relevant claims period extended from October 2010 to March 25, 2014. Humble's counterclaims are based on irrevocable assignments and financial responsibility document(s) executed by each member/patient in favor of Humble. These documents empower Humble, as assignee, to seek the reimbursement of benefits for medical services/products provided by it to plan members/patients directly from Cigna, pursuant to ERISA. (*See* Humble Ex. Nos. 300 – 816; *see also* Ex. No. 2591). Specifically, the language contained within each assignment agreement irrevocably assigns all "rights, title, and interest in and to the medical benefits" due under the various plans to Humble. *Id.* Cigna does not state, as a defense to Humble's recovery, that Humble performed unnecessary medical procedures or performed them negligently. Nevertheless, Cigna insistently denied Humble's claims based on its assertion that Humble's

---

[16] The Court determines that Humble, as a medical provider assignee has standing to sue for unpaid and/or underpaid benefits under the various ERISA plans without first pursuing or balance billing the assignors based on its assignors' concrete injuries. *See N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 194 - 95 (5th Cir. 2015); *see also Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 333 - 34 (5th Cir. 2005) (citing *Tango Transport v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 893 (5th Cir. 2003) ("It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim.")

billing practices included fee-forgiving and thus, required it to employ certain "exclusionary" language contained within the plans.

Humble seeks ERISA penalties for violations of 29 U.S.C. § 1024(b)(4), attorney's fees, and a declaratory judgment under 28 U.S.C. § 2201. Humble requests a declaratory judgment that: (a) it properly submitted all claims for reimbursement to Cigna in compliance with state and federal laws; (b) it did not engage in fraud or misrepresentation in its attempts to collect or recover healthcare benefits from Cigna; (c) it billed Cigna for healthcare procedures pursuant to the UCR or the MRC; (d) it disclosed, on admission forms and via its website, its out-of-network status to prospective patients before any scheduled procedure; and (e) as an assignee of the various plans, it steps into the shoes of the beneficiary/member/participant of the plans and is entitled to a full and fair review of its claims pursuant to the UCR or MRC.

Cigna maintains that Humble's causes of action lack merit and should be dismissed. The Court will now address Cigna's various defenses to Humble's claims in turn.

### A. Cigna's Exclusionary Language Defense

Humble contends that the members/patients: (a) maintained out-of-network, open access benefits pursuant to the plans; (b) assigned their rights to reimbursement of benefits to Humble; (c) presented for healthcare services at Humble for which Humble provided services and/or facilities for the procedures/surgeries performed; and (d) claims for benefits, though duly submitted to Cigna, were improperly denied. Therefore, the Court concludes that Cigna abused its discretion by obstinately denying Humble's claims for benefits in spite of the medical services provided by it and persistently refusing to provide plan documents to Humble, despite openly advising Humble and others that direct contact should be made with it in order to obtain copies of the various plans.

It is undisputed that Cigna refused to pay Humble's claims, except based on its interpretation of the "exclusionary" language found in the plans.[17] The Court has previously addressed Cigna's flawed interpretation of that plan language, finding Cigna's interpretation legally incorrect. The most significant factor to consider in the legal correctness inquiry is whether Cigna's "interpretation is consistent with a fair reading of the plan[s]." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d at 195 (citing *Crowell v. Shell Oil Co.*, 541 F.3d 295, 313 (5th Cir. 2008) (quoting *Gosselink v. AT & T, Inc.,* 272 F.3d 722, 727 (5th Cir. 2001)). "ERISA requires that summary plan descriptions 'be written in a manner calculated to be understood by the average plan participant, and . . . be sufficiently accurate and comprehensive to reasonably apprise such participants . . . of their rights and obligations." *See N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 195 (quoting 29 U.S.C. § 1022(a)). As a consequence, "ERISA plans are interpreted in their ordinary and popular sense as would a person of average intelligence and experience . . . [and] must be interpreted as they are likely to be understood by the average plan participant." *N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 196 (citing *Stone v. UNOCAL Termination Allowance Plan,* 570 F.3d 252, 257 (5th Cir. 2009) (internal citations and quotations omitted). Based upon this framework, the crucial inquiry then

---

[17]In its letter to the Texas Dep't of Insurance, in response to Humble's complaint concerning its conduct, Cigna stated, in relevant part, the following:

> HSH has been victimizing the citizens of Texas and its employers through deceptive and fraudulent billing practices. By fraudulently representing to potential patients implicitly or explicitly that HSH has the authority to waive patient cost share responsibility under Cigna health benefits plans, HSH lures these patients to its facility. HSH then charges Cigna and its clients excessive and exorbitant prices that bear no rational relationship to its actual prices or market prices. . . . Upon learning and developing evidence that HSH engaged in this fraudulent business scheme . . . Cigna had no choice but to invoke exclusion language within its health benefits plans. This language prevents Cigna from paying claims where the provider has waived the cost share obligation of the patient. . . . HSH sets its prices for services (Charge Master) based on comparable charges in Houston for major hospital systems like Methodist and Memorial Hermann. . . .

Cigna Ex. No. 198.

becomes whether average plan participants and/or members reading the following exclusionary provision, "payment for the following is specifically excluded from this plan: . . . charges for which you are not obligated to pay or for which you are not billed," would interpret it to mean that if they are not charged for coinsurance they *have no insurance coverage* and Cigna is absolved of liability for paying pursuant to the various plans. *See N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 196.

The Court is of the opinion that ERISA does not permit the interpretation embraced by Cigna. As previously stated, the Court's plain reading of the provision suggests that the exclusionary provision pointed to the obligation of the member/patient to be certain that the services sought at Humble, for example, were covered by the plan before the services were received as the insurance provided does not necessarily guarantee coverage for all of the members/patients' costs. Indeed, even a cursory reading of such language does not purport to excuse or absolve Cigna, as the claims administrator, from making payments where the services are covered by the plan and are properly billed. ERISA requires that summary plan language be written in a manner that an ordinary or average member/patient is reasonably apprised of his/her rights and obligations. *Id.* at 196. Hence, Cigna's "exclusionary" language interpretation does not pass muster under the "average plan participant" test.

The average plan participant would not understand from the exclusionary language referenced here that his/her coverage is expressly conditioned on whether Humble collects upfront, the entirety of his/her deductible, co-pay and co-insurance before Cigna pays. The Court is also of the opinion that the average plan participant would not interpret this language to mean that Cigna would pay their bill for services in proportion to payments made by the member/patient at the time of his/her admissions to a facility. Instead, the average plan

participant would expect Cigna to pay its full share in accordance with the terms of the various plans, irrespective of what a plan participant paid or was capable of paying.

Cigna has not offered evidence that any of the services billed by Humble were not covered by the plans or that they were improperly billed. Therefore, Cigna's interpretation of the "exclusionary" language as rejecting covered services, was improper and violative of the plans' terms. For these reasons, the Court determines that Cigna improperly applied the exclusionary language contained in the plans and, in the process, abused its discretion, especially since Cigna admittedly has never used the exclusionary language to reject covered services before and was relentless in engaging in an arbitrary manner with regard to Humble and its claims. *See N. Cypress Med. Ctr. Operating Co.*, 781 F.3d at 196.

### B. Cigna's Waiver/Forfeiture Defense

Next, Cigna asserts that Humble waived fees owed by members/patients because it did not collect deductibles, co-pays or co-insurance fees upfront. As a consequence, Cigna asserts that Humble is barred from collecting reimbursements and from collecting unpaid balances from members/patients. This position is also one that Cigna derives from the exclusionary language addressed in the paragraph above. In this regard, Cigna contends that further payments to Humble are guided by Cigna's "proportionate share"[18] analysis because of Humble's fee-forgiving policy. The Court is of the opinion that Cigna's waiver argument finds no place in the evidence presented at trial or in applicable law.

Nevertheless, Cigna argues that the exclusionary language requires that the members/patients pay deductibles, co-pays and co-insurances before Cigna becomes obligated to

---

[18] Cigna proportionate share analysis is not found in the plans' documents. In fact, Linda Halik, Cigna's SIU investigator testified by deposition that the "proportionate share" analysis was not part of any plan. (*See* Halik Depo., Oct. 8, 2015 at 126:23-27).

pay its share. Cigna asserts that Humble failed to collect the out-of-pocket amounts required by the plans and, therefore, waived the balance of the bill. Further, Cigna takes the position that because Humble informed some patients that it would not seek to collect the balance billed above the allowable, it violated § 1204.055 of the Tex. Ins. Code[19] and thereby waived further collection opportunities from the members/patients. To this end, Cigna maintains that it is excused from its obligations beyond its initial outlay.

The plan language does not support denying Humble's claims based on waiver, due to Humble's alleged fee-forgiving policy, or, in Cigna's *own* novel view, pursuant to a proportionate share analysis. The evidence shows that during the period of dispute, Humble informed some members/patients that, pursuant to its Chargemaster and prompt pay program, except for the deposit made at the time of surgery, Humble would not bill them further. The evidence does not show, however, that Humble waived any fees that fell below the negotiated "allowables." Nor does the evidence show that Humble engaged in fee-forgiving. Therefore, to the extent Humble forgave fees that would have been based on sums charged that exceeded the allowable, that practice was not fee-forgiving.

Fee-forgiving occurs only when a healthcare provider fails to attempt to collect co-pays, co-insurance or deductibles. Nothing in Tex. Ins. Code § 1204.055 applies to the issues raised in this case because the evidence demonstrates that Humble not only had an irrevocable assignment of benefits with the members/patients, but it also attempted to collect fees due even in the face of confusion created by Cigna's communications with members/patients.

Cigna's SIU investigators do not dispute Humble's attempts to collect co-pays from members/patients. (*See* Deposition testimony of Cisar and Hazelton). In fact, according to their

---

[19] Section 1204.055 provides that: (a) the payment of benefits under an assignment does not relieve a covered person of a contractual obligation to pay a deductible or copayment; (b) a physician or other healthcare provider may not waive a deductible or copayment by the acceptance of an assignment.

testimonies, if a healthcare provider "attempts" to collect the co-insurance, co-pay and/or deductible, the fact that a portion was not collected at the time of admission or later, does not constitute fee-forgiving. (*See* Cisar Depo. at 32:16-24). Belinda Hazelton, another Cigna employee, confirmed the same policy as stated by Cisar. (*See* Hazelton Depo. at 18:12-16; (8.29.15)). These witnesses' testimonies were not disputed by other witnesses. Moreover, Cigna knew that until it processed Humble's claims and issued Explanation of Benefit forms ("EOB") to the members/patients, neither Humble nor the members/patients could determine the allowable and, consequently, any balance due from the members/patients. (*See* Cigna Ex. No. 31).

The evidence also establishes that after December 2010, Cigna did not seriously consider the amounts of Humble's claims even though the services were billed according to CPT Codes. The Court reaches this conclusion because Cigna did not utilize an "authoritative" or recognized database to determine how to pay Humble's bills. Cigna ignored Humble's billing calculations even though they were based on the Chargemaster, UCR or MCR. Similarly, Cigna ignored Humble's method for determining co-pays at the time of its facility admissions.[20] This is evident from the deposition testimony of Linda Halik, one of Cigna's witnesses. Halik explained Cigna's handling of Humble claims after December 2010, as follows:

> When the claim is entered into [Cigna's] system, [Cigna] automatically pulls the benefit for that particular year and would apply the plan, such as the reimbursement rate, the deductible, the coinsurance, the out-of-pocket maximum, any other additional limitations that might be on the claim.
>
> • • •
>
> Cigna's position [is] that we can't clearly process a claim until we actually know what [Humble's] real charges are, especially if [Humble is] holding customers liable for a lesser amount than the plan specifies . . . until we know what [Humble

---

[20] Humble's admission collection was not based on plan requirements. Instead, Humble sought to collect approximately 5% (now 11%) of Humble's estimated billed charges, based on CPT codes the physicians identified at the time of surgery. Sometimes this formula caused Humble to overcharge. Other times it resulted in an undercharge.

is] actually billing . . . or how they calculate the customer's responsibility, [Cigna doesn't] know exactly what portion of the claim is true and accurate.

(*See* Halik Depo. at 109, 165, 169).

The Court finds that Cigna's reliance on a proportionate share analysis for processing and paying Humble's claim was not only improper but amounts to a breach of its fiduciary duty to the members/patients and Humble, as an assignee of such benefits. *See Mertens*, 508 U.S. at 251 - 52, 113 S. Ct. 2063 (internal citations omitted) ("Fiduciaries are assigned a number of detailed duties and responsibilities, which include 'the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest.'"). Cigna's method for processing Humble's claims was simply disingenuous and arbitrary, as it was focused more on accomplishing a predetermined purpose--denying Humble's claims. Cigna's arbitrary method, in this regard, ignored the history of claim processing between Cigna and Humble. Moreover, and admittedly, Cigna was ill-equipped—it maintained no database--to properly process all of Humble's claims. Finally, the evidence suggests that Cigna failed to explain to the plan sponsors and/or members/patients/insureds that it was applying a proportionate share analysis to Humble's claims. Thus, Cigna breached its fiduciary duty when it strayed from the terms of the plans and interpreted its ASO Agreements with plan sponsors as conferring authority upon it that was not specifically set forth in and/or was contrary to the various plans.

The evidence demonstrates that in-network providers were not required by Cigna to show proof that co-pays, co-insurances and/or deductibles were paid before Cigna processed their claims. The same is true even when an in-network provider collected only a portion of the member/patient's co-pay or co-insurance. (*See* Dkt. No. 231, Cisar, Trial Tr. at 122:12-20; (1.13.16)). The evidence further suggests that Cigna does not require proof of payment from in-

42

network providers before it reimburses them under the same plans. (*See* Ramirez Depo. at 50:17 and 51:7; *see also* Cigna Ex. No. 31).

Because Cigna failed to process Humble's claims pursuant to the plans and ERISA, it also denied Humble a meaningful opportunity to appeal any claim denials and/or underpayments. Humble was entitled to a fair review of its claims, both at the claim processing stage and, likewise, at the appellate review stage. *See* 29 U.S.C. § 1133. Humble got neither. Therefore, the Court holds that Cigna's claims processing procedure and appeals review process violated ERISA and concomitantly, its fiduciary duty of care and loyalty to the members/patients and the plan sponsors. Indeed, Cigna earned handsome returns as a result of its aberrant and arbitrary claims processing methodology. The evidence establishes that it was subject to a double heaping from the plan sponsors' pockets---first, in receiving a fee for claim processing services--and second, in receiving fees based on "savings," regardless of how garnered. In the process, however, Cigna forfeited its objectivity and violated its fiduciary duties of care and loyalty by making benefit determinations that did not consider UCR or conform to the plans' terms in violation of ERISA.

### C. Humble's Damage Evidence and Cigna's Rebuttal

Humble's expert calculated Humble's claims against Cigna based on what Cigna would have paid Humble in the usual or normal course of events as before, were Cigna to have paid the claims pursuant to the plan provisions. Humble calls this the "but for" world---"but for" Cigna's change in processing Humble's claims, Humble would not have a cause of action. Humble implemented a two-step process to establish its claims. First, Humble determined the allowable for each claim. Then it used that "allowable" to determine how much Cigna would have paid Humble in the usual course of claims processing. Humble recognized that all claims could not

43

be processed by the same method and separated the claims into categories. In category A are three (3) subcategories: subcategory (A)(1); subcategory (A)(2); and subcategory (A)(3). Subcategory (A)(1) consists of 82 claims subject to Medicare-based plan provisions. The allowable was targeted by using 500% of the Medicare allowable. Subcategory (A)(2) consists of 134 non-Medicare claims subject to UCR plan provisions. These claims were repriced at 70% of billed charges. In subcategory (A)(3), which consists of 20 claims that were previously negotiated by Multiplan or Viant, Humble used the actual negotiated amounts. Category "B" consists of two subcategories. Subcategory (B)(1) consists of 150 claims that were repriced pursuant to the Medicare APC[21] rate ranging from 110% to 200% of Medicare. Nine (9) of these claims did not have a Medicare APC and were calculated at 80% of the billed charges. Subcategory (B)(2) consists of 149 claims that were repriced using the Multiplan 80% of UCR. Category "C" consists of 11 claims that were priced as in-patient claims or 100% of the billed charges. And, finally, Category "D," which consists of 49 claims for which Cigna provided no plan documents. These claims were calculated at 110% of Medicare. Based on the application of Medicare rates, Medicare-based plan provisions, Multiplan's 80% UCR and previously negotiated claims, together with deductibles, co-pays, out-of-pocket expenditures and cost-share maximums, Humble claims that it is entitled to reimbursement in the amount of $11,392,273.

In rebuttal, Cigna proffered expert testimony from Michael Battistoni, supported by testimony from Mary Beth Edwards. At the outset, the Court observed that Cigna did not utilize Battistoni's method for processing Humble's claims during the claims processing period of October 2010 to March 25, 2014. Nevertheless, Battistoni testified that in calculating the allowable, he used Cigna's "in-house developed rates" based on records that it keeps in the

---

[21] The "APC" is the Ambulatory Payment Classification found at the federal government website that provides both current and historical APC rates for CPC codes.

ordinary course of its business. It is undisputed, however, that Cigna's database could not be used for several of the categories identified by Humble and Cigna does not account for this fact. As well, Battistoni testified that he applied an in-network analysis to 463 of Humble's claims and formulated his calculations based on the MRC.

It is important to note that Humble is an out-of-network provider and, as such, is not a recipient of the contract terms that in-network providers enjoy. Moreover, Battistoni's analysis does not reflect a "but for" calculation. To do so would mean that Cigna would have followed the terms of most of the plans and applied the UCR rates pursuant to Cigna's ASO Agreement, *i.e.,* cost containment. It is also noteworthy that Battistoni did not engage in a "proportionate share" analysis in opining and processing Humble's claims. The Court finds that Battistoni's approach lacks credibility on three bases. First, Cigna did not use the 500% Medicare APC rate when processing Humble's claims at any time. [22] Nor did Cigna determine the UCR rate or process Humble's claims pursuant to its "cost containment"[23] agreements with plan sponsors. Finally, Cigna did not use Battistoni's method for calculating Humble's claims based on Cigna's claim processing history with Humble as an out-of-network facility.

Edwards' testimony concerning Humble's claims also lacks credibility. Edwards provided a separate damage model for Cigna's claims for reimbursement but also joined Battistoni in his opinions concerning Humble's claims. Nevertheless, her expert testimony concerning Cigna's reimbursement claims sheds light on the basis for her support for Battistoni's testimony. Edwards' model was based on the following information that the Court finds not to be an accurate representation of the evidence contained in the record: (1) Humble routinely

---

[22] Battistoni testified that Cigna, in Medicare based plans, uses the "500%, of the Medicare" rate to determine negotiations of UCR.

[23] Cigna processed "cost containment" claims subject to negotiation by third-party repricing vendors pursuant to ASO Agreements between Cigna and the plan sponsors. (*See* Humble Ex. No. 252).

failed to collect all or part of the member/patient's responsibility amounts pursuant to the plans; and (2) Humble provided no collection information concerning a number of additional claims that also resulted in overpayments. Edwards' testimony ignored the fact that certain claims, particularly the cost containment claims, historically were negotiated claims. Edwards also ignored the fact that some claims had already been negotiated and were simply held back by Cigna when it flagged Humble's account. Finally, Edwards' opines that Humble's claims should be priced as though it were an in-network provider. Edwards' approach, much like that of Battistoni, is incredible in light of the claim processing history between the parties and the fact that Humble was not afforded the benefits associated with in-network status.

The Court concludes that Cigna's rebuttal evidence is flawed because, among other things, it assumed that: (1) none of the 49 claims, for which Cigna failed to provide plans, was subject to Multiplan repricing; and (2) Cigna did not owe reimbursement for 178 of Humble's claims, despite failing to give a reasonable explanation for its denial of benefits associated with such claims. Cigna erroneously used Humble's patient admissions information to determine the out-of-pocket maximums, thereby ignoring later payments and/or the fact that the entire out-of-pocket expense was not required by law or the plans at the time of admission. Therefore, the Court determines that Humble is entitled to reimbursement under ERISA in the amount of $11,392,273 for unpaid and/or underpaid claims.

### D. Humble's Claim for Penalties Under ERISA § 502(c)

Humble maintains that as the assignee of benefits from members/patients covered by the various ERISA plans at issue, administered and/or insured by Cigna, it is entitled to penalties under ERISA § 502(c)(1)(B) against Cigna. This claim finds its genesis in Cigna's insistent refusal, during the period from October 25, 2013 through June 2, 2014, to provide Humble with

plan documents in spite of its requests. Humble asserts that, as the administrator, Cigna is liable for penalties in an amount up to $110 per day because of its noncompliance. Humble asserts that its initial request for plan documents, dated October 25, 2013, occurred about 10 days before Cigna commenced the instant suit against it. Humble argues that Cigna's refusal to provide such plan documents placed it at a serious disadvantage--both in defending against Cigna's claims for overpayment and in recovering on its own claims for underpayment. To this end, Humble asserts that Cigna violated ERISA § 502(c) by blatantly failing and refusing to provide it with copies of the various plans so that it might determine the parameters associated with the members/patients' benefits.

ERISA § 104(b)(4) provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description . . . or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Pursuant to ERISA § 502(c), "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by [ERISA] to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary [for civil penalties up to $110 per day.]" 29 U.S.C. § 1132(c)(1)(B).

By its very terms, Section 502(c) applies to the "plan administrator" which, within the meaning of ERISA, includes either the person specifically designated as such by the plan or "if an administrator is not so designated, the plan sponsor." 29 U.S.C. § 1002(16)(A). If an administrator is not so designated by the plan and "a plan sponsor cannot be identified," the administrator is "such other person as the Secretary may by regulation prescribe." *See* 29 U.S.C. §1002(16)(A)(iii). Although § 502(c) establishes responsibility and liability, § 502(1)(3) also authorizes a plan participant or beneficiary to institute a civil action: "(A) to enjoin any act or

practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Cigna contends that it is the third-party "claims administrator," not the "plan administrator" as described in ERISA, 29 U.S.C. § 1024(b)(4). As such, Cigna argues that it is neither the plan sponsor nor "such other person" as designated by the Secretary within the meaning of ERISA. Hence, it maintains that it had no duty to furnish copies of plan documents to Humble. Therefore, Cigna contends that it cannot be subject to penalties under ERISA § 502(c). As support for its position that Humble--as an assignee who is neither a plan "participant" nor a "beneficiary"-- is not entitled to penalties under § 502(c), Cigna cites to this Court's previous decision in *Koenig v. Aetna Life Ins. Co.*, Civil Action No. 4:13-cv-00359, 2015 WL 6473351, * 5 – 7 (S.D. Tex. Oct. 27, 2015). This Court, however, finds Cigna's reliance on the *Koenig* case to be misplaced as the facts here are wholly distinguishable.

The Court is of the opinion that, after October 2010, Cigna became more than a third-party "claims administrator" because of the manner in which it processed Humble's claims. While the evidence establishes that Cigna is not the "designated" or named plan administrator it, nevertheless, became the *de facto* plan administrator by way of its conduct and admissions under an ERISA-estoppel theory.[24] First, Cigna instructed members/patients to request plan documents directly from it, NOT the employer or plan sponsor. *See Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1347 (11th Cir. 2009). Indeed, Cigna's own corporate representative, Michael Battistoni, and Humble's witness, Jakob Kohl, verified that

---

[24] To prevail on an ERISA-estoppel claim under federal common law, a plaintiff must establish: (a) a material misrepresentation; (b) reasonable and detrimental reliance upon the representation; and (c) extraordinary circumstances. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 374 (5th Cir. 2008).

Cigna controlled the dissemination of plan information in this case, despite its title as the third-party claims administrator. Cigna's corporate representative, Battistoni, testified as follows:

> Q: And what about the plan administrator?
>
> A: The plan administrator is the entity that makes the decisions and enforces the plan document.
>
> Q: Is that typically not – is that typically Cigna or not Cigna?
>
> A: It is typically Cigna.

(*See* Dkt. No. 231, Battistoni, Trial Tr. at 201:11 - 23). Humble's witness, Kohl, offered the following additional testimony:

> Q: Why did you send these letters to Cigna?
>
> A: We needed this information in order to determine why these denials are being issued, and more importantly, what we could do about the adverse benefits determinations we were getting. We needed this information to file appeals that made sense and, you know, all of this was relevant and pertinent information to our appeals process.
>
> . . .
>
> Q: Sir, is one of the reasons you sent it to CIGNA because you thought they were the plan administrator?
>
> A: Yes.

(*see* Dkt. No. 236, Kohl, Trial Tr. at 76:4 – 10).

> Q: What does this say about contacting the employer or plan sponsor for copies of documents, records, and other information about the claim?
>
> A: It doesn't.
>
> Q: Why didn't you request these documents from the employer or plan sponsor?
>
> A: Because Cigna instructed us to ask us for – to ask them for those documents.

| Q: | Well, why didn't you go to the plan documents to look for that information? |
|---|---|
| A: | That's what we were requesting. |
| Q: | Did you have them? |
| A: | No. |

(*Id.* at 81:20 – 82:13).

| Q: | Mr. Kohl, prior to getting the plan documents in discovery, which entity did Humble believe was the plan administrator for each of the plans at issue in this case? |
|---|---|
| . . . | |
| A: | Cigna. |

(*see* Dkt. No. 236, Kohl, Trial Tr. at 171:11- 16).

When Cigna stepped beyond its role as third-party claims administrator, it subjected itself to the demanding strictures of § 502(c) and may not now attempt to hide behind its professed title as the "third-party claims administrator" in an attempt to avoid taking responsibility for its deliberate actions. Second, Cigna initiated this very suit against Humble as though it were the plan administrator. Moreover, it claims a financial interest in the outcome of the case, pursuant to the ASO Agreements that it enjoys with various plan sponsors. Those Agreements provide that Cigna will receive a percentage of the funds that it "saves" and/or recovers for the plan. Hence, by agreement, the plan sponsors have conferred upon Cigna the duty to provide plan documents to members, beneficiaries and assignees of members and beneficiaries especially where, as here, the member/patients have executed, for the benefit of Humble, an irrevocable right to exercise and enforce their benefit rights under the plans.

The reasoning as stated by the First Circuit in *Law v. Ernst & Young* is instructive on this issue. 956 F.2d 364, 373 (1st Cir. 1992). In *Law v. Ernst & Young*, the First Circuit explained,

"[t]o hold that an entity not named as administrator in the plan documents may not be held liable under § 1132(c), even though it actually controls the dissemination of the plan, would cut off the remedy Congress intended to create."  956 F.2d 364, 373 (1st Cir. 1992).  Similarly, the Eleventh Circuit, in *Rosen v. TRW, Inc.*, agreeing with the rationale of the First Circuit as stated in *Law v. Ernst & Young*, reasoned that "if a company is administrating the plan, then it can be held liable for ERISA violations, regardless of the provisions of the plan document[s]." 979 F.2d 191, 192-94 (11th Cir. 1992); *see also Fisher v. Metropolitan Life Ins. Co.*, 895 F.3d 1073 (5th Cir. 1990) (noting that the idea that someone other than the statutory administrator could be liable for § 502(c) penalties has "intuitive appeal").

Further, the Court concludes that Cigna has acted in bad faith with regard to processing Humble's claims by failing and refusing to provide pertinent plan documents and related information.  First, Cigna applied a claim processing method to Humble's claims that it did not universally apply to all claims submitted by out-of-network or in-network healthcare providers.  The evidence establishes that Cigna applied a proportionate share analysis--a method not authorized by either the plans or ERISA--to Humble's claims.  Cigna had a duty to give notice to Humble and the members/patients of any change in benefit determinations.  Instead, it drew members/patients into this litigation when it informed them of its flawed interpretation of the plans' exclusionary provisions.  Second, Cigna's use of a proportionate share analysis was an "unusual" claim processing procedure.  Cigna admitted that it had no automated system in place to review and process such claims.  Yet, it utilized its in-house database solely to process Humble's claims, while simultaneously refusing to provide Humble with plan documents or its database so that Humble might challenge its unprecedented claims processing methodology.

Without plan documents, Humble could not know whether Cigna was even processing its claims pursuant to the terms of the plans.

In these respects, Cigna interfered with and frustrated the contractual relationship between the plan sponsors and the members/patients by imposing a methodology for claim processing that was not part of any plan. In essence, Cigna "hijacked" the plan administrator's role and subverted it for its personal benefit. Indeed, Cigna's unprecedented claims processing methodology and incessant related acts were extraordinary acts of bad faith. *See, e.g.*, *High v. E-Sys., Inc.,* 459 F.3d 573, 580 n. 3 (5th Cir. 2006); *see also Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.,* 334 F.3d 365, 383 (3d. Cir. 2003) (quoting *Jordan v. Fed. Express Corp.,* 116 F.3d 1005, 1011 (3d. Cir. 1997) (noting that "'extraordinary circumstances,' generally involve acts of bad faith . . . attempts to actively conceal a significant change in the plan, or commission of fraud.")).

In *Paris v. Profit Sharing Plan For Emps. of Howard B. Wolf, Inc.*, the Fifth Circuit reasoned that the decision whether to grant relief under § 502(c) is within a trial judge's discretion. 637 F.2d 357, 362 (5th Cir.), *cert. denied*, 454 U.S. 836, 102 S. Ct. 140, 70 L. Ed.2d 117 (1981). It further explained that prejudice is one factor a district court may consider in determining whether penalties under § 502(c) should be accessed. *See Godwin v. Sun Life Assurance Co. of Canada*, 980 F.2d 323, 327 (5th Cir. 1992) (citing *Govoni v. Bricklayers, Masons and Plasterers Int'l Local No. 5 Pension Fund*, 732 F.2d 250, 252 (1st Cir. 1984)). Therefore, the Court concludes that Cigna is subject to § 502(c) penalties and, in its discretion, assesses a $25.00 per claim penalty on 418 claims for the 220 days that Cigna withheld pertinent plan information and prejudiced Humble. This assessment amounts to $2,299,000 in penalties, which this Court deems to be reasonable under the circumstances presented.

### E.    Humble's Claim for Declaratory Judgment

Finally, Humble seeks a declaration that:  its claims for reimbursement were properly submitted;  the services provided were covered under the plans;  the plans were either administered and/or insured by Cigna; and Cigna failed and refused to process Humble's claims on a timely basis and according to the plans.  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

It is clear that Humble is entitled to request a declaratory judgment concerning its unpaid and/or underpaid claims purportedly processed by Cigna.  Humble seeks relief under ERISA § 502(a)(3)(b).  Such relief is authorized under and falls within ERISA's permissible scope.  *See Advanced Surgery Ctr. of Bethesda, LLC*, 2015 WL 4394408 at *25.  It is also apparent that a declaration of rights would settle all aspects of this controversy.  To this end, the Court makes the following declarations, based on the findings of fact and conclusions of law set forth herein:

- The evidence is undisputed that before Humble scheduled any procedure for a member/patient, it contacted Cigna and confirmed eligibility, coverage and benefits for the procedure.  Because Humble did not have plan documents, it relied upon Cigna to provide accurate information and to pay benefits pursuant to the various plans.

- Cigna's failure to pay the benefits owed to Humble [as assignee of the benefits] denied the members/patients the benefit of the bargain under the terms of their plans.  Therefore, the members/patients and Humble were denied the benefits of the contracts between the members/patients and their plan sponsors.

- The evidence shows that Cigna flagged Humble's claims, failed to properly notify Humble that it was changing its claim processing method and failed to provide a reasonable opportunity for a full and fair review of Cigna's decisions with regard to Humble's claims.  Once SIU concluded that co-pays were not collected upfront, Cigna did not--and by its conduct--could not provide a reasonably

meaningful opportunity for a full and fair review of its decision regarding Humble's claims.

- Cigna does not have the discretion, under ERISA, to absolve itself of its responsibility to process and pay Humble's claims because it assumed that it could demand upfront payments of co-pays and pay Humble's claims based on a proportionate share analysis. Cigna exhibited a conflict of interest and its presumptuous conduct lacked good faith and prejudiced Humble.

- Cigna's complaints regarding Humble's fraudulent billing practices and/or scheme were irrelevant to Cigna's independent duty to process Humble's claims pursuant to the plans and establish the proper MRC, UCR or APC and pay the claims accordingly.

- Cigna's claim that it overpaid Humble on certain assigned benefit claims between August 2, 2010 and March 25, 2014, is unsupported by evidence.

- Humble prevails on its underpayment counterclaims under ERISA in the amount of $11,392,273 because the evidence supports the conclusion that Cigna abused its discretion in its unwarranted interpretation of the MRC and/or terms of the plans.

- Humble is entitled to recover penalties in the amount of $2,299,000 for Cigna's bad faith and breach of fiduciary duties, together with attorney's fees, pursuant to ERISA and Declaratory Judgment Act.

It is so **ORDERED**.

SIGNED on this 1st day of June, 2016.

_____
Kenneth M. Hoyt
United States District Judge